# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRANTHI GORLAMARI, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| VERRICA PHARMACEUTICALS, INC., TED WHITE, P. TERENCE KOHLER JR. and A. BRIAN DAVIS, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Kranthi Gorlamari ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Verrica Pharmaceuticals, Inc. ("Verrica" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Verrica; and (c) review of other publicly available information concerning Verrica.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Verrica securities between May 28, 2021 and May 24, 2022, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Verrica is a dermatology therapeutics company developing medication for skin diseases that require medical treatment. Its lead product candidate, VP-102, is a drug device combination of Verrica's topical solution, cantharidin, administered through a single-use precision applicator. The Company is developing VP-102 for the treatment of molluscum contagiosum.

3.      In December 2020, Verrica submitted its New Drug Application ("NDA") to the U.S. Food and Drug Administration ("FDA") seeking regulatory approval of VP-102 for the treatment of molluscum.

4.      On September 20, 2021, after the market closed, Verrica announced receipt of a Complete Response Letter ("CRL") due to deficiencies at a facility of Verrica's contract manufacturer in connection with the Company's NDA. On this news, the Company's stock price

fell $1.00, or 8.3%, to close at $11.03 per share on September 21, 2021, on unusually heavy trading volume.

5.      In November 2021, Verrica resubmitted the NDA for VP -102, claiming "[t]he resubmission addresses the successful resolution of inspection deficiencies" at the manufacturing facility.

6.      Then, on May 24, 2022, after the market closed, Verrica announced receipt of another Complete Response Letter regarding the VP-102 NDA citing "deficiencies identified during a general reinspection of Sterling Pharmaceuticals Services, LLC (Sterling), the contract manufacturing organization (CMO) that manufacture's Verrica's bulk solution drug product."

7.      On this news, the Company's shares fell $3.55, or 63.8%, to close at $2.01 per share on May 25, 2022, on unusually heavy trading volume.

8.      Throughout the Class Period, Defendants made materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) that there were manufacturing deficiencies at the facility where Verrica's contract manufacturer produced bulk solution for VP-102; (2) that these deficiencies were not remediated when Verrica resubmitted its NDA for VP-12 for molluscum; (3) that the foregoing presented significant risks to Verrica obtaining regulatory approval of VP-102 for molluscum; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this Judicial District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14.     Plaintiff Kranthi Gorlamari, as set forth in the accompanying certification, incorporated by reference herein, purchased Verrica securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant Verrica is incorporated under the laws of the Delaware with its principal executive offices located in West Chester, Pennsylvania. Verrica's shares trade on the NASDAQ exchange under the symbol "VRCA."

16.     Defendant Ted White ("White") was the Company's Chief Executive Officer ("CEO") at all relevant times.

17.     Defendant P. Terence Kohler Jr. ("Kohler") has been the Company's Chief Financial Officer ("CFO") since July 16, 2021.

18.     Defendant A. Brian Davis ("Davis") was the Company's Chief Financial Officer ("CFO") from October 2019 until July 16, 2021.

19.     Defendants White, Kohler, and Davis (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Verrica is a dermatology therapeutics company developing medication for skin diseases that require medical treatment. Its lead product candidate, VP-102, is a drug device combination of Verrica's topical solution, cantharidin, administered through a single-use precision applicator. The Company is developing VP-102 for the treatment of molluscum contagiosum.

21.     In September 2019, Verrica submitted its NDA seeking approval of VP-102 for the treatment of molluscum. In July 2020, Verrica received a Complete Response Letter ("CRL") in which the FDA sought additional information regarding certain aspects of the chemistry, manufacturing, and controls process for the drug device.

22.     In December 2020, Verrica resubmitted its NDA to the FDA seeking regulatory approval of VP-102 for the treatment of molluscum.

**Materially False and Misleading**
**Statements Issued During the Class Period**

23.     The Class Period begins on May 28, 2021. On that day, Verrica announced that the FDA had extended the review period for the NDA for VP-102 in a press release that stated, in relevant part[1]:

> [T]he U.S. Food and Drug Administration (FDA) has extended the review period for the New Drug Application (NDA) for VP-102 for the treatment of molluscum contagiosum (molluscum).
>
> *        *        *
>
> The FDA extended the PDUFA goal date to allow the Agency to have additional time to review information submitted by Verrica, including its training program and **distribution model**, in response to comments from the agency regarding the Company's human factors study. On May 26, 2021 the FDA informed Verrica that the information submitted has been designated a major amendment, which allows FDA to take an additional three months to review the submitted information
>
> *        *        *
>
> Ted White, Verrica's President and Chief Executive Officer [stated,] "***Importantly, the FDA has recently completed one of the two pre-approval inspections required for approval.*** We look forward to our continued productive discussions with the FDA as it completes its review of our VP-102 NDA."

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

24.     On August 10, 2021, Verrica issued a press release announcing its second quarter

2021 financial results, stating in relevant part:

**Business Highlights and Recent Developments**

- In May 2021, the Company announced that the U.S. Food and Drug
  Administration (FDA) extended the Prescription Drug User Fee Act (PDUFA)
  goal date for the New Drug Application (NDA) for VP-102 (cantharidin 0.7%
  Topical Solution) for the treatment of molluscum contagiosum by three months
  to September 23, 2021 to allow the Agency additional time to review
  information requested and submitted regarding the Company's training
  program and distribution model.

- The Company continued to expand its U.S. commercial operations during the
  quarter in preparation for the potential FDA approval of VP-102, and has made
  key hires in marketing, sales and payor functions to support product launch and
  commercialization. The Company will be focusing its sales efforts in
  Dermatology, Pediatric Dermatology and key academic centers and health
  systems.

25.     The above statements identified in ¶¶ 23-24 were materially false and/or

misleading, and failed to disclose material adverse facts about the Company's business, operations,

and prospects.   Specifically, Defendants failed to disclose to investors: (1) that there were

manufacturing deficiencies at the facility where Verrica's contract manufacturer produced bulk

solution for VP-102; (2) that the foregoing presented significant risks to Verrica obtaining

regulatory approval of VP-102 for molluscum; and (3) that, as a result of the foregoing,

Defendants' positive statements about the Company's business, operations, and prospects were

materially misleading and/or lacked a reasonable basis.

26.     The truth began to emerge on September 20, 2021, after the market closed, when

Verrica issued a press release announcing that it had received a CRL from the FDA identifying

deficiencies at a facility of Verrica's contract manufacturer, stating in relevant part:

Verrica Pharmaceuticals Inc. (the "Company") (Nasdaq: VRCA), a dermatology
therapeutics company developing medications for skin diseases requiring medical

interventions, today announced that the U.S. Food and Drug Administration (FDA) has issued a Complete Response Letter (CRL) regarding its New Drug Application (NDA) for VP-102 for the treatment of molluscum contagiosum (molluscum). The Company had previously disclosed that the FDA extended the Prescription Drug User Fee Act (PDUFA) goal date for the NDA by three months to September 23, 2021 to allow the Agency additional time to review information submitted by the Company in response to comments from the Agency regarding the Company's human factors study.

