**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KRANTHI GORLAMARI, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:22-cv-02226-MSG |
| Plaintiff, | |
| v. | |
| VERRICA PHARMACEUTICALS, INC., TED WHITE, P. TERENCE KOHLER JR. and A. BRIAN DAVIS, | |
| Defendants. | |

**LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

I.    INTRODUCTION ...................................................................................................... 1

II.    FACTUAL BACKGROUND ..................................................................................... 4

    A.    Verrica's Business ........................................................................................... 4

    B.    Significance Of cGMP Regulations And The FDA's Use Of "Form 483" ............. 4

    C.    Verrica's Troubled Path To FDA Approval Of VP-102 And Its
        CMO's Recurring And Undisclosed cGMP Compliance Problems ....................... 5

        1.    Verrica's September 2019 Initial VP-102 NDA Submission,
            Resulting CRL, And December 2020 Resubmission ................................. 5

        2.    Verrica Announces The FDA's Pre-Approval Planned
            Inspection ............................................................................................... 5

        3.    Verrica Receives Its Second CRL In September 2021 ............................... 6

        4.    Verrica's November 2021 "Successfully Resolved"
            Announcement ......................................................................................... 6

        5.    Verrica Receives Its Second Sterling-Related CRL In
            May2022 ................................................................................................. 7

III.    APPLICABLE LEGAL STANDARDS DISFAVOR DEFENDANTS'
    MOTION .................................................................................................................... 8

IV.    THE AC ALLEGES ACTIONABLE MISLEADING STATEMENTS
    AND OMISSIONS ...................................................................................................... 8

    A.    The Failure To Disclose The May 2021 Form 483 Was A Material
        Omission ......................................................................................................... 9

    B.    The Successful Resolution Statements Were Materially False
        And Misleading ............................................................................................. 12

    C.    The Failure To Disclose The February 2022 Form 483 Was
        A Material Omission ...................................................................................... 14

V.  THE AC ADEQUATELY ALLEGES SCIENTER ............................................................16

VI.  THE AC ADEQUATELY ALLEGES LOSS CAUSATION ...........................................22

VII.  THE AC ADEQUATELY ALLEGES CONTROL PERSON LIABILITY .....................25

VIII.  CONCLUSION ...............................................................................................................25

## TABLE OF AUTHORITIES

Cases                                                                                                                Page(s)

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................8

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..............................................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................................8

*Belmont v. MB Inv. Partners, Inc.*,
    708 F.3d 470 (3d Cir. 2013) ...............................................................................................25

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) .................................................................................................9

*Carmack v. Amaya Inc.*,
    258 F. Supp. 3d 454 (D.N.J. 2017)....................................................................................25

*De Vito v. Liquid Holdings Grp., Inc.*,
    2018 WL 6891832 (D.N.J. Dec. 31, 2018)..........................................................................11

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)............................................................................................................22

*Emps. Ret. Sys. of Puerto Rico Elec. Power Auth. v. Conduent Inc.*,
    2020 WL 3026536 (D.N.J. June 5, 2020)...........................................................................17

*EP Medsys., Inc. v. Echocath, Inc.*,
    235 F.3d 865 (3d Cir. 2000) ..............................................................................................22

*Fergus v. Immunomedics, Inc.*,
    2020 WL 2832565 (D.N.J. June 1, 2020)............................................................................9

*In re Able Labs. Sec. Litig.*,
    2008 WL 1967509 (D.N.J. Mar. 24, 2008)........................................................................25

*In re Adams Golf, Inc. Sec. Litig.*,
    381 F.3d 267 (3d Cir. 2004) ..............................................................................................16

*In re Aetna Inc. Sec. Litig.*,
    34 F. Supp. 2d 935 (E.D. Pa. 1999)...................................................................................14

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) ...................................................................22

*In re Bristol-Myers Squibb Sec. Litig.*,
  2005 WL 2007004 (D.N.J. Aug. 17, 2005) ............................................................24

*In re Cabletron Sys.*,
  311 F.3d 11 (1st Cir. 2002)....................................................................................22

*In re Campbell Soup Co. Sec. Litig.*,
  145 F. Supp. 2d 574 (D.N.J. 2001) ...................................................................17, 21

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
  2018 WL 3772675 (D.N.J. Aug. 8, 2018) .............................................................25

*In re Discovery Labs. Sec. Litig.*,
  2007 WL 789432 (E.D. Pa. Mar. 15, 2007)............................................................19

*In re DVI, Inc. Sec. Litig.*,
  2010 WL 3522090 (E.D. Pa. Sept. 3, 2010) ..........................................................23

*In re Enzymotec Sec. Litig.*,
  2015 WL 8784065 (D.N.J. Dec. 15, 2015)...............................................................8

*In re EQT Corp. Sec. Litig.*,
  504 F. Supp. 3d 474 (W.D. Pa. 2020).....................................................................15

*In re Eros Int'l PLC Sec. Litig.*,
  2021 WL 1560728 (D.N.J. Apr. 20, 2021) .............................................................14

*In re Genzyme Corp. Sec. Litig.*,
  754 F.3d 31 (1st Cir. 2014).............................................................................11, 21

*In re Grand Canyon Educ., Inc. Sec. Litig.*,
  2023 WL 2072227 (D. Del. Feb. 17, 2023).............................................................12

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
  2020 WL 1479128 (E.D. Pa. Mar. 25, 2020).......................................15, 16, 17, 20

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) .........................................................................23

*In re MannKind Sec. Actions*,
  835 F. Supp. 2d 797 (C.D. Cal. 2011) ....................................................................22

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
    2011 WL 3444199 (D.N.J. Aug. 8, 2011) ...................................................................3, 9, 10

*In re PTC Therapeutics, Inc. Sec. Litig.*,
    2017 WL 3705801 (D.N.J. Aug. 28, 2017) ........................................................................18

*In re Regeneron Pharms., Inc. Sec. Litig.*,
    2005 WL 225288 (S.D.N.Y. Feb. 1, 2005)..........................................................................21

*In re Sepracor, Inc., Sec. Litig.*,
    308 F. Supp. 2d 20 (D. Mass. 2004)....................................................................................22

*In re Toronto-Dominion Bank Sec. Litig.*,
    2018 WL 6381882 (D.N.J. Dec. 6, 2018).............................................................................25

*In re Urban Outfitters, Inc. Sec. Litig.*,
    103 F. Supp. 3d 635 (E.D. Pa. 2015)........................................................................22, 23, 24

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    2005 WL 2989674 (E.D. Pa. July 1, 2005)..........................................................................21

*In re Viropharma Inc. Sec. Litig.*,
    21 F. Supp. 3d 458 (E.D. Pa. 2014).......................................................................12, 15, 21

*In re Vivendi Univ., S.A. Sec. Litig.*,
    605 F. Supp. 2d 586 (S.D.N.Y. 2009) .................................................................................24

*In re Wilmington Trust Sec. Litig.*,
    29 F. Supp. 3d 432 (D. Del. 2014)........................................................................................22

*Institutional Invs. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ....................................................................................16, 18, 22

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)........................................................................................................8, 9, 10, 16

*McGuire v. Dendreon Corp.*,
    2008 WL 5130042 (W.D. Wash. Dec. 5, 2008) ........................................................11, 18, 20

*Mulligan v. Impax Labs., Inc.*,
    36 F. Supp. 3d 942 (N.D. Cal. 2014)...................................................................................13

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ................................................................................................22