***According to the CRL, the FDA has identified deficiencies at a facility of a contract manufacturing organization (CMO), which are not specifically related to the manufacturing of VP-102 but instead raise general quality issues at the facility. At no time prior to the CRL was the Company notified by the FDA of any deficiencies at the CMO related specifically to the manufacturing of VP-102 or that their general investigation of the facility would have any impact on the Company's NDA.  More importantly, the FDA did not identify any clinical, safety or product specific Chemistry, Manufacturing, and Controls (CMC) deficiencies related to VP-102.***

The Company understands from the CMO that it has implemented corrective actions to address the Agency's concerns and the CMO has advised Verrica that it is expecting a satisfactory resolution of the facility's identified deficiencies from the FDA within the next 30 business days.  During this timeframe, the Company will engage with the Agency to demonstrate that the Company's good manufacturing practices, controls and processes ensure that any deficiencies at the CMO do not impact the efficacy, safety or quality of VP-102.

"***We remain confident that we have a path forward for VP-102 as a potential treatment option for molluscum,*** a highly contagious viral skin disease affecting approximately six million people in the United States – primarily children – for which there are currently no FDA-approved treatments," said Ted White, Verrica's President and Chief Executive Officer.

27.     On this news, the Company's stock price fell $1.00, or 8.3%, to close at $11.03 per share on September 21, 2021, on unusually heavy trading volume.

28.     On September 29, 2021, Verrica filed a Form 8-K announcing the posting an updated corporate presentation. The presentation stated in relevant part that:

**U.S. Regulatory Status of VP-102**

- Verrica received a Complete Response Letter (CRL) from the FDA in September 2021 due to open general inspection itemsa t a contract manufacturer (CMO) that were not specific to VP-102

- The Company will request a Type A meeting with the FDA in Q4 '21 to demonstrate that the Company's good manufacturing practices, controls and processes ensure that any deficiencies at the CMO do not impact the efficacy, safety or quality of VP-102.

- *The CMO has also advised Verrica that it is expecting a satisfactory resolution of the facilities identified deficiencies from the FDA* prior to the Type A meeting.

- No clinical, safety or CMC issues specific to VP-102 were identified in the CRL, and *the Company remains confident in the path forward for VP-102 as the potential first and only FDA approved treatment option for molluscum*.

29.    On November 12, 2021, Verrica issued a press release announcing its third quarter

2021 financial results, stating in relevant part:

"We are pleased that the issues identified at the CMO unrelated to VP-102 have been successfully resolved, enabling us to move toward approval," said Ted White, Verrica's President and Chief Executive Officer. "We remain confident in VP-102's commercial potential. There is a high unmet medical need for molluscum treatments—the viral skin disease affects approximately 6 million people a year in the U.S., mostly children, and there are no FDA-approved treatments. We look forward to continuing our dialogue with the FDA on the appropriate path forward for approval of VP-102."

*             *             *

**Business Highlights and Recent Developments**

- On September 20, 2021, Verrica announced that the U.S. Food and Drug Administration ("FDA") issued a Complete Response Letter ("CRL") regarding its New Drug Application ("NDA") for VP-102 (cantharidin 0.7% Topical Solution) for the treatment of molluscum contagiosum ("molluscum"). According to the CRL, the *FDA identified deficiencies at a facility of a contract manufacturing organization ("CMO")*, which were not specifically related to the manufacturing of VP-102 but instead *raised general quality issues at the facility.* The FDA did not identify any clinical, safety or product specific Chemistry, Manufacturing, and Controls ("CMC") deficiencies related to VP-102. Following the CRL, on September 22, 2021 Verrica received a General Advice Letter from the FDA with recommendations to improve YCANTH's user interface.

- On November 5, 2021, Verrica was notified that the *inspection of the CMO has been classified as "voluntary action indicated" ("VAI")*, is now closed and that the VAI classification will not directly negatively impact FDA's assessment of the Company's NDA regarding this CMO. With the satisfactory

resolution of the facility inspection, Verrica has engaged the FDA to determine the next steps toward the potential approval of VP-102 for the treatment of molluscum.

30.     The same day, Verrica filed its Form 10-Q with the SEC for the period ended

September 30, 2021, stating in relevant part:

On September 17, 2021, the FDA issued a CRL regarding our NDA for VP-102. According to the CRL, the FDA identified deficiencies at a facility of a contract manufacturing organization, or CMO, which are not specifically related to the manufacturing of VP-102 but instead raise general quality issues at the facility. The FDA did not identify any clinical, safety or product specific Chemistry, Manufacturing, and Controls, or CMC, deficiencies related to VP-102.

*       *       *

On November 5, 2021, we were notified that the inspection of the CMO has been classified as "voluntary action indicated", or VAI, is now closed and that the VAI classification will not directly negatively impact FDA's assessment of our NDA regarding this CMO. With the satisfactory resolution of the facility inspection, we have engaged the FDA to determine the next steps towards the potential approval of VP-102 for the treatment of molluscum.

31.     On November 29, 2021, Verrica issued a press release announcing that it had

resubmitted the NDA for VP-102 following the "successful resolution of inspection deficiencies,"

stating in relevant part:

Verrica Pharmaceuticals Inc. ("Verrica") (Nasdaq: VRCA), a dermatology therapeutics company developing medications for skin diseases requiring medical interventions, today announced that it has resubmitted the New Drug Application (NDA) for VP-102 for the treatment of molluscum contagiosum (molluscum) to the U.S. Food and Drug Administration (FDA).

The resubmission is limited to those sections and elements of the NDA that were identified as deficiencies in the Complete Response Letter (CRL) issued by the FDA in September 2021. ***The resubmission addresses the successful resolution of inspection deficiencies identified at a contract manufacturing organization (CMO) in the CRL, as well as the recommendations included in the General Advice Letter received from the FDA that relate to VP-102's user interface.***

"We look forward to the FDA's review of the resubmission of our NDA for VP-102," said Ted White, Verrica's President and Chief Executive Officer. "Based on published guidance for the industry, we believe our resubmitted NDA qualifies as a Class I resubmission with a 2-month review. If approved, Verrica is well-

prepared to launch VP-102 as the first FDA-approved treatment option for molluscum, a highly contagious viral skin disease affecting 6 million people, primarily children, in the U.S. each year."

32.     The same day, Verrica filed a Form 8-K with the SEC announcing the posting of

an updated corporate presentation on its website and the resubmission of the NDA for VP-102 to

the FDA. The corporate presentation states in relevant part:

**U.S. Regulatory Status of VP-102**

- Verrica received a Complete Response Letter (CRL) from the FDA on September 17, 2021 due to open general inspection items at a contract manufacturer (CMO) that were not specific to VP-102.

*       *       *

- On November 5, 2021 Verrica was notified that the inspection of the CMO was classified as "voluntary action indicated" ("VAI"), is now closed and that the VAI classification will not directly negatively impact FDA's assessment of the Company's NDA.