*Odeh v. Immunomedics, Inc.*,
    2020 WL 4381924 (D.N.J. July 31, 2020)..................................................................11, 18

*Oklahoma Police Pension Fund & Ret. Sys. v. Teligent, Inc.*,
    2020 WL 3268531 (S.D.N.Y. June 17, 2020) ....................................................................18

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*
    575 U.S. 175 (2015)....................................................................................................13, 14

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000) ............................................................................................16

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
    142 F. Supp. 2d 589 (D.N.J. 2001) .................................................................................25

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) .........................................................................................8, 13

*Schaeffer v. Nabriva Therapeutics plc*,
    2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020) ...............................................................11, 19

*SEB In. Mgmt. AB v. Endo Int'l, PLC*,
    351 F. Supp. 3d 874 (E.D. Pa. 2018) ..............................................................................17

*Steamfitters Local 499 Pension Fund v. Alter*,
    2011 WL 4528385 (E.D. Pa. Sept. 30, 2011) ..................................................................25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).....................................................................................................8, 16

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
    2015 WL 3755218 (E.D. Pa. June 16, 2015).....................................................................11

*Williams v. Globus Med., Inc.*,
    869 F.3d 235 (3d Cir. 2017) ..............................................................................................9

*Yanek v. Staar Surgical Co.*,
    388 F. Supp. 2d 1110 (C.D. Cal. 2005) ..................................................................11, 18, 20

Statutes

15 U.S.C. § 78u-4(b)................................................................................................................8

Fed. R. Civ. P. 9(b) .................................................................................................................8

Lead Plaintiff Kranthi Gorlamari ("Plaintiff") respectfully submits this opposition to Defendants'[1] motion to dismiss (Dkt. No. 33, the "Motion")[2] the Amended Class Action Complaint (Dkt. No. 18, the "AC"). The Motion should be denied in its entirety.

## I.    INTRODUCTION

Plaintiff's detailed factual allegations tell a classic and compelling story of securities fraud involving a struggling drug company's pursuit of new drug approval by the U.S. Food and Drug Administration ("FDA"). For over a year, Defendants misled investors as to the genuine risks that Verrica's resubmitted New Drug Application ("NDA") for its flagship drug candidate, VP-102, would not be approved by the FDA. They did this by failing to disclose the results of two FDA-conducted, pre-approval, Class Period inspections in May 2021 and February 2022 of the Company's bulk solution contract manufacturing organization ("CMO") for VP-102—Sterling Pharmaceuticals Services, LLC ("Sterling"), and by reassuring investors that Sterling's May 2021 inspection issues had been "successfully resolved," when they had not.

The severity of the conditions at Sterling, which the FDA first observed in 2018, compelled the FDA to issue a Form 483 at the conclusion of its inspections, meaning that Sterling was out of compliance with the FDA's Current Good Manufacturing Practice ("cGMP") regulations. Without curing these deficiencies, which Defendants knew Sterling needed to do, the chances of obtaining FDA approval were nil. Indeed, the existence of these deficiencies was well-known at Verrica. In addition to being fully aware of Sterling's problems brought to their attention by the FDA,

---

[1] Defendants are Verrica Pharmaceuticals, Inc. ("Verrica" or the "Company"), CEO Ted White ("White"), CFO P. Terence Kohler Jr. ("Kohler"), and former CFO A. Brian Davis ("Davis").

[2] Defendants' accompanying memorandum of law (Dkt. No. 33-1) is cited as "Mot. __," citations to the exhibits attached to the Declaration of Sarah M. Lightdale (Dkt. No. 33-2) are "Mot. Ex. __," and citations to the AC are "¶__." Unless otherwise noted, alterations, citations, and quotations are omitted and emphasis is added.

Verrica's management and employees were aware, or should have been aware, of Sterling's compliance problems as evidenced by their own Class Period statements.

At the same time, Defendants repeatedly and voluntarily chose to speak to investors – assuring them repeatedly that the inspections were going "according to plan," that Verrica was working with outside consultants who would be on-site during the FDA inspections, that Verrica would engage with the FDA and Sterling regarding any inspectional issues identified, and that after inspectional issues had been identified, that those issues were "successfully resolved" and Verrica could now "move toward approval" and has a "path forward" for VP-102. Given the reality of what was actually occurring at Sterling, these statements and others were false and highly misleading and, moreover, Defendants were, at a minimum, reckless in making them to investors.

Defendants' failure to provide a true rendering of Sterling's inspectional deficiencies meant that investors were unable to adequately assess whether Verrica could be subject to FDA action (such as withholding new drug approval). They were also unable to adequately assess the potential impact of any manufacturing-related problems on the Company's future earnings. Thus, investors were stunned when twice during the Class Period, first on September 20, 2021 and later on May 24, 2022, Verrica announced it had received a Complete Response Letter ("CRL") from the FDA due to deficiencies identified at Sterling during the May 2021 and February 2022 inspections, and the FDA would not, because it could not, approve the NDA while Sterling was out of cGMP compliance. The announcements caused Verrica's stock price to drop significantly.

In the face of these particularized allegations, Defendants nonetheless seek dismissal on several grounds. None support their Motion. Defendants contend they had no "standalone" duty to disclose either Form 483, because it is not a final FDA determination. But the purpose of the Form 483 is to document objectionable conditions which render a facility out of compliance with cGMP,

2

and Verrica specifically told investors that "[t]he FDA will not approve an application unless it determines that the manufacturing … facilities are in compliance with cGMP[.]" [T]the disclosure required by the securities laws is measured … by the ability of the material to accurately inform rather than mislead prospective buyers." *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2011 WL 3444199, at *9 (D.N.J. Aug. 8, 2011). Defendants cannot repeatedly volunteer the importance of the FDA's pre-approval inspections, and then later, affirmatively state the inspectional issues (identified in the Form 483s) were resolved, while failing to disclose the inspections concluded with the FDA's issuance of a Form 483, which in turn severely endangered the chances the FDA would approve the VP-102 NDA absent resolution of the issues cited therein.

Defendants also argue that Plaintiff's allegations amount to fraud by hindsight. To the contrary, just before and throughout the Class Period, Defendants, and in particular, White, assured investors that Verrica was working with outside consultants who would be on-site during the FDA inspections and, after the September 2021 CRL, that Verrica would engage with the FDA and Sterling regarding the inspectional issues. Such assurances establish Defendants' scienter, which may be established through allegations that Defendants knew of facts or had access to information contradicting their Class Period statements. Rather than actually engage with either the FDA or Sterling, Defendants admit they relied only on the FDA's later classification of Sterling's May 2021 inspection, which included standard language that a pending application referencing Sterling would not directly negatively impact the FDA's assessment of a pending application referencing Sterling. However, at the time of the classification, Sterling's May 2021 inspection already had negatively affected Verrica's NDA approval prospects. Any belief that Sterling's issues were "successfully resolved" under these circumstances amounts to willful blindness. So, too, was any "belief" that VP-102 was on its way to clearing the regulatory hurdles identified by the FDA after

3

the February 2022 inspection. At the end of the Class Period, Verrica admitted the FDA had previously warned the Company it would not approve VP-102 if Sterling's issues were not resolved to the FDA's satisfaction.