- Verrica resubmitted the NDA for VP-102 on November 24, 2021; *__the resubmission is limited to address the successful resolution of inspection deficiencies identified at the CMO in the CRL, as well as the recommendations included in the General Advice Letter.__*

33.     On December 15, 2021, Verrica issued a press release announcing that the FDA

had accepted the NDA resubmission for VP-102, stating in relevant part:

Verrica Pharmaceuticals Inc. ("Verrica") (Nasdaq: VRCA), a dermatology therapeutics company developing medications for skin diseases requiring medical interventions, today announced that the U.S. Food and Drug Administration (FDA) acknowledged that Verrica's resubmitted New Drug Application (NDA) for VP-102 for the treatment of molluscum contagiosum (molluscum) was complete and assigned a Prescription Drug User Fee Act (PDUFA) goal date of May 24, 2022.

"We are pleased that the FDA has accepted our NDA resubmission for VP-102," said Ted White, Verrica's President and Chief Executive Officer. "While we recognize the demands of the Agency's current workload, we intend to work with the FDA toward approval as quickly as possible based on the limited changes in our resubmission. We continue to be encouraged by the overwhelming demand from both caregivers and the medical community for an FDA-approved treatment for molluscum, one of the largest unmet needs in medical dermatology."

34.     On March 2, 2022, Verrica issued a press release announcing its fourth quarter and

full-year 2021 financial results, stating in relevant part:

> "2022 is poised to be an exciting year for Verrica as we prepare to potentially launch VP-102 this summer for the treatment of molluscum, a disease affecting an estimated six million patients with no approved treatments, representing a significant market opportunity," said Ted White, Verrica's President and Chief Executive Officer.

*      *      *

**Business Highlights and Recent Developments**

**VP-102**

- On November 29, 2021, Verrica announced that it resubmitted the New Drug Application (NDA) for VP-102 for the treatment of molluscum contagiosum (molluscum) to the U.S. Food and Drug Administration (FDA). On December 15, 2021, Verrica announced that the FDA acknowledged that Verrica's resubmitted NDA was complete and assigned a Prescription Drug User Fee Act (PDUFA) goal date of May 24, 2022.

35.     The same day, Verrica filed a Form 10-K with the SEC for the period ended

December 31, 2021 (the "2021 10-K"), stating regarding manufacturing, in relevant part:

> ***We contract with third parties for the manufacture of VP-102 for preclinical and clinical testing and expect to continue to do so for commercialization. This reliance on third parties increases the risk that we will not have sufficient quantities of VP-102 or such quantities at an acceptable cost, which could delay, prevent or impair our development or commercialization efforts.***
>
> We do not have any manufacturing facilities or personnel. We currently rely, and expect to continue to rely, on third parties for the manufacture of VP-102, or any other product candidates which we may pursue, for preclinical and clinical testing as well as for commercial manufacture if VP-102 or any other product candidate which we may pursue receives marketing approval. This reliance on third parties increases the risk that we will not have sufficient quantities of VP-102 or be able to obtain quantities at an acceptable cost or quality, which could delay, prevent or impair our ability to timely conduct our clinical trials or our other development or commercialization efforts.
>
> We also expect to rely on third-party manufacturers or third-party collaborators for the manufacture of commercial supply of VP-102 or any other product candidates for which we obtain marketing approval. The facilities used by our contract manufacturers to manufacture our product candidates must be approved by the FDA

11

or other regulatory authorities pursuant to inspections that will be conducted prior to approval of our NDA, if at all, and in the future of additional NDAs or comparable marketing application to the FDA or other regulatory authority. We do not have control over a supplier's or manufacturer's compliance with laws, regulations and applicable cGMP standards and other laws and regulations, such as those related to environmental health and safety matters. *If our contract manufacturers cannot successfully manufacture material that conforms to our specifications and the strict regulatory requirements of the FDA or others, they will not be able to secure and maintain regulatory approval for their manufacturing facilities.* In addition, we have no control over the ability of our contract manufacturers to maintain adequate quality control, quality assurance and qualified personnel. If the FDA or a comparable foreign regulatory authority does not approve these facilities for the manufacture of our product candidates or if it withdraws any such approval in the future, we may need to find alternative manufacturing facilities, which would significantly impact our ability to develop, obtain regulatory approval for or market our product candidates, if approved.

We may be unable to establish any agreements with future third-party manufacturers or to do so on acceptable terms. Even if we are able to establish agreements with third-party manufacturers, qualifying and validating such manufacturers may take a significant period of time and reliance on third-party manufacturers entails additional risks, including:

- reliance on the third party for regulatory compliance and quality assurance;

- the possible breach of the manufacturing agreement by the third party;

- the possible misappropriation of our proprietary information, including our trade secrets and know-how;

- the possible increase in costs for the applicator components, raw materials or API in VP-102; and

- the possible termination or nonrenewal of any agreement by any third party at a time that is costly or inconvenient for us.

Third-party manufacturers may not be able to comply with cGMP regulations or similar regulatory requirements outside the United States. Our failure, or the failure of our third-party manufacturers, to comply with applicable regulations could result in sanctions being imposed on us, including clinical holds, fines, injunctions, civil penalties, delays, suspension or withdrawal of approvals, license revocation, seizures or recalls of product candidates or drugs, operating restrictions and criminal prosecutions, any of which could significantly and adversely affect supplies of our products.

(First emphasis in original.)

36.     On May 9, 2022, Verrica issued a press release announcing its first quarter 2022 financial results, stating in relevant part:

> "This quarter, we achieved commercial readiness and entered the final stage of pre-launch operations as our PDUFA date approaches for VP-102, potentially the first treatment approved by the FDA to treat molluscum," said Ted White, Verrica's President and Chief Executive Officer. "We look forward to potentially bringing treatment and relief to thousands of patients, primarily children, suffering from molluscum, starting with a sales focus in Dermatology, Pediatric Dermatology and key academic centers and health systems."

37.     The above statements identified in ¶¶ 26, 28-36 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) that there were manufacturing deficiencies at the facility where Verrica's contract manufacturer produced bulk solution for VP-102; (2) that these deficiencies were not remediated when Verrica resubmitted its NDA for VP-12 for molluscum; (3) that the foregoing presented significant risks to Verrica obtaining regulatory approval of VP-102 for molluscum; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

38.     On May 24, 2022, after the market closed, Verrica issued a press release announcing it had received another Complete Response Letter from the FDA for its NDA for VP-102, stating in relevant part:

> Verrica Pharmaceuticals Inc. (Verrica) (Nasdaq: VRCA), a dermatology therapeutics company developing medications for skin diseases requiring medical interventions, today announced that the U.S. Food and Drug Administration (FDA) has issued a Complete Response Letter (CRL) regarding its New Drug Application (NDA) for VP-102 for the treatment of molluscum contagiosum (molluscum).
>
> **_The only deficiency listed in the CRL was related to the deficiencies identified at a general reinspection of Sterling Pharmaceuticals Services, LLC (Sterling), the contract manufacturing organization (CMO) that manufactures Verrica's bulk_**

13

***solution drug product.*** Sterling advised Verrica on May 20, 2022 that it received notice that it is on OAI status. Sterling's OAI classification resulted from a week-long reinspection of the CMO conducted by FDA in February 2022. The reinspection was conducted approximately 90 days after Sterling was originally classified by the Agency as VAI (Voluntary Action Indicated) on November 17, 2021. Verrica understood that the VAI classification did not indicate that a reinspection was required.