Viewed holistically, Defendants' misrepresentations went to the heart of Verrica's business and the basis upon which investors valued the clinical-stage drug company: the prospects and timeline of obtaining FDA approval of VP-102. The Motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    Verrica's Business

Verrica describes itself as a dermatology therapeutics company engaged in the development and commercialization of treatments for skin diseases. ¶¶2, 29. In the ten years Verrica has been in operation, it has yet to receive FDA approval for any product or generate any product revenue. As of March 31, 2022, Verrica had accumulated a net deficit of $147.4 million; it has funded its operations primarily through public offerings and securing debt. ¶30.

Verrica's lead product candidate is VP-102, a drug-device combination of a topical solution administered through a single-use applicator for the treatment of molluscum, a contagious viral skin disease, and common warts. ¶¶2, 33. There are currently no products approved by the FDA for these diseases. ¶¶35, 37. Thus, VP-102 had the potential to be the first FDA-approved product to seize the over $1 billion U.S. market for molluscum, and Verrica estimates the market for common warts is just as large. ¶¶36-38. Verrica has devoted substantially all its financial resources and efforts to the development of VP-102, and hence, its ability to survive remained dependent on VP-102's "successful development, regulatory approval and eventual commercialization[.]" ¶31.

### B.    Significance Of cGMP Regulations And The FDA's Use Of "Form 483"

Part of the FDA's approval process for an NDA is a review of the manufacturer's compliance with cGMP through a pre-approval inspection of the manufacturing facility. ¶¶42-48.

4

At the conclusion of a facility's inspection, the FDA will issue a Form 483 to notify drug manufacturers of objectionable conditions and practices discovered that render the facility out of compliance with cGMP. ¶51. Verrica, in its annual reports, acknowledged "[t]he FDA will not approve an application unless it determines that the manufacturing processes and facilities are in compliance with cGMP requirements[.]" ¶¶42, 47, 100.

### C. Verrica's Troubled Path To FDA Approval Of VP-102 And Its CMO's Recurring And Undisclosed cGMP Compliance Problems

#### 1. Verrica's September 2019 Initial VP-102 NDA Submission, Resulting CRL, And December 2020 Resubmission

In September 2019, Verrica first submitted an NDA to the FDA seeking approval of VP-102 for the treatment of molluscum. ¶59. On July 14, 2020, Verrica announced the FDA had issued a CRL[3] in connection with its NDA for VP-102. ¶60. On December 23, 2020, Verrica announced it had resubmitted its NDA for VP-102 (¶62), and later, that the assigned Prescription Drug User Free Act ("PDUFA") goal date was June 23, 2021. ¶63.

#### 2. Verrica Announces The FDA's Pre-Approval Planned Inspection

During an April 13, 2021 investor conference, White stated that as part of the FDA's review of Verrica's resubmitted NDA, the FDA planned to inspect two CMO facilities, including Sterling. ¶¶4, 65. He explained that Verrica has done things to "mitigate," including mock inspections and contracting "with some outside consultancies that have ex-FDA inspectors" to "help[] us with these upcoming inspections and will be on-site when the FDA does do their inspections." ¶65.

From May 3 to 14, 2021, the FDA inspected the Sterling facility and issued a Form 483 upon its completion of the inspection. ¶¶88, 96. The FDA documented serious and pervasive

---

[3] A CRL indicates the review of the NDA is complete, and the NDA will not be approved in its present form due to specific conditions the FDA identifies must first be resolved before approval.

quality issues, many of which repeated or expanded on deficiencies identified in a Form 483 the FDA issued to Sterling in 2018. ¶¶51, 86-88. The Establishment Inspect Report ("EIR") for the May 2021 inspection, dated June 21, 2021, further noted the objectionable conditions contained in the May 2021 Form 483, as well as additional quality deficiencies. ¶¶89-90.

Despite the May 2021 Sterling inspection, the resulting Form 483, and that Defendants immediately knew of the same (¶¶8, 97-100), on the first day of the Class Period, during a May 19, 2021 investor conference, White, when asked for an update on the FDA inspection of Verrica's CMOs, responded that "we fully anticipate that we'll have our inspections take place according to plan, and we have not been notified otherwise." ¶¶5, 66. It was not until two weeks later, on May 28, 2021, that White admitted "the FDA has recently completed one of the two pre-approval inspections required for approval," continuing to omit any mention of the Form 483. ¶¶5, 67, 110.

### 3.    Verrica Receives Its Second CRL In September 2021

On September 20, 2021, Verrica announced it had received a CRL from the FDA due to deficiencies the FDA identified at Sterling during its May 2021 inspection. ¶¶68-69, 131-132. Verrica explained the deficiencies were related to general quality issues at the facility, and not specifically to the manufacturing of VP-102. ¶68. On this news, the Company's share price fell $1.00, or 8.3%, to close at $11.03 per share on September 21, 2021. ¶70.

Verrica's September announcement further explained that "[t]he Company understands from the CMO that it has implemented corrective actions to address the Agency's concerns and the CMO has advised Verrica that it is expecting a satisfactory resolution of the facility's identified deficiencies from the FDA within the next 30 business days." ¶69.

### 4.    Verrica's November 2021 "Successfully Resolved" Announcement

On November 12, 2021, Verrica issued a press release announcing its financial results for the quarter ended September 30, 2021. ¶74. Therein, Verrica headlined its business highlights,

6

which focused on the supposed satisfactory resolution of the deficiencies the FDA identified in the May 2021 Sterling inspection and the cause for the September 2021 CRL. *Id*.

With respect to the inspection, Verrica stated it was informed on November 5, 2021 that the May 2021 Sterling inspection was classified as "VAI" (meaning objectionable conditions or practices were found but the FDA is not prepared to take any administrative or regulatory action) and thus was now closed. ¶¶53, 74. White also stated in the same announcement that "[w]e are pleased that the issues identified at the CMO unrelated to VP-102 have been successfully resolved, enabling us to move toward approval[.]" ¶75. White and Verrica continued to repeatedly assure investors the identified issues were successfully or satisfactorily resolved. ¶¶115-119, 121, 127.

On December 15, 2021, Verrica announced the FDA accepted its latest NDA resubmission and assigned a PDUFA goal date of May 24, 2022. ¶77.

### 5.    Verrica Receives Its Second Sterling-Related CRL In May 2022

On May 24, 2022, Verrica announced receipt of a third CRL, citing deficiencies identified during a general reinspection of Sterling's facility in February 2022. ¶¶78, 92. Like with the 2018 and 2021 inspections, the February 2022 inspection concluded with the FDA issuing a Form 483 identifying many of the same observed deficiencies Verrica had assured investors in November 2021 were "successfully resolved" following the May 2021 Sterling inspection. ¶¶86-95.

In this same May announcement, Defendants admitted the FDA made clear in the September 2021 CRL that successful resolution of the deficiencies at Sterling was "specifically required … for approval of [Verrica's] NDA," and it was not the FDA, but rather Verrica, that concluded the problems at Sterling had been resolved to the FDA's satisfaction. ¶78. The May announcement further informed the public that, as a result of the February 2022 inspection, Sterling had been placed on "OAI status" (meaning regulatory and/or administrative actions will be recommended (¶53)), preventing the FDA from approving the NDA altogether. ¶78. Tellingly,

the announcement concluded with the Company stating it was in search of a replacement CMO for Sterling. ¶78. On this news, Verrica's shares fell $3.55, or 63.8%, on May 25, 2022. ¶¶79, 137.