The CRL did not identify any other deficiencies. Moreover, none of the issues identified by FDA during the reinspection were specific to the manufacturing of VP-102. Additionally, Verrica was informed by the Division that it had completed its review of Verrica's NDA and product label, there were no open questions on the NDA review, and the VP-102 label was ready to be communicated. However, Verrica has been informed that internal FDA policy is preventing the Agency from communicating the label and approving the NDA when a CMO has an unresolved classification status or is placed on OAI status.

*       *       *

Mr. White stated that "Verrica is extremely disappointed in the Agency's issuance of the CRL under the totality of these circumstances. However, as Verrica weighs all its options to bring the first FDA-approved treatment for molluscum, one of the largest unmet needs in dermatology, to the market as soon as possible, it will continue to work collaboratively with the Agency." Verrica currently intends to file a Type A meeting request by the end of this week.

In the meantime, Verrica is working collaboratively with Sterling and its regulatory and quality consultants to help Sterling present multiple options to the Agency to allow Sterling to expeditiously satisfy the majority of the deficiencies resulting in its OAI classification and which are the basis for the CRL. Concurrently, Verrica is engaging an additional CMO to serve as an alternative supplier of VP-102's bulk solution.

39.     On this news, the Company's shares fell $3.55, or 63.8%, to close at $2.01 per share on May 25, 2022, on unusually heavy trading volume.

**CLASS ACTION ALLEGATIONS**

40.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Verrica securities between May 28, 2021 and May 24, 2022, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers

14

and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

41.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Verrica's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Verrica shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Verrica or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

44.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Verrica; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

45.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

<u>UNDISCLOSED ADVERSE FACTS</u>

46.      The market for Verrica's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Verrica's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Verrica's securities relying upon the integrity of the market price of the Company's securities and market information relating to Verrica, and have been damaged thereby.

47.      During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Verrica's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Verrica's business, operations, and prospects as alleged herein.

48.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Verrica's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

49.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

50.     During the Class Period, Plaintiff and the Class purchased Verrica's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

51.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Verrica, their control over, and/or receipt and/or modification of Verrica's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Verrica, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

52.     The market for Verrica's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Verrica's securities traded at artificially inflated prices during the Class Period. On September 3, 2021, the Company's share price closed at a Class Period high of $13.96 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Verrica's securities and market information relating to Verrica, and have been damaged thereby.

53.     During the Class Period, the artificial inflation of Verrica's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Verrica's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Verrica and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted

in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

54.     At all relevant times, the market for Verrica's securities was an efficient market for the following reasons, among others:

(a)     Verrica shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Verrica filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Verrica regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Verrica was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

55.     As a result of the foregoing, the market for Verrica's securities promptly digested current information regarding Verrica from all publicly available sources and reflected such information in Verrica's share price. Under these circumstances, all purchasers of Verrica's securities during the Class Period suffered similar injury through their purchase of Verrica's securities at artificially inflated prices and a presumption of reliance applies.

56.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.   Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

57.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Verrica who knew that the statement was false when made.

## FIRST CLAIM

**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Verrica's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

60.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Verrica's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

61.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Verrica's financial well-being and prospects, as specified herein.

62.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course

of conduct as alleged herein in an effort to assure investors of Verrica's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Verrica and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

63.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

64.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

22

for the purpose and effect of concealing Verrica's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

65.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Verrica's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Verrica's securities during the Class Period at artificially high prices and were damaged thereby.

66.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Verrica was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Verrica securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

67.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

68.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

69.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

70.     Individual Defendants acted as controlling persons of Verrica within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the

particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

72.     As set forth above, Verrica and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

/ / /

/ / /

/ / /

Dated: June 6, 2022                              By:  */s/ Lee Albert*_____

**GLANCY PRONGAY & MURRAY LLP**
Lee Albert (PA ID# 046852)
230 Park Avenue, Suite 348
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lalbert@glancylaw.com

Charles H. Linehan (*Pro Hac* to be Filed)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz (*Pro Hac* to be filed)
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Attorneys for Plaintiff Kranthi Gorlamari*

**SWORN CERTIFICATION OF PLAINTIFF**

**VERRICA PHARMACEUTICALS INC. SECURITIES LITIGATION**

I, Kranthi Gorlamari, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Verrica Pharmaceuticals Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Verrica Pharmaceuticals Inc. securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

5/30/2022                                 *kranthi Gorlamari*

_____        _____

Date                                Kranthi Gorlamari

**Kranthi Gorlamari 's Transactions in Verrica Pharmaceuticals Inc. (VRCA)**

**Account 1**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 4/20/2022 | Bought | 335 | $7.6180 |

**Account 2**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 8/19/2021 | Bought | 1 | $9.4000 |
| 8/19/2021 | Bought | 1 | $9.4700 |
| 8/19/2021 | Bought | 1 | $9.5500 |
| 8/19/2021 | Bought | 24 | $9.4000 |
| 8/19/2021 | Bought | 24 | $9.5500 |
| 8/19/2021 | Bought | 25 | $9.5000 |
| 8/19/2021 | Bought | 74 | $9.4700 |
| 8/20/2021 | Bought | 1 | $9.9000 |
| 8/20/2021 | Bought | 19 | $9.9000 |
| 8/24/2021 | Bought | 1 | $10.4500 |
| 8/24/2021 | Bought | 10 | $10.6000 |
| 8/24/2021 | Bought | 5 | $10.5600 |
| 8/24/2021 | Bought | 5 | $10.6000 |
| 8/24/2021 | Bought | 9 | $10.4500 |
| 8/25/2021 | Bought | 1 | $11.1500 |
| 8/25/2021 | Bought | 1 | $11.1500 |
| 8/25/2021 | Bought | 1 | $11.1800 |
| 8/25/2021 | Bought | 1 | $11.1900 |
| 8/25/2021 | Bought | 1 | $11.2000 |
| 8/25/2021 | Bought | 1 | $11.2300 |
| 8/25/2021 | Bought | 1 | $11.2600 |
| 8/25/2021 | Bought | 10 | $11.1900 |
| 8/25/2021 | Bought | 20 | $10.6400 |
| 8/25/2021 | Bought | 23 | $11.1500 |
| 8/25/2021 | Bought | 24 | $11.2300 |
| 8/25/2021 | Bought | 24 | $11.2600 |
| 8/25/2021 | Bought | 25 | $11.2500 |
| 8/25/2021 | Bought | 25 | $11.2600 |
| 8/25/2021 | Bought | 4 | $11.1800 |
| 8/25/2021 | Bought | 8 | $11.2000 |
| 8/26/2021 | Bought | 150 | $11.6300 |
| 8/26/2021 | Bought | 2 | $11.6300 |
| 8/26/2021 | Bought | 2 | $11.6300 |