## III.    APPLICABLE LEGAL STANDARDS DISFAVOR DEFENDANTS' MOTION

The AC states claims for securities fraud under §10(b) of the Exchange Act: (1) Defendants made material misrepresentations and/or omissions; (2) they knew or recklessly disregarded that the misrepresented or omitted information risked misleading investors; and (3) Verrica's share price declined when corrective information was revealed. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). These claims are subject to the pleading standards of the Private Securities Litigation Reform Act ("PSLRA") and Fed. R. Civ. P. 9(b). 15 U.S.C. § 78u-4(b).

The PSLRA does not require a plaintiff to plead *evidence* of claims, and, on a motion to dismiss, courts must accept all facts alleged as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Allegations must be sustained if they contain sufficient factual matter that, if accepted as true, state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Third Circuit has explained that, even under *Twombly*, stating a claim "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).[4]

## IV.    THE AC ALLEGES ACTIONABLE MISLEADING STATEMENTS AND OMISSIONS

Under the PSLRA, a complaint need only allege facts "sufficient to support a reasonable

---

[4] *See also In re Enzymotec Sec. Litig.*, 2015 WL 8784065, at *6 (D.N.J. Dec. 15, 2015) (following *Twombly* and *Iqbal*, courts should "assume the[] veracity [of well-pleaded factual allegations] and then determine whether they plausibly give rise to an entitlement for relief").

8

belief as to the misleading nature of the statement or omission." *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004). The alleged misleading statements and omissions must be evaluated in the context they would have been understood by a reasonable investor. *Matrixx*, 563 U.S. at 44 (2011). Literally accurate statements "can become through their context and manner of presentation, devices which mislead investors. For that reason, the disclosure required by the securities laws is measured not by literal truth but by the ability of the material to accurately inform rather than mislead prospective buyers." *Merck*, 2011 WL 3444199, at *9. Thus, although §10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information, disclosure is required when necessary to make statements made, in the light of the circumstances in which they were made, not misleading." *Fergus v. Immunomedics, Inc.*, 2020 WL 2832565, at *3 (D.N.J. June 1, 2020). A misstatement or omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).

**A.    The Failure To Disclose The May 2021 Form 483 Was A Material Omission**

The Class Period begins on May 19, 2021, when White responded to a request for an update on the FDA's pre-approval inspections of the two CMOs. White stated that "we fully anticipate that we'll have our inspections take place according to plan, and we have not been notified otherwise." ¶108. But at that very time, the Sterling inspection *had* taken place and resulted in the FDA issuing a Form 483. ¶¶51, 88-89. White continued to omit that the May 2021 inspection concluded with a Form 483 until Verrica received the CRL in September 2021. ¶¶110-111, 113.

"Once a company has chosen to speak on an issue—even an issue it had no independent obligation to address—it cannot omit material facts related to that issue so as to make its disclosure misleading." *Williams v. Globus Med., Inc.*, 869 F.3d 235, 241 (3d Cir. 2017); *Merck*, 2011 WL

9

3444199, at *9 (when a defendant puts an issue "in play," it triggers a legal duty to disclose material information relating to that topic). By repeatedly and voluntarily discussing the FDA's pre-approval manufacturing inspections, White highlighted the materiality of these inspections and their results, and was required to disclose (1) that Sterling's inspection had occurred (for the May 19 statement); and (2) and resulted in the issuance of a Form 483.

Defendants ask this Court to narrowly evaluate these statements to be solely about the timing and completion of the inspections. Such an interpretation ignores that "the disclosure required by the securities laws is measured not by literal truth but by the ability of the material to accurately inform rather than mislead prospective buyers." *Merck*, 2011 WL 3444199, at *9. White's statements must be evaluated in the context they would have been understood by a reasonable investor. *Matrixx*, 563 U.S. at 44 (2011).[5]

Just prior to the start of the Class Period, White informed investors that as part of Verrica's NDA, the FDA planned to inspect Verrica's two CMOs as part of the NDA review process. ¶65. An FDA Form 483, although "interim FDA feedback" (Mot. at 13), functions to document and communicate objectionable conditions discovered by the FDA that render a facility out of compliance with cGMP. ¶51. And Verrica repeatedly warned investors that "[t]he FDA will not approve an application unless it determines that the manufacturing processes and *facilities* are in compliance with cGMP[.]" ¶100. As such, "[a]lthough the observations in the Form 483 are not final agency determinations … the disclosure of 'significant objectionable conditions' would significantly alter the total mix of information available to the reasonable investor because it bears on potential delays in the approval of [Verrica]'s only near-commercial status product." *McGuire*

---

[5] Even under this narrow approach, White's May 19, 2021 statement is still misleading as it failed to inform the market that the Sterling inspection had taken place, while indicating the opposite.

*v. Dendreon Corp.*, 2008 WL 5130042, at \*6 (W.D. Wash. Dec. 5, 2008); *see also Odeh v. Immunomedics, Inc.*, 2020 WL 4381924, at \*7 (D.N.J. July 31, 2020) ("a reasonable shareholder could consider the omitted information about … the Form 483 to be important when making an investment decision"); *Yanek v. Staar Surgical Co.,* 388 F. Supp. 2d 1110, 1129 (C.D. Cal. 2005) (Form 483 material to statements about timing of FDA approval because issuance of Form 483 was a "fact[ ] bearing on possible delays in FDA approval").[6] At best, Defendants raise a factual dispute that cannot be resolved in their favor on this motion. *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at \*28-29 (D.N.J. Dec. 31, 2018) ("weighing the significance of these omissions is the exact type of fact finding that is inappropriate at the motion to dismiss stage").

Defendants misinterpret Plaintiff's allegations in pointing to the FDA later issuing an EIR and VAI inspection classification. Mot. at 14.[7] The AC does not allege that White should have specifically disclosed that there was significant risk to Verrica obtaining regulatory approval, but that by failing to disclose Sterling's receipt of the May 2021 Form 483 – a fact known or knowable to White at the time of his statements (¶¶96-100) – investors were not able to evaluate that risk for themselves. ¶¶3, 109, 112. Therefore, this is not fraud by hindsight (Mot. at 13). *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2015 WL 3755218, at \*14 (E.D. Pa. June 16, 2015)

---

[6] The court in *Schaeffer v. Nabriva Therapeutics PLC*, 2020 WL 7701463, at \*10 (S.D.N.Y. Apr. 28, 2020), does not hold otherwise, finding that the Form 483 issued, under the circumstances, "would plainly impact Nabriva's profitability in the eyes of a reasonable investor" and that the issuance of a Form 483 was enough to render a representation "that no filing or potential review issue were identified" to be materially misleading. *Id.* at \*9, 11. The First Circuit in *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31 (1st Cir. 2014) noted that Form 483s may be material depending on the circumstances. However, unlike here, there was no duty to disclose the Form 483 in *Genzyme* because the defendants did not comment on the FDA inspections of the plant. *Id.* at 36, 41.

[7] Indeed, the June 21, 2021 EIR further details serious and repeat objectionable conditions rendering Sterling out of compliance with cGMP. ¶¶52, 89-90. And VAI status does not mean that the FDA determined that the observed objectionable conditions had been resolved, only that the FDA is not prepared to take action against the manufacturer. ¶¶53, 102.

("Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them."); *In re Grand Canyon Educ., Inc. Sec. Litig.*, 2023 WL 2072227, at *19 (D. Del. Feb. 17, 2023) (rejecting similar hindsight argument when plaintiffs allege that defendants knew non-public facts "that would undercut" the assertions made).