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 8/26/2021 | Bought | 2 | $11.6300 |
| 8/26/2021 | Bought | 4 | $11.6300 |
| 8/26/2021 | Bought | 5 | $11.6000 |
| 9/20/2021 | Sold | -535 | $9.1000 |
| 1/25/2022 | Bought | 1 | $7.6800 |
| 2/23/2022 | Sold | -1 | $8.1800 |
| 3/30/2022 | Bought | 12 | $8.2100 |
| 3/30/2022 | Bought | 13 | $8.2100 |
| 3/30/2022 | Bought | 75 | $8.2100 |
| 3/31/2022 | Bought | 1 | $8.0200 |
| 3/31/2022 | Bought | 1 | $8.0500 |
| 3/31/2022 | Bought | 1 | $8.0900 |
| 3/31/2022 | Bought | 10 | $7.9900 |
| 3/31/2022 | Bought | 10 | $8.0400 |
| 3/31/2022 | Bought | 14 | $8.0300 |
| 3/31/2022 | Bought | 15 | $8.0000 |
| 3/31/2022 | Bought | 15 | $8.0500 |
| 3/31/2022 | Bought | 15 | $8.0500 |
| 3/31/2022 | Bought | 16 | $7.9800 |
| 3/31/2022 | Bought | 19 | $8.0900 |
| 3/31/2022 | Bought | 2 | $7.9800 |
| 3/31/2022 | Bought | 24 | $8.0200 |
| 3/31/2022 | Bought | 25 | $8.0000 |
| 3/31/2022 | Bought | 25 | $8.0000 |
| 3/31/2022 | Bought | 25 | $8.0100 |
| 3/31/2022 | Bought | 25 | $8.0400 |
| 3/31/2022 | Bought | 25 | $8.1400 |
| 3/31/2022 | Bought | 3 | $7.9800 |
| 3/31/2022 | Bought | 36 | $8.0600 |
| 3/31/2022 | Bought | 39 | $8.0400 |
| 3/31/2022 | Bought | 4 | $7.9800 |
| 3/31/2022 | Bought | 4 | $8.0200 |
| 3/31/2022 | Bought | 41 | $8.0600 |
| 3/31/2022 | Bought | 7 | $8.0200 |
| 3/31/2022 | Bought | 7 | $8.0500 |
| 3/31/2022 | Bought | 8 | $8.0500 |
| 3/31/2022 | Bought | 9 | $8.0500 |
| 3/31/2022 | Bought | 99 | $8.0200 |
| 4/1/2022 | Bought | 25 | $8.3800 |
| 4/4/2022 | Bought | 100 | $8.5600 |
| 4/4/2022 | Bought | 208 | $8.5800 |
| 4/4/2022 | Bought | 25 | $8.5600 |

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 4/4/2022 | Bought | 25 | $8.5600 |
| 4/5/2022 | Bought | 100 | $8.7600 |
| 4/5/2022 | Bought | 100 | $8.7700 |
| 4/5/2022 | Bought | 100 | $8.7700 |
| 4/5/2022 | Bought | 18 | $8.7600 |
| 4/5/2022 | Bought | 20 | $8.9300 |
| 4/5/2022 | Bought | 22 | $8.7600 |
| 4/5/2022 | Bought | 22 | $8.9500 |
| 4/5/2022 | Bought | 31 | $8.7700 |
| 4/5/2022 | Bought | 34 | $8.7700 |
| 4/5/2022 | Bought | 35 | $8.7700 |
| 4/5/2022 | Bought | 50 | $8.8700 |
| 4/5/2022 | Bought | 78 | $8.7600 |
| 4/5/2022 | Bought | 82 | $8.7600 |
| 4/5/2022 | Bought | 98 | $8.7500 |
| 4/6/2022 | Bought | 2 | $8.8900 |
| 4/6/2022 | Bought | 20 | $8.7000 |
| 4/6/2022 | Bought | 28 | $8.7000 |
| 4/6/2022 | Bought | 4 | $8.7000 |
| 4/6/2022 | Bought | 48 | $8.7100 |
| 4/7/2022 | Bought | 1 | $8.8500 |
| 4/7/2022 | Bought | 10 | $8.7200 |
| 4/7/2022 | Bought | 10 | $8.7200 |
| 4/7/2022 | Bought | 10 | $8.8800 |
| 4/7/2022 | Bought | 15 | $8.8000 |
| 4/7/2022 | Bought | 25 | $8.8000 |
| 4/7/2022 | Bought | 25 | $8.8000 |
| 4/7/2022 | Bought | 27 | $8.7800 |
| 4/7/2022 | Bought | 4 | $8.7800 |
| 4/7/2022 | Bought | 40 | $8.8600 |
| 4/7/2022 | Bought | 7 | $8.8000 |
| 4/7/2022 | Bought | 9 | $8.7800 |
| 4/8/2022 | Bought | 17 | $8.6500 |
| 4/8/2022 | Bought | 25 | $8.7800 |
| 4/11/2022 | Bought | 1 | $8.5500 |
| 4/11/2022 | Bought | 300 | $8.1700 |
| 4/11/2022 | Bought | 49 | $8.1700 |
| 4/11/2022 | Sold | -1 | $8.5300 |
| 4/11/2022 | Sold | -1 | $8.5300 |
| 4/11/2022 | Sold | -1,271 | $8.5100 |
| 4/11/2022 | Sold | -10 | $8.5300 |
| 4/11/2022 | Sold | -100 | $8.5300 |

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 4/11/2022 | Sold | -100 | $8.5300 |
| 4/11/2022 | Sold | -100 | $8.5300 |
| 4/11/2022 | Sold | -100 | $8.5300 |
| 4/11/2022 | Sold | -100 | $8.5400 |
| 4/11/2022 | Sold | -100 | $8.5400 |
| 4/11/2022 | Sold | -146 | $8.5300 |
| 4/11/2022 | Sold | -18 | $8.5300 |
| 4/11/2022 | Sold | -78 | $8.5300 |
| 4/12/2022 | Bought | 1 | $8.0400 |
| 4/12/2022 | Bought | 1 | $8.0400 |
| 4/12/2022 | Bought | 13 | $7.9500 |
| 4/12/2022 | Bought | 13 | $8.0600 |
| 4/12/2022 | Bought | 30 | $8.0600 |
| 4/12/2022 | Bought | 31 | $8.0600 |
| 4/12/2022 | Bought | 48 | $8.0600 |
| 4/12/2022 | Bought | 50 | $8.0700 |
| 4/13/2022 | Bought | 100 | $7.7600 |
| 4/13/2022 | Bought | 13 | $7.6800 |
| 4/13/2022 | Bought | 13 | $7.8200 |
| 4/13/2022 | Bought | 15 | $7.8200 |
| 4/13/2022 | Bought | 25 | $7.7000 |
| 4/13/2022 | Bought | 25 | $7.7000 |
| 4/13/2022 | Bought | 25 | $7.7200 |
| 4/13/2022 | Bought | 35 | $7.8200 |
| 4/13/2022 | Bought | 50 | $7.6900 |
| 4/13/2022 | Bought | 50 | $7.7100 |
| 4/13/2022 | Bought | 50 | $7.7400 |
| 4/13/2022 | Bought | 50 | $7.7600 |
| 4/13/2022 | Bought | 6 | $7.6800 |
| 4/13/2022 | Bought | 6 | $7.6800 |
| 4/14/2022 | Bought | 1 | $7.4100 |
| 4/14/2022 | Bought | 1 | $7.4100 |
| 4/14/2022 | Bought | 1 | $7.4100 |
| 4/14/2022 | Bought | 1 | $7.4100 |
| 4/14/2022 | Bought | 1 | $7.4400 |
| 4/14/2022 | Bought | 1 | $7.4400 |
| 4/14/2022 | Bought | 1 | $7.4600 |
| 4/14/2022 | Bought | 1 | $7.4600 |
| 4/14/2022 | Bought | 1 | $7.5700 |
| 4/14/2022 | Bought | 1 | $7.5700 |
| 4/14/2022 | Bought | 10 | $7.4100 |
| 4/14/2022 | Bought | 10 | $7.7300 |