Defendants also argue that White's May 19, 2021 statement is protected by the PSLRA safe harbor. Mot. at 13, n. 6. But the safe harbor does not protect a characterization that the FDA's pre-approval inspections are yet to occur when one inspection had occurred. *In re Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 649-50 (E.D. Pa. 2015). Moreover, because this statement is misleading due to the omission of material existing facts, the safe harbor does not apply. *In re Viropharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458, 471 (E.D. Pa. 2014).

Lastly, when analyzed in context, Verrica's September 20, 2021 statement indicates that Defendants' had no prior knowledge of Sterling's May 2021 Form 483, or that Sterling's general inspection, which found multiple objectionable conditions that rendered Sterling out of compliance with cGMP, could impact Verrica's NDA. ¶¶113-114. As explained above, both these facts were known and knowable well before the September 2021 CRL.

**B.      The Successful Resolution Statements Were Materially False And Misleading**

Defendants' second set of false statements concern their affirmations that the issues identified at Sterling has been "successfully resolved," and similarly, that Sterling's inspection had a "satisfactory resolution" (¶¶115-119, 121, 127) when, in fact, they had not been successfully/satisfactorily resolved, as evidenced, for example, by the FDA's February 2022 reinspection of Sterling and resulting Form 483 that documented repeated deficiencies. ¶¶92-94.

Defendants argue that "[t]hese statements reflected Verrica's belief that the Sterling inspection issues had been successfully resolved[,]" and encourage the Court to analyze these statements as opinions, or alternatively, as inactionable puffery. Mot. at 16-17 & n.9. However, at

the time these statements were made, Defendants did not present them as opinions, but as direct and concrete assertions of fact. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183-84 (2015); *see also, e.g.*, *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 967 (N.D. Cal. 2014) (use of superlatives such as "significant" in referring to supposed manufacturing and quality improvements were not opinion or puffery but "contain[ed] factual representations at their core").

Even so, it was certainly not reasonable for Defendants to repeatedly tout that the inspectional issues had been successfully/satisfactorily resolved when (1) a VAI classification means that objectionable conditions were found but the FDA has chosen at that time to not take regulatory action (¶¶53, 102)—not that the inspection or the objectionable issues found during the inspection were resolved (Mot. at 16); (2) the VAI classification stating that it "would not directly negatively impact FDA's assessment of any pending marketing application referencing Sterling" (¶102), did not, and could not, apply to Verrica's NDA because it ***had already*** been "negatively impacted" by the May 2021 Sterling inspection, resulting in the September 2021 CRL (¶68); (3) Verrica admitted that the FDA informed it that the FDA's concerns at Sterling were "specifically required" to be "resolved to the FDA's satisfaction" for approval of Verrica's NDA (¶78); and (4) for the statements in Verrica's 2021 10-K (¶121) and Q1 2022 10-Q (¶127), the February 2022 Form 483 documented repeated inspectional deficiencies (¶92).

These "contemporaneous true facts,"[8] particularly in light of Defendants repeated

---

[8] Defendants again complain of hindsight pleading, ignoring these many allegations and focusing solely on the FDA's February 2022 reinspection. Mot. at 16-17. Besides the fact that Defendants repeated their successful resolution language after Sterling's February 2022 Form 483, Defendants' desired interpretation—wherein the issues at Sterling were resolved by November 2021 and then somehow became objectionable again by February 2022—is nonsensical. When drawing all reasonable inferences in Plaintiff's favor, *Phillips*, 515 F.3d at 231, it is far more reasonable to infer that the issues at Sterling had not been resolved between FDA inspections.

assurances that they would be in constant communication with the FDA and Sterling about the cited deficiencies (¶¶65, 97-98, 105) are sufficient to allege that (i) the statements conflicted with information available to Defendants at the time; and (ii) Defendants lacked a reasonable basis for their statements when they made them, and it is reasonable to infer that they were not honestly believed. *In re Eros Int'l PLC Sec. Litig.*, 2021 WL 1560728, at *8 (D.N.J. Apr. 20, 2021) (analyzing opinion statements under both *Pfizer* and *Omnicare* standards).

Nor are these statements inactionable puffery. Mot. at 17, n.9. The Supreme Court has held that "determinate, verifiable statement[s]" of fact are not puffery. *Omnicare*, 575 U.S. at 184 (assertion that TVs manufactured had the "highest resolution on the market" not puffery). Defendants made concrete representations as to the resolution of Sterling's identified deficiencies which was necessary for Verrica to "move toward [FDA] approval" of Verrica's first and leading product candidate. *In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935, 947-48 (E.D. Pa. 1999).

**C.    The Failure To Disclose The February 2022 Form 483 Was A Material Omission**

Following the February 2022 reinspection of Sterling, the FDA again issued a Form 483, documenting repeat observations that "significant[ly] violat[ed] cGMP. ¶¶92-95. Despite the September 2021 CRL being issued to Verrica due to the May 2021 inspectional deficiencies (¶69), the FDA's warning to Verrica that its concerns at Sterling must be resolved to the FDA's satisfaction for approval of Verrica's NDA (¶78),[9] and Defendants' assurances to the market that Verrica would engage with the FDA (¶¶69, 71, 105, 123) and Sterling (¶¶65, 97-98), Defendants continued to omit from investors that the February 2022 reinspection occurred and had again resulted in the issuance of a Form 483. ¶¶121, 123-125, 127. By repeatedly assuring investors that

---

[9] This warning specifically put White on notice that the deficiencies documented in the February 2022 Form 483 would jeopardize Verrica's then-pending NDA. *Contra* Mot. at 15, n.7.

Sterling's inspectional deficiencies were successfully resolved, that the resubmitted NDA was limited to such deficiencies and the resolution of which was addressed in the resubmitted NDA (*e.g.*, ¶¶118, 121), and by touting the prospects of regulatory approval due to this supposed successful resolution, disclosure of Sterling's February 2022 reinspection and resulting Form 483 was necessary to make the March-May 2022 statements not misleading.

Defendants do not challenge their material omission of the February 2022 inspection and Form 483 for their repeated statements that Sterling's inspectional deficiencies were successfully resolved in Verrica's financial statements issued in March and May 2022. ¶¶121, 127; *see also* Sec. IV.B, *supra*. Instead, Defendants argue that White's statements regarding Verrica's pending NDA and Verrica's due diligence concerning Sterling are non-actionable. Mot. at 18-19. First, Defendants again argue that White's expressions of confidence of FDA approval were non-actionable opinions. The above-listed factual allegations strongly infer that White's statements conflicted with the information available to him, that White lacked a reasonable basis for these statements, and it is reasonable to infer that he did not honestly believe his statements.

Second, Defendants argue that White's statements were forward-looking. However, forward-looking statements made without a reasonable basis, such as here, are actionable. *In re EQT Corp. Sec. Litig.*, 504 F. Supp. 3d 474, 496, 501 (W.D. Pa. 2020); *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2020 WL 1479128, at *15, *16 (E.D. Pa. Mar. 25, 2020) (optimistic expectations regarding FDA approval actionable as they lacked reasonable basis by failing to inquire into apparent obstacle for NDA approval). In addition, the safe harbor does not apply to White's statements as they misleadingly omitted the February 2022 Form 483. *Viropharma*, 21 F. Supp. 3d at 471. Regardless, White's statement is not accompanied by meaningful cautionary language. Defendants point to risk warnings true of every company awaiting FDA approval for its

leading product candidate. Mot. at 6-7. Defendants also failed to update this cautionary language to incorporate the new and upmost risk that the NDA would not be approved if Sterling's inspectional deficiencies were not resolved (Mot. Exs. 1-4). *Innocoll*, 2020 WL 1479128, at *17 (language that does not change to reflect new information and risks may be boilerplate).