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 4/14/2022 | Bought | 18 | $7.4600 |
| 4/14/2022 | Bought | 19 | $7.5700 |
| 4/14/2022 | Bought | 19 | $7.5700 |
| 4/14/2022 | Bought | 2 | $7.4100 |
| 4/14/2022 | Bought | 2 | $7.4400 |
| 4/14/2022 | Bought | 2 | $7.4600 |
| 4/14/2022 | Bought | 20 | $7.4100 |
| 4/14/2022 | Bought | 20 | $7.4500 |
| 4/14/2022 | Bought | 20 | $7.5500 |
| 4/14/2022 | Bought | 25 | $7.5500 |
| 4/14/2022 | Bought | 3 | $7.4400 |
| 4/14/2022 | Bought | 3 | $7.4400 |
| 4/14/2022 | Bought | 3 | $7.4600 |
| 4/14/2022 | Bought | 4 | $7.4100 |
| 4/14/2022 | Bought | 50 | $7.4600 |
| 4/14/2022 | Bought | 7 | $7.4300 |
| 4/19/2022 | Bought | 1 | $7.5600 |
| 4/19/2022 | Bought | 10 | $7.5600 |
| 4/19/2022 | Bought | 10 | $7.6000 |
| 4/19/2022 | Bought | 100 | $7.5600 |
| 4/19/2022 | Bought | 100 | $7.5600 |
| 4/19/2022 | Bought | 100 | $7.6500 |
| 4/19/2022 | Bought | 100 | $7.6800 |
| 4/19/2022 | Bought | 100 | $7.6900 |
| 4/19/2022 | Bought | 100 | $7.7100 |
| 4/19/2022 | Bought | 100 | $7.7600 |
| 4/19/2022 | Bought | 11 | $7.5600 |
| 4/19/2022 | Bought | 14 | $7.6000 |
| 4/19/2022 | Bought | 14 | $7.6200 |
| 4/19/2022 | Bought | 19 | $7.7100 |
| 4/19/2022 | Bought | 25 | $7.6500 |
| 4/19/2022 | Bought | 26 | $7.5600 |
| 4/19/2022 | Bought | 281 | $7.7100 |
| 4/19/2022 | Bought | 3 | $7.5600 |
| 4/19/2022 | Bought | 3 | $7.5600 |
| 4/19/2022 | Bought | 3 | $7.6200 |
| 4/19/2022 | Bought | 4 | $7.5600 |
| 4/19/2022 | Bought | 4 | $7.5600 |
| 4/19/2022 | Bought | 46 | $7.5600 |
| 4/19/2022 | Bought | 46 | $7.6000 |
| 4/19/2022 | Bought | 46 | $7.6700 |
| 4/19/2022 | Bought | 5 | $7.5600 |

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 4/19/2022 | Bought | 5 | $7.5600 |
| 4/19/2022 | Bought | 50 | $7.6300 |
| 4/19/2022 | Bought | 6 | $7.5600 |
| 4/19/2022 | Bought | 6 | $7.6000 |
| 4/19/2022 | Bought | 7 | $7.5600 |
| 4/19/2022 | Bought | 7 | $7.6700 |
| 4/19/2022 | Bought | 72 | $7.5600 |
| 4/19/2022 | Bought | 8 | $7.5600 |
| 4/19/2022 | Bought | 8 | $7.5600 |
| 4/19/2022 | Bought | 8 | $7.6000 |
| 4/19/2022 | Bought | 8 | $7.6000 |
| 4/19/2022 | Bought | 8 | $7.6000 |
| 4/19/2022 | Bought | 8 | $7.6200 |
| 4/19/2022 | Bought | 84 | $7.5600 |
| 4/19/2022 | Bought | 97 | $7.5600 |
| 5/4/2022 | Bought | 100 | $6.3200 |
| 5/4/2022 | Bought | 100 | $6.3200 |
| 5/4/2022 | Bought | 100 | $6.3200 |
| 5/4/2022 | Bought | 100 | $6.3200 |
| 5/4/2022 | Bought | 100 | $6.3500 |
| 5/4/2022 | Bought | 12 | $6.3200 |
| 5/4/2022 | Bought | 145 | $6.3200 |
| 5/4/2022 | Bought | 15 | $6.3200 |
| 5/4/2022 | Bought | 17 | $6.3200 |
| 5/4/2022 | Bought | 2 | $6.3200 |
| 5/4/2022 | Bought | 20 | $6.2600 |
| 5/4/2022 | Bought | 200 | $6.3000 |
| 5/4/2022 | Bought | 209 | $6.2600 |
| 5/4/2022 | Bought | 9 | $6.3200 |
| 5/17/2022 | Bought | 25 | $6.3000 |
| 5/18/2022 | Bought | 100 | $6.1700 |
| 5/18/2022 | Bought | 40 | $6.1400 |

## Account 3

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 3/30/2022 | Bought | 120 | $8.2100 |
| 3/31/2022 | Bought | 100 | $8.0300 |
| 3/31/2022 | Bought | 100 | $8.0700 |
| 3/31/2022 | Bought | 56 | $8.0000 |
| 3/31/2022 | Bought | 50 | $8.0600 |
| 3/31/2022 | Bought | 30 | $8.0600 |
| 3/31/2022 | Bought | 25 | $7.9700 |

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 3/31/2022 | Bought | 25 | $8.0300 |
| 3/31/2022 | Bought | 25 | $8.0400 |
| 3/31/2022 | Bought | 25 | $8.0500 |
| 4/21/2022 | Bought | 449 | $7.5900 |
| 4/21/2022 | Bought | 200 | $7.5800 |
| 4/21/2022 | Bought | 50 | $7.6200 |
| 4/21/2022 | Bought | 15 | $7.5900 |
| 4/21/2022 | Bought | 1 | $7.5800 |