Finally, White's statements regarding FDA approval cannot be dismissed as immaterial puffery. To the contrary, whether the FDA would approve Verrica's then-pending NDA was of the utmost importance to the Company and its investors. ¶¶30-31. The market's reaction when Verrica received another CRL due to the deficiencies identified in the February 2022 reinspection of Sterling (¶¶135-137) establishes the materiality of these statements. *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) ("the materiality of disclosed information may be measured post hoc by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock"). At most, this is a fact question not appropriate for determination on the pleadings. *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 275-76 (3d Cir. 2004).

## V. THE AC ADEQUATELY ALLEGES SCIENTER

Scienter is sufficiently alleged when the allegations give rise to a strong inference of "either reckless or conscious behavior." *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 276, 280 (3d Cir. 2009). An inference of scienter is "strong" if it is "cogent and compelling" and "*at least as likely as* any plausible opposing [non-culpable] inference." *Tellabs*, 551 U.S. at 324, 328 (emphasis in original); *Matrixx*, 563 U.S. at 48-49. The inference of scienter need not be *more* likely than any non-culpable inference; in the face of equally compelling inferences, a tie goes to the plaintiff. *Tellabs*, 551 U.S. at 324. On Defendants' motion, the key inquiry "is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id*. at 310.

A strong inference of scienter can be established by allegations of defendants' knowledge

16

of facts or access to information contradicting their public statements. *Innocoll*, 2020 WL 1479128, at *8 (citing *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001)). The AC sufficiently alleges scienter by demonstrating that Defendants made statements when they, at minimum, had access to facts suggesting the statements were misleading.

Just prior to the Class Period, White informed investors – and thus knew – that the FDA's inspection of the two CMO facilities would be necessary for NDA approval, and that Verrica's consultants would be on-site during these inspections. ¶¶65, 96, 97. These facts are sufficient to support a strong inference of scienter for White's failure to disclose the May 2021 Sterling inspection and resulting Form 483, which Verrica also failed to disclose. And although pleading specific knowledge of the Form 483 it is not necessary (*e.g.*, *Innocoll*, 2020 WL 1479128, at *12), a former employee ("FE") confirmed that Verrica and certain of its executives learned of Sterling's Form 483 by mid-May 2021 and that White was likewise well aware of the Form 483. ¶99.[10]

Defendants also knew that the FDA "***will not*** approve an [NDA] unless it determines that the … facilities are in compliance with cGMP requirements[,]" as admitted in Verrica's annual reports. ¶100. And Verrica admits that VP-102 for treatment of molluscum was its only viable product in the near future; as such, FDA approval was vital (¶¶29-31). *SEB In. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 905 (E.D. Pa. 2018) ("Knowledge under a recklessness theory can

---

[10] Defendants do not challenge FE's knowledge, instead arguing that the FE's account does not address the relevant question for scienter. Mot. at 20, n.11. Defendants are wrong. It is enough that the FE's account supports an inference of knowledge as to the May 2021 Form 483 on behalf of Verrica and White. The crux of Plaintiff's allegations is the omission of the May 2021 Form 483, not that Defendants needed to inform investors that "the Form 483 would result in a CRL[.]" *Id.* That Verrica's chief commercial officer – who reported to White – was with FE when they learned about the Form 483 supports an inference of both Verrica and White's knowledge of the same. *E.g.*, *Emps. Ret. Sys. of Puerto Rico Elec. Power Auth. v. Conduent Inc.*, 2020 WL 3026536, at *8 (D.N.J. June 5, 2020) (meetings attended by management level officials and where issues alleged to be material omissions were discussed supports inference of corporate scienter).

be established by demonstrating that the fact was so obviously material that defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors.").

Rather than provide a non-culpable competing inference for White and Verrica's failure to disclose the May 2021 Sterling inspection and Form 483, Defendants again point out that a Form 483 is not a final determination. Mot. at 20. This argument ignores the context of these omissions: after White highlighted the importance of the results of Sterling's inspection as part of the FDA's approval of Verrica's NDA, the failure to inform investors of the inspection's result demonstrates his scienter. *Avaya*, 564 F.3d at 269 ("the most powerful evidence of scienter is the content and context of [the] statements themselves").[11] For example, on May 19, 2021 White answered a question about the whether the FDA would be able to inspect the facilities in time. ¶108. By failing to disclose that the Sterling inspection had taken place, White was able to avoid the likely follow-up inquiry on the results of that inspection.

Many courts have found scienter where, as here, the Defendants conceal a Form 483, creating a misleading impression. *See, e.g.*, *Odeh*, 2020 WL 4381924, at *7 (scienter alleged based on omission of presently known facts, "particularly when presented with 'information about difficulties facing' … FDA approval," including receipt of Form 483); *Oklahoma Police Pension Fund & Ret. Sys. v. Teligent, Inc.*, 2020 WL 3268531, at *19 (S.D.N.Y. June 17, 2020) (allegations that CEO knew of Form 483s sufficient to allege that he "knew facts or had access to information suggesting that [his] public statements were not accurate"); *McGuire*, 2008 WL 5130042, at *7 (concealment of Form 483 probative of deliberate recklessness); *Yanek*, 388 F. Supp. 2d at 1131 (similar). Defendants' authority, *Schaeffer*, notes that "[w]hile knowledge of a Form 483 alone

---

[11] *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *17 (D.N.J. Aug. 28, 2017) (statements of executives "implied that they had first-hand knowledge" of the matter at issue, which, while not conclusive, bolstered an inference of scienter).

18

might be enough to render certain statements both misleading and made with scienter," the plaintiff in *Schaeffer* needed to plead more to indicate why the omission of the Form 483 was "highly unreasonable." 2020 WL 7701463, at *12.[12] As explained above, Plaintiff does so here.

The inference of scienter is even stronger after Verrica's receipt of the September 2021 CRL. At the end of the Class Period, Verrica admitted that the FDA had explicitly required that Sterling's inspectional issues be resolved to the FDA's satisfaction in order to approve the NDA. ¶78. Despite this specific warning, Defendants based their successful resolution statements "on the VAI classification of Sterling and the statements contained in the EIR." *Id.*; Mot. at 21. Defendants continued to make this representation – along with White repeatedly assuring investors as to the prospects of FDA approval – after the FDA's February 2022 reinspection resulted in a Form 483 documenting repeat and similar issues. ¶¶88-95, 105. *Schaeffer*, 2020 WL 7701463, at *11 ("a complaint will adequately plead scienter if it alleges 'the management knows that certain facts will necessarily prevent the regulatory approval or the marketing of the drug and conceals these facts from the investing public,' or 'if the management is reckless in dealing with such adverse facts.'").

Defendants offer that the "most reasonable inference" is they "genuinely believed that the Sterling inspection issues had been resolved[.]" Mot. at 21-22. Whatever Defendants may have believed as to the resolution of Sterling's inspectional issues and the prospects of FDA approval, it does not change that they misstated and omitted material facts about Sterling's inspections and the issues observed, and the AC specifies that they knew or recklessly disregarded material facts alerting them otherwise. That satisfies the requirement to plead a strong inference of scienter.