**Account 4**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 3/23/2022 | Bought | 10 | $8.2600 |
| 3/23/2022 | Bought | 10 | $8.3800 |
| 3/23/2022 | Bought | 5 | $8.3500 |
| 3/24/2022 | Bought | 100 | $8.1700 |
| 3/24/2022 | Bought | 100 | $8.2200 |
| 3/24/2022 | Bought | 100 | $8.3000 |
| 3/24/2022 | Bought | 99 | $8.2200 |
| 3/24/2022 | Bought | 75 | $8.1700 |
| 3/24/2022 | Bought | 25 | $8.1000 |
| 3/24/2022 | Bought | 25 | $8.1700 |
| 3/24/2022 | Bought | 20 | $8.1300 |
| 3/24/2022 | Bought | 20 | $8.1300 |
| 3/24/2022 | Bought | 10 | $8.3300 |
| 3/24/2022 | Bought | 1 | $8.2100 |
| 3/25/2022 | Bought | 25 | $8.2200 |
| 3/25/2022 | Bought | 25 | $8.2600 |
| 3/28/2022 | Bought | 50 | $8.1600 |
| 3/28/2022 | Bought | 40 | $8.1700 |
| 3/28/2022 | Bought | 25 | $8.1700 |
| 3/28/2022 | Bought | 20 | $8.2400 |
| 3/28/2022 | Bought | 15 | $8.1700 |
| 3/30/2022 | Bought | 100 | $8.2200 |
| 3/30/2022 | Bought | 75 | $8.2100 |
| 3/30/2022 | Bought | 25 | $8.2100 |
| 3/31/2022 | Bought | 50 | $7.9700 |
| 3/31/2022 | Bought | 50 | $8.0000 |
| 3/31/2022 | Bought | 50 | $8.0100 |
| 3/31/2022 | Bought | 50 | $8.0400 |
| 3/31/2022 | Bought | 41 | $8.0800 |
| 3/31/2022 | Bought | 25 | $7.9600 |
| 3/31/2022 | Bought | 25 | $7.9800 |

| Date | Transaction Type | Quantity | Unit Price |
|------|-----------------|----------|-----------|
| 3/31/2022 | Bought | 25 | $8.0100 |
| 3/31/2022 | Bought | 25 | $8.0300 |
| 3/31/2022 | Bought | 25 | $8.0300 |
| 3/31/2022 | Bought | 25 | $8.1400 |
| 3/31/2022 | Bought | 9 | $8.0300 |
| 4/5/2022 | Bought | 202 | $8.9100 |
| 4/5/2022 | Bought | 118 | $8.9200 |
| 4/5/2022 | Bought | 105 | $8.9000 |
| 4/5/2022 | Bought | 100 | $8.7600 |
| 4/5/2022 | Bought | 100 | $8.7600 |
| 4/5/2022 | Bought | 100 | $8.9400 |
| 4/5/2022 | Bought | 61 | $8.9300 |
| 4/5/2022 | Bought | 14 | $8.9000 |
| 4/6/2022 | Bought | 25 | $8.7100 |
| 4/7/2022 | Bought | 40 | $8.8100 |
| 4/7/2022 | Bought | 25 | $8.8000 |
| 4/7/2022 | Bought | 10 | $8.8800 |
| 4/8/2022 | Bought | 150 | $8.8000 |
| 4/8/2022 | Bought | 50 | $8.5600 |
| 4/8/2022 | Bought | 50 | $8.7800 |
| 4/11/2022 | Bought | 500 | $8.3000 |
| 4/11/2022 | Bought | 500 | $8.3100 |
| 4/11/2022 | Bought | 421 | $8.2800 |
| 4/11/2022 | Bought | 200 | $8.2400 |
| 4/11/2022 | Bought | 200 | $8.2500 |
| 4/11/2022 | Bought | 100 | $8.1600 |
| 4/11/2022 | Bought | 100 | $8.2000 |
| 4/11/2022 | Bought | 100 | $8.2300 |
| 4/11/2022 | Bought | 100 | $8.2400 |
| 4/11/2022 | Bought | 79 | $8.2800 |
| 4/11/2022 | Bought | 77 | $8.1900 |
| 4/11/2022 | Bought | 59 | $8.1800 |
| 4/11/2022 | Bought | 50 | $8.1400 |
| 4/11/2022 | Bought | 41 | $8.1700 |
| 4/11/2022 | Bought | 23 | $8.1900 |
| 4/11/2022 | Sold | -2,550 | $8.5100 |
| 4/12/2022 | Bought | 100 | $7.9500 |
| 4/12/2022 | Bought | 50 | $7.8400 |
| 4/12/2022 | Bought | 50 | $7.8400 |
| 4/12/2022 | Bought | 50 | $7.9500 |
| 4/12/2022 | Bought | 50 | $7.9500 |
| 4/12/2022 | Bought | 50 | $7.9600 |

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 4/12/2022 | Bought | 50 | $8.0000 |
| 4/12/2022 | Bought | 50 | $8.0300 |
| 4/12/2022 | Bought | 50 | $8.0700 |
| 4/12/2022 | Bought | 25 | $7.7300 |
| 4/12/2022 | Bought | 25 | $7.7500 |
| 4/12/2022 | Bought | 25 | $7.8000 |
| 4/12/2022 | Bought | 25 | $7.8700 |
| 4/12/2022 | Bought | 25 | $7.9000 |
| 4/12/2022 | Bought | 25 | $7.9300 |
| 4/13/2022 | Bought | 400 | $7.7000 |
| 4/13/2022 | Bought | 250 | $7.7400 |
| 4/13/2022 | Bought | 250 | $7.7600 |
| 4/13/2022 | Bought | 100 | $7.7400 |
| 4/13/2022 | Bought | 100 | $7.7400 |
| 4/13/2022 | Bought | 100 | $7.7500 |
| 4/13/2022 | Bought | 100 | $7.7900 |
| 4/13/2022 | Bought | 98 | $7.7400 |
| 4/13/2022 | Bought | 50 | $7.7100 |
| 4/13/2022 | Bought | 25 | $7.6800 |
| 4/13/2022 | Bought | 25 | $7.7000 |
| 4/13/2022 | Bought | 2 | $7.7300 |
| 4/14/2022 | Bought | 850 | $7.4200 |
| 4/14/2022 | Bought | 125 | $7.4500 |
| 4/14/2022 | Bought | 100 | $7.4300 |
| 4/14/2022 | Bought | 50 | $7.4200 |
| 4/14/2022 | Bought | 50 | $7.5600 |
| 4/14/2022 | Bought | 50 | $7.5700 |
| 4/14/2022 | Bought | 25 | $7.5600 |
| 4/14/2022 | Bought | 25 | $7.5700 |
| 4/14/2022 | Bought | 25 | $7.5700 |
| 4/18/2022 | Bought | 50 | $7.6600 |
| 4/18/2022 | Bought | 50 | $7.6700 |
| 4/18/2022 | Bought | 50 | $7.7000 |
| 4/19/2022 | Bought | 24 | $7.6600 |
| 4/19/2022 | Bought | 1 | $7.6400 |
| 4/20/2022 | Bought | 200 | $7.6200 |
| 4/20/2022 | Bought | 125 | $7.6400 |
| 4/21/2022 | Bought | 1,000 | $7.6100 |
| 4/21/2022 | Bought | 900 | $7.5900 |
| 4/21/2022 | Bought | 648 | $7.5800 |
| 4/21/2022 | Bought | 500 | $7.4500 |
| 4/21/2022 | Bought | 500 | $7.5900 |

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 4/21/2022 | Bought | 200 | $7.4300 |
| 4/21/2022 | Bought | 183 | $7.5600 |
| 4/21/2022 | Bought | 166 | $7.5700 |
| 4/21/2022 | Bought | 100 | $7.5800 |
| 4/21/2022 | Bought | 99 | $7.4300 |
| 4/21/2022 | Bought | 3 | $7.5500 |
| 4/21/2022 | Bought | 1 | $7.4300 |
| 5/23/2022 | Sold | -50 | $6.3000 |