---

[12] The court in *In re Discovery Labs. Sec. Litig.*, 2007 WL 789432, at *4 (E.D. Pa. Mar. 15, 2007) did not make the sweeping holding that all issues raised in a Form 483 are "eminently correctable," but rather examined the issues raised in a Form 483 in that action and noted that, in context, the alleged misleading statements were factually accurate.

*Yanek*, 388 F. Supp. 2d at 1131-32 (scienter shown despite what defendants "may have believed or hoped that the [i]ssues raised in the Form 483 would not pose a serious problem to FDA approval"); *McGuire*, 2008 WL 5130042, at *7 (omission of Form 483 probative of "deliberate recklessness" despite defendants' proffered inference that "their belief (and the reality) that the objections were simply not that serious and their sincere and reasonable belief that the 483 problems could easily be remedied in time to gain approval of their drug").

Rather, such belief under the facts alleged constitutes willful blindness. *Innocoll*, 2020 WL 1479128, at *13. Defendants had specific warning from the FDA,[13] and assured that they would engage with the FDA and Sterling regarding the inspectional issues. ¶¶65, 69, 71, 97-98, 105, 123. Despite this, admittedly, Defendants' belief did not come from the FDA or Sterling; it came from Sterling's VAI classification, which notes that such classification "would not directly negatively impact FDA's assessment of any pending marketing application referencing Sterling" (¶102)— even though it already had. ¶68.

In response, Defendants' again rely on the nature of a Form 483 to excuse their scienter. Mot. at 22. Doing so is futile. The February 2022 Form 483 documented similar and repeated inspectional deficiencies observed as early as the 2018 Sterling inspection (¶¶86-95), indicating that Sterling's issues were not "eminently correctable." And Plaintiff's claims do not rest on the failure to disclose that the "FDA might take action," but that the statements about the "successful resolution" of Sterling's inspectional issues were misleading, and that after the February 2022 Form 483 was issued to Sterling, Defendants omitted that critical contrary fact from investors.[14]

---

[13] "An affirmative warning from the FDA would be a notable example of information that could support an inference of recklessness." *Innocoll*, 2020 WL 1479128, at *12.

[14] It makes no difference that the issues were not specific to the manufacturing of VP-102 (Mot. at 22), when the September 2021 CRL was also due to inspectional issues at Sterling that were not specific to the manufacturing of VP-102. ¶68.

Nor does Verrica's disclosure of the CRLs undermine an inference of scienter. Mot. at 22. Defendants made the PDUFA goal dates (the goal date for the FDA to act on an NDA submission (¶45)) well known (*e.g.*, ¶¶111, 121), and so the market was expecting news then regarding the NDA. Indeed, the disclosure of the CRLs furthers (not undercuts) Plaintiff's inference of scienter, as Defendants sought to use the CRLs to underrepresent the true extent of the deficiencies at Sterling and their impact on obtaining regulatory approval.[15] ¶¶74-76, 123-125.

Defendants also complain that "the AC fails to make particularized factual allegations with respect to any of the Individual Defendants" (Mot. at 23, n.12)—ignoring the vast allegations which specifically implicate White. Even so, "knowledge may be imputed to individual defendants when the disclosures involve the company's core business." *Campbell Soup*, 145 F. Supp. 2d at 599 (collecting cases).[16] FDA approval of VP-102 was the most important aspect of Verrica's business—it was Verrica's life-line to survival and future profitability. ¶¶30-31, 35-40. *See, e.g.*, *In re Vicuron Pharms., Inc. Sec. Litig.*, 2005 WL 2989674, at *7 (E.D. Pa. July 1, 2005) (where drug was company's "lead product in development, its importance to the company supports at least a strong inference of recklessness of all the company's officers"); *In re Regeneron Pharms., Inc. Sec. Litig.*, 2005 WL 225288, at *3 (S.D.N.Y. Feb. 1, 2005) (finding "make or break" product for the company supported scienter of individual defendants). And by signing SEC documents that included material misstatements and omissions (¶¶110, 115-117, 119, 121, 127), the Individual

---

[15] These facts make clear why Defendants' reliance on *Genzyme* (Mot. at 22-23) is flawed. The First Circuit held the defendants had no duty to disclose a Form 483 because they made no "affirmative statements" about its subject matter and believed it was immaterial given other indications from the FDA that it would not interfere with the approval of their drug. 754 F.3d at 41-42. Therefore, the decision to disclose the Form 483 "only a few months later" along with other regulatory developments "undercut any inference of fraudulent intent." *Id*.

[16] *See also Avaya*, 546 F.3d at 268 (recognizing a "core operations inference" supports scienter when securities fraud alleged related to core matters of central importance to a company); *Viropharma*, 21 F. Supp. 3d at 473 (similar).

21

Defendants had a "duty to familiarize themselves with the facts relevant to the core operations of [the company]"). *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 459, 496 (S.D.N.Y. 2005).[17]

## VI.    THE AC ADEQUATELY ALLEGES LOSS CAUSATION

"Loss causation is a causal connection between the material misrepresentation or omission and the loss suffered." *Urban Outfitters*, 103 F. Supp. 3d at 655. Loss causation is not subject to any heightened pleading requirements; rather, all that is required is that a plaintiff provide "some indication of the loss and the causal connection that the plaintiff has in mind," consistent with the notice pleading standards of Rule 8(a). *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 348 (2005); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 180 n.24 (3d Cir. 2001). "Third Circuit precedent instructs that loss causation is a fact intensive inquiry which is best resolved by the trier of fact." *In re Wilmington Trust Sec. Litig.*, 29 F. Supp. 3d 432, 450 (D. Del. 2014) (citing *EP Medsys., Inc. v. Echocath, Inc.*, 235 F.3d 865, 884 (3d Cir. 2000)).

The AC alleges two dates – September 20, 2021 and May 24, 2022 – in which Defendants' misleading statements and undisclosed risks to Verrica obtaining regulatory approval of its NDA for VP-102 were revealed and, as a result, Verrica's stock price dropped and Plaintiff and the Class suffered economic loss.[18] ¶¶129-137. In challenging these loss causation events, Defendants argue

---

[17] That Defendants' misrepresentations and omissions were directly related to Verrica's core operations undermines the claim that Plaintiff has failed to allege motive. Mot. at 23, n.12. Although not necessary, motive can be relevant to the required holistic analysis of scienter. *Avaya*, 564 F.3d at 276-77 ("the absence of a motive allegation is not fatal"). Defendants had significant motive to hide material risks regarding FDA approval of VP-102, as Verrica's survival depended on it. ¶¶30-31. *In re Sepracor, Inc., Sec. Litig.*, 308 F. Supp. 2d 20, 31 (D. Mass. 2004) (scienter supported by allegations that company was "burning cash at a high rate and was dependent on [product] as the most promising drug in its pipeline"); *accord In re Cabletron Sys.*, 311 F.3d 11, 39 (1st Cir. 2002); *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 800 (C.D. Cal. 2011).

[18] "[T]he exposure of the alleged fraud need not occur in a single, all-encompassing corrective disclosure; instead, the truth can be revealed through a series of partial corrective disclosures." *Urban Outfitters*, 103 F. Supp. 3d at 655-56.