**Account 5**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 8/19/2021 | Bought | 5 | $9.5000 |
| 8/20/2021 | Bought | 20 | $9.9100 |
| 8/24/2021 | Bought | 25 | $10.0100 |
| 8/25/2021 | Bought | 25 | $11.2000 |
| 8/25/2021 | Bought | 25 | $11.2500 |
| 8/25/2021 | Bought | 25 | $11.1500 |
| 8/25/2021 | Bought | 50 | $10.6500 |
| 8/26/2021 | Bought | 25 | $11.3000 |
| 8/26/2021 | Bought | 5 | $11.3000 |
| 8/26/2021 | Bought | 25 | $11.4948 |
| 8/31/2021 | Bought | 28 | $11.1200 |
| 8/31/2021 | Bought | 20 | $11.2600 |
| 9/1/2021 | Bought | 27 | $10.9000 |
| 9/8/2021 | Bought | 35 | $12.7000 |
| 9/8/2021 | Bought | 30 | $12.7500 |
| 9/8/2021 | Bought | 15 | $12.7500 |
| 9/20/2021 | Sold | -535 | $9.2400 |
| 5/4/2022 | Bought | 1,158 | $6.3000 |
| 5/16/2022 | Bought | 70 | $6.0500 |
| 5/16/2022 | Bought | 300 | $6.0550 |
| 5/16/2022 | Bought | 100 | $6.0550 |

**Account 6**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 3/31/2022 | Bought | 50 | $8.0100 |
| 3/31/2022 | Bought | 50 | $8.0300 |
| 3/31/2022 | Bought | 25 | $8.0300 |
| 3/31/2022 | Bought | 25 | $8.0400 |
| 3/31/2022 | Bought | 50 | $8.0600 |
| 3/31/2022 | Bought | 50 | $8.0900 |
| 3/31/2022 | Bought | 50 | $8.0500 |

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 3/31/2022 | Bought | 24 | $8.0500 |
| 3/31/2022 | Bought | 25 | $8.0000 |
| 3/31/2022 | Bought | 50 | $8.0100 |
| 4/5/2022 | Bought | 200 | $8.7600 |
| 4/5/2022 | Bought | 95 | $8.7710 |
| 4/5/2022 | Bought | 50 | $8.9300 |
| 4/6/2022 | Bought | 25 | $8.7100 |
| 4/6/2022 | Bought | 25 | $8.7110 |
| 4/7/2022 | Bought | 50 | $8.8000 |
| 4/7/2022 | Bought | 50 | $8.8500 |
| 4/7/2022 | Bought | 30 | $8.8000 |
| 4/7/2022 | Bought | 20 | $8.8800 |
| 4/7/2022 | Bought | 50 | $8.8000 |
| 4/8/2022 | Bought | 25 | $8.7850 |
| 4/8/2022 | Bought | 25 | $8.1800 |
| 4/8/2022 | Bought | 50 | $8.8000 |
| 4/8/2022 | Bought | 12 | $8.8300 |
| 4/8/2022 | Bought | 25 | $8.6000 |
| 4/8/2022 | Bought | 10 | $8.7110 |
| 4/11/2022 | Bought | 50 | $8.1350 |
| 4/11/2022 | Bought | 100 | $8.1600 |
| 4/11/2022 | Bought | 100 | $8.2700 |
| 4/11/2022 | Bought | 100 | $8.2000 |
| 4/11/2022 | Bought | 100 | $8.2700 |
| 4/11/2022 | Bought | 100 | $8.2700 |
| 4/11/2022 | Bought | 100 | $8.2500 |
| 4/11/2022 | Bought | 100 | $8.1910 |
| 4/11/2022 | Bought | 100 | $8.2400 |
| 4/11/2022 | Bought | 300 | $8.3357 |
| 4/11/2022 | Bought | 500 | $8.3510 |
| 4/11/2022 | Bought | 100 | $8.3380 |
| 4/11/2022 | Bought | 100 | $8.3000 |
| 4/11/2022 | Sold | -1,200 | $8.5022 |
| 4/12/2022 | Bought | 50 | $7.8100 |
| 4/12/2022 | Bought | 25 | $7.7500 |
| 4/12/2022 | Bought | 25 | $7.7369 |
| 4/12/2022 | Bought | 25 | $7.8000 |
| 4/12/2022 | Bought | 25 | $7.8300 |
| 4/12/2022 | Bought | 25 | $7.9500 |
| 4/12/2022 | Bought | 25 | $7.9500 |
| 4/12/2022 | Bought | 100 | $7.9500 |
| 4/12/2022 | Bought | 25 | $7.8700 |

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 4/12/2022 | Bought | 25 | $8.0300 |
| 4/13/2022 | Bought | 50 | $7.7000 |
| 4/13/2022 | Bought | 50 | $7.7118 |
| 4/13/2022 | Bought | 75 | $7.6800 |
| 4/13/2022 | Bought | 25 | $7.6800 |
| 4/13/2022 | Bought | 25 | $7.7000 |
| 4/13/2022 | Bought | 25 | $7.6991 |
| 4/13/2022 | Bought | 50 | $7.7400 |
| 4/13/2022 | Bought | 50 | $7.7400 |
| 4/13/2022 | Bought | 50 | $7.7000 |
| 4/13/2022 | Bought | 100 | $7.7400 |
| 4/13/2022 | Bought | 100 | $7.7427 |
| 4/14/2022 | Bought | 25 | $7.4088 |
| 4/14/2022 | Bought | 25 | $7.4298 |
| 4/14/2022 | Bought | 25 | $7.4100 |
| 4/14/2022 | Bought | 50 | $7.4200 |
| 4/14/2022 | Bought | 25 | $7.4450 |
| 4/14/2022 | Bought | 55 | $7.4500 |
| 4/14/2022 | Bought | 15 | $7.4500 |
| 4/14/2022 | Bought | 25 | $7.5484 |
| 4/14/2022 | Bought | 20 | $7.5619 |
| 4/14/2022 | Bought | 35 | $7.5700 |
| 4/14/2022 | Bought | 20 | $7.5700 |
| 4/14/2022 | Bought | 25 | $7.6450 |
| 4/18/2022 | Bought | 25 | $7.1000 |
| 4/18/2022 | Bought | 50 | $7.6700 |
| 4/18/2022 | Bought | 50 | $7.6583 |
| 4/18/2022 | Bought | 50 | $7.6500 |
| 4/18/2022 | Bought | 25 | $7.8684 |
| 4/18/2022 | Bought | 25 | $7.8400 |
| 4/19/2022 | Bought | 500 | $7.6200 |
| 4/19/2022 | Bought | 200 | $7.5600 |
| 4/19/2022 | Bought | 100 | $7.6100 |
| 4/19/2022 | Bought | 100 | $7.6600 |
| 4/19/2022 | Bought | 100 | $7.6900 |
| 4/19/2022 | Bought | 100 | $7.6700 |
| 4/19/2022 | Bought | 25 | $7.6700 |