22

the announcements cannot act as corrective disclosures because they did not "correct[] the so-called 'actual omission' by disclosing that FDA inspections of Sterling had 'resulted in the issuance of a Form 483'" and instead only conveyed that "the FDA had issued a CRL," which "dooms Plaintiff's claim." Mot. at 24. Defendants' "mirror-image" argument misstates both the facts alleged and the standard for pleading loss causation in the Third Circuit. *See Urban Outfitters*, 103 F. Supp. 3d at 655 ("Although a corrective disclosure must be related to the same subject as the misrepresentation, and not some other adverse facts about the company, there is no requirement that the disclosure mirror the earlier misrepresentation.").[19]

On September 20, 2021, Verrica announced it had received a CRL from the FDA due to deficiencies the FDA identified at Sterling during the May 2021 inspection.[20] ¶¶68-69, 131-132. The market now knew that there were significant problems at Sterling, that the FDA had serious concerns about those problems, and that, as a result, the FDA would not approve the NDA while the facility was out of cGMP compliance. ¶¶68-69, 100. This disclosure thus directly contradicted Defendants' earlier statements regarding the CMO inspections and the falsely positive impression those statements conveyed to the market. ¶¶65-67. In response, Verrica's stock price dropped 8.3%, to close at $11.03 per share that same day. ¶¶70, 134.

On May 24, 2022, Verrica announced the FDA had again issued a CRL due "to the identified deficiencies at a general reinspection of Sterling" that occurred in February 2022. ¶78.

---

[19] Defendants' reliance on *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262 (D.N.J. 2007) confirms their attempt to impose a causation standard not required or appropriate in the Third Circuit. Mot. at 23-24. Courts in this district that have been faced with the same "mirror image" argument under *Intelligroup* have expressly rejected it, refusing to endorse such an approach to loss causation. *See, e.g.*, *In re DVI, Inc. Sec. Litig.*, 2010 WL 3522090, at *6, n.10 (E.D. Pa. Sept. 3, 2010) ("Despite Defendant's effort to convince the Court otherwise, 'to be corrective, the disclosure need not precisely mirror the earlier misrepresentation,'" and discussing *Intelligroup*).

[20] Though not disclosed in this September 2021 announcement, the May 2021 Form 483 was the first time these inspectional deficiencies were identified. ¶88.

This disclosure revealed the falsity of the Company's prior assertions that the deficiencies observed during the May 2021 Sterling inspection had been "successfully resolved" (*e.g.*, ¶101) and that there was a viable path forward for regulatory approval of VP-102 despite (yet-unknown to investors) continued deficiencies at Sterling (¶¶123-125). On this news, Verrica's stock price plummeted 63.8%, to close at $2.01 per share on May 25, 2022. ¶¶79, 137.

The fact that the press releases do not explicitly "mention" Sterling's receipt of a Form 483 does not mean the events they did disclose—the FDA's issuance of multiple CRLs due to Sterling's inspectional deficiencies—could not have been relevant loss-inducing events. *See, e.g.*, *In re Vivendi Univ., S.A. Sec. Litig.*, 605 F. Supp. 2d 586, 598 (S.D.N.Y. 2009) (explaining the loss-inducing event need not be a corrective disclosure by the company itself, but could be "the failure to obtain agency approval," which "may reveal the risk of a non-viable product"). In misrepresenting or omitting material information regarding Sterling's ongoing inspectional deficiencies from the public and, by doing so, leading the public to believe the deficiencies which led to the rejection of the earlier NDA were resolved, Defendants concealed from the market a salient risk the resubmitted NDA would not be approved. That risk materialized when the FDA again issued a CRL due to Sterling's inspectional deficiencies. ¶¶135, 136. *See Urban Outfitters*, 103 F. Supp. 3d at 656 (discussing sufficiency of pleading materialization of concealed risk).

Defendants' argument that the press releases revealed nothing more than the FDA's issuance of a CRL is also belied by the analysts and investors who directly attributed the price declines immediately following the disclosures to the uncertainty surrounding Sterling and the likelihood of the NDA receiving regulatory approval with Sterling. ¶¶71-73, 80-81. *See In re Bristol-Myers Squibb Sec. Litig.*, 2005 WL 2007004, at *22 (D.N.J. Aug. 17, 2005) (plaintiffs adequately alleged loss causation based on contemporaneous analyst's reports).

24

## VII.   THE AC ADEQUATELY ALLEGES CONTROL PERSON LIABILITY

To state a §20(a) claim, a plaintiff must allege (1) an underlying §10(b) violation, and (2) that the defendants controlled the person or entity that committed the underlying violation. *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 142 F. Supp. 2d 589, 623 (D.N.J. 2001). So long as the plaintiff alleges a §10(b) violation, §20(a) "claims need not be pleaded with particularity." *In re Toronto-Dominion Bank Sec. Litig.*, 2018 WL 6381882, at *20 (D.N.J. Dec. 6, 2018).

The AC alleges a primary violation of §10(b). And, for pleading purposes, an individual defendant's position as a high-ranking officer is enough to allege control. *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675, at *35 (D.N.J. Aug. 8, 2018); *Toronto-Dominion Bank*, 2018 WL 6381882, at *21. The Individual Defendants were Verrica's CEO and the CFOs and signed one or more public filings during the Class Period, thereby "accepting responsibility for its contents." *Steamfitters Local 499 Pension Fund v. Alter*, 2011 WL 4528385, at *9 (E.D. Pa. Sept. 30, 2011). This places the Individual Defendants within the meaning of "controlling persons" under §20(a). *In re Able Labs. Sec. Litig.*, 2008 WL 1967509, at *28 (D.N.J. Mar. 24, 2008).

The Individual Defendants insist that the "culpable participation" allegations fall short. Mot. at 25. The Third Circuit has declined to resolve the divide among district courts on whether there is a requirement to plead "culpable participation." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 485 n.20 (3d Cir. 2013); *see, e.g.*, *Carmack v. Amaya Inc.*, 258 F. Supp. 3d 454, 466 (D.N.J. 2017). Assuming that culpable participation is required, because the AC alleges a strong inference of scienter, so too has it adequately pled "culpable participation." Mot. at 25; *Cognizant*, 2018 WL 3772675, at *35 (a finding of scienter supports a finding of culpable participation).

## VIII.   CONCLUSION

The Court should deny Defendants' Motion in its entirety. Alternatively, if the Court grants any portion of the Motion, Plaintiff respectfully requests leave to amend.

Dated: May 5, 2023          By: */s/ Lee Albert*
                            **GLANCY PRONGAY & MURRAY LLP**
                            Lee Albert (PA ID# 046852)
                            230 Park Avenue, Suite 348
                            New York, NY 10169
                            Telephone: (212) 682-5340
                            Facsimile: (212) 884-0988
                            Email: lalbert@glancylaw.com

                            Leanne H. Solish (admitted *pro hac vice*)
                            Chase M. Stern (*Pro Hac* to be filed)
                            1925 Century Park East, Suite 2100
                            Los Angeles, CA 90067
                            Telephone: (310) 201-9150
                            Facsimile: (310) 201-9160
                            Email: lsolish@glancylaw.com
                                     cstern@glancylaw.com

                            *Counsel for Lead Plaintiff and*
                            *Lead Counsel for the Class*


                            **THE LAW OFFICES OF FRANK R. CRUZ**
                            Frank R. Cruz (*Pro Hac* to be filed)
                            1999 Avenue of the Stars, Suite 1100
                            Los Angeles, CA 90067
                            Telephone: (310) 914-5007

                            *Additional Counsel for Lead Plaintiff*

26

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 5, 2023, I electronically filed a true and correct copy the foregoing document with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

*/s/ Lee Albert*
Lee Albert