IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KRANTHI GORLAMARI, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VERRICA PHARMACEUTICALS, INC., TED WHITE, P. TERENCE KOHLER JR., and A. BRIAN DAVIS,<br><br>Defendants. | Civil Action No. 2:22-cv-02226-MSG |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

    I.      The AC Fails to Plead an Actionable Misrepresentation or Omission ........................ 2

           A.      Statements About the Timing of 2021 Facility Inspections ........................... 3

           B.      Statements About September 2021 CRL ........................................................ 4

           C.      Statements About November 2021 VAI Classification .................................. 5

           D.      Statements About Prospects for Regulatory Approval of VP-102 .................. 7

    II.     The AC Fails to Plead the Requisite Strong Inference of Scienter ............................. 8

    III.    The AC Fails to Adequately Plead Loss Causation .................................................. 10

    IV.    The AC Fails to Plead a Section 20(a) Control Person Claim ................................... 10

CONCLUSION .............................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amarin Corp. PLC Sec. Litig.*,
   2022 WL 2128560 (3d Cir. June 14, 2022) ..............................................................3

*City of Edinburgh Council v. Pfizer, Inc.*,
   754 F.3d 159 (3d Cir. 2014)........................................................................................7

*City of Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*,
   865 F. Supp. 2d 811 (W.D. Mich. 2012) ...............................................................1, 3

*Del. Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*,
   606 F. Supp. 3d 124 (E.D. Pa. 2022)........................................................................10

*Fort Worth Emps. Ret. Fund v. Biovail Corp.*,
   615 F. Supp. 2d 218 (S.D.N.Y. 2009).......................................................................10

*Dudley v. Haub*,
   2013 WL 1845519 (D.N.J. Apr. 30, 2013) .................................................................8

*In re Genzyme Corp.*,
   2012 WL 1076124 (D. Mass. Mar. 30, 2012)......................................................1, 6, 7

*In re Genzyme Corp. Sec. Litig.*,
   754 F.3d 31 (1st Cir. 2014)........................................................................................10

*GSC Partners CDO Fund v. Washington*,
   368 F.3d 228 (3d Cir. 2004)........................................................................................9

*Hoey v. Insmed Inc.*,
   2018 WL 902266 (D.N.J. Feb. 15, 2018) ...................................................................8

*Industriens Pensionforsikring v. Becton, Dickinson & Co.*,
   2021 WL 4191467 (D.N.J. Sept. 15, 2021) ........................................................1, 7, 8

*McClain v. Iradimed Corp.*,
   111 F. Supp. 3d 1293 (S.D. Fla. 2015) ...................................................................1, 7

*McGuire v. Dendreon Corp.*,
   2008 WL 1791381 (W.D. Wash. Apr. 18, 2008).........................................................2

*McGuire v. Dendreon Corp.*,
   2008 WL 5130042 (W.D. Wash. Dec. 5, 2008) ..........................................................3

*Mulligan v. Impax Labs., Inc.*,
   36 F. Supp. 3d 942 (N.D. Cal. 2014) ..........................................................................3

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Odeh v. Immunomedics, Inc.*,
2020 WL 4381924 (D.N.J. July 31, 2020)..................................................................................3

*Okla. Police Pension Fund & Ret. Sys. v. Teligent, Inc.*,
2020 WL 3268531 (S.D.N.Y. June 17, 2020) ...........................................................................2

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000)......................................................................................................8

*In re PolarityTE, Inc. Sec. Litig.*,
2020 WL 6873798 (D. Utah Nov. 22, 2020) .........................................................................1, 5

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015)...........................................................................................1

*Schaeffer v. Nabriva Therapeutics plc*,
2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020)................................................................. *passim*

*Yanek v. STAAR Surgical Co.*,
388 F. Supp. 2d 1110 (C.D. Cal. 2005) .....................................................................................3

**Statutes**

15 U.S.C.
§ 78u-4 ........................................................................................................................................7
§ 78u-5 ........................................................................................................................................7

**INTRODUCTION**

Plaintiff's opposition ("Opp.") underscores that dismissal of the AC with prejudice is appropriate. Confronted with the myriad case law holding that there is no standalone duty to disclose a Form 483,[1] Plaintiff contends that disclosure was nonetheless required because "the purpose of the Form 483 is to document objectionable conditions which render a facility out of compliance with cGMP. . . ." Opp. 2. Yet Plaintiff's own allegations in the AC make clear that a "Form 483 does not . . . represent a final FDA determination regarding compliance or violation of the FDCA or its relevant regulations." ¶ 52. Indeed, Form 483 itself "expressly states that it does not represent a final Agency determination regarding compliance." *McClain*, 111 F. Supp. 3d at 1304-05; *accord Stryker*, 865 F. Supp. 2d at 825. A Form 483 is merely "interim FDA feedback." *Industriens*, 2021 WL 4191467, at *12 n.18. Plaintiff's contention that Form 483s must nevertheless be disclosed to allow investors to "evaluate th[e] risk for themselves," Opp. 11, is entirely unfounded: "The law [does] not impose an affirmative duty to disclose the FDA's interim feedback just because it would be of interest to investors." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 534 (S.D.N.Y. 2015). "[T]o think otherwise would be to insist on a flood of data that would overwhelm the market and would ironically be, in the end, actually uninformative." *In re Genzyme Corp.*, 2012 WL 1076124, at *10 (D. Mass. Mar. 30, 2012), *aff'd*, 754 F.3d 31 (1st Cir. 2014).

The failure to disclose a Form 483 is actionable "only if its disclosure is necessary to remediate otherwise misleading statements," *Industriens*, 2021 WL 4191467, at *12 n.18; *accord PolarityTE*, 2020 WL 6873798, at *10, and the relevant question in evaluating scienter is thus

---

[1] *See, e.g.*, *Industriens Pensionforsikring v. Becton, Dickinson & Co.*, 2021 WL 4191467, at *12 n.18 (D.N.J. Sept. 15, 2021); *In re PolarityTE, Inc. Sec. Litig.*, 2020 WL 6873798, at *10 (D. Utah Nov. 22, 2020); *Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463, at *9 (S.D.N.Y. Apr. 28, 2020); *McClain v. Iradimed Corp.*, 111 F. Supp. 3d 1293, 1304-05 (S.D. Fla. 2015); *City of Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 825 (W.D. Mich. 2012).

whether "Defendants knew . . . their statements were misleading in light of [a] Form 483." *Schaeffer*, 2020 WL 7701463, at *12. As discussed below, Plaintiff does not identify any statement rendered false by the failure to disclose a Form 483, much less plead particularized facts giving rise to a strong inference that Defendants knowingly made statements that were misleading without disclosure of a Form 483. Moreover, Plaintiff does not dispute that Form 483 was not mentioned in either of the alleged corrective disclosures in September 2021 and May 2022. The AC thus also fails to adequately plead a loss caused by the failure to disclose a Form 483.

For these and all the other reasons herein, the AC should be dismissed with prejudice.

## ARGUMENT

## I.    THE AC FAILS TO PLEAD AN ACTIONABLE MISREPRESENTATION OR OMISSION

In an attempt to contrive a claim, Plaintiff argues that disclosure of the Form 483s was required because Verrica cautioned investors that "[t]he FDA will not approve an application unless it determines that the manufacturing processes and facilities are in compliance with cGMP requirements." Opp. 5. That is not the law:

> Plaintiffs inappropriately conflate the CMC inspection and issuance of a Form 483 with a finding of non-compliance. A statement that the product will not be approved unless the manufacturing facilities are in compliance is not misleading for failing to mention a Form 483 because the Form 483 is not a final agency determination of non-compliance.

*McGuire v. Dendreon Corp.*, c, at *7 (W.D. Wash. Apr. 18, 2008) ("*McGuire I*"). The cases Plaintiff cites are not to the contrary. *See, e.g.*, *Okla. Police Pension Fund & Ret. Sys. v. Teligent, Inc.*, 2020 WL 3268531, at *12 (S.D.N.Y. June 17, 2020) (cited at Opp. 18) (Form 10-K risk disclosures regarding company's obligations to "comply with cGMPs" and submit to "periodic inspection by the FDA" accurately described "the risks it (and any other drug company) faced in the event of non-compliance" and was not rendered false by Form 483 because risk disclosure "was not commenting on [company's] compliance or lack of compliance").

2

Rather, Plaintiff's cases underscore that, in order to put disclosure of a Form 483 "in play," a defendant must have made an affirmative misrepresentation about a Form 483 itself,[2] the results of an FDA inspection,[3] or compliance with cGMP requirements.[4]  *See also In re Amarin Corp. PLC Sec. Litig.*, 2022 WL 2128560, at *2-3 (3d Cir. June 14, 2022) (reference to placebo group in disclosure of trial results did not put "in play" disclosure of all material information regarding placebo because company "did not make any affirmative characterizations regarding the effectiveness of the mineral oil placebo").

None of the challenged statements here make any such affirmative misrepresentations.

### A.    Statements About the Timing of 2021 Facility Inspections

Plaintiff does not dispute that the facts alleged in the AC are consistent with Mr. White's statements in May and June 2021 regarding the timing of the FDA's CMO facility inspections. *Compare* Defs.' Opening Br. 11-14 (ECF 33-1), *with* Opp. 10.  Instead, in an apparent attempt to suggest that Mr. White made a qualitative characterization about the FDA's inspections, Plaintiff contends that Mr. White "assur[ed] [investors] repeatedly that the inspections were going 'according to plan.'"  Opp. 2.  But the AC itself makes clear Mr. White's "according to plan"

---

[2] *See Odeh v. Immunomedics, Inc.*, 2020 WL 4381924, at *4 (D.N.J. July 31, 2020) (failure to disclose August 14 Form 483 actionable where August 23 Form 10-K implied no Form 483 had yet been received by disclosing risk of "<u>potential</u> receipt of a Form 483"); *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 961 (N.D. Cal. 2014) ("Defendants misrepresented that . . . there were no issues with manufacturing" when the "Form 483 did, in fact, refer to manufacturing issues").

[3] *See McGuire v. Dendreon Corp.*, 2008 WL 5130042, at *2, *4-5, *8 (W.D. Wash. Dec. 5, 2008) ("*McGuire II*") (failure to disclose Form 483 actionable where defendant affirmatively characterized FDA inspection as a "good inspection"); *Stryker*, 865 F. Supp. 2d at 825 n.6 (discussing basis for holding in *McGuire II*).

[4] *See Yanek v. STAAR Surgical Co.*, 388 F. Supp. 2d 1110, 1131 (C.D. Cal. 2005) (defendant stated that there were no "huge issues" and that "everything will work" in response to "direct questioning on whether there were any problems with manufacturing"); *see also Schaeffer*, 2020 WL 7701463, at *11 ("[F]ailing to disclose a recent Form 483 that lists numerous potential cGMP violations could render misleading a company's statements that it is presently substantially in compliance with cGMP regulations.").

3

statement was made once (not repeatedly) on May 19, 2021. The full context was that Mr. White had stated in April 2021 that the FDA planned to inspect two CMO facilities in connection with the then-pending NDA and, when asked for an update on May 19, 2021, stated that Verrica "anticipate[d] that we'll have our inspections take place according to plan." ¶¶ 65-66. That is plainly a statement regarding Verrica's expectation as to whether the two inspections would take place before the PDUFA goal date, not a qualitative characterization of any inspection.[5]

Plaintiff does not, and cannot, allege any facts showing that as of May 19, 2021, the Company did not expect the two inspections to timely occur. Instead, Plaintiff concedes that one of the two inspections had already occurred at the time of Mr. White's statement. Opp. 9. Plaintiff criticizes Mr. White for not also disclosing on May 19 that "the Sterling inspection had taken place," but providing the Company's expectation that the two inspections would be timely completed is not the "opposite" of stating that one inspection had already occurred. Opp. 10 n.5. And in any event, far from concealing that an inspection had occurred, Mr. White disclosed on May 28, 2021 that the FDA had "completed one of the two pre-approval inspections." ¶ 110.

B.      Statements About September 2021 CRL

Plaintiff inexplicably asserts that Verrica's September 20, 2021 press release "indicates that Defendants had no prior knowledge of Sterling's May 2021 Form 483." Opp. 12. What Verrica stated was that "[a]t no time prior to the CRL was the Company notified by the FDA of any deficiencies at the CMO related specifically to the manufacturing of VP-102." ¶ 113. Plaintiff does not, and cannot, allege facts showing that the FDA *ever* identified any deficiencies at the

---

[5] Mr. White's April 2021 statement that Verrica had engaged outside consultants who would be "on-site when the FDA does do their inspections," ¶ 65, does not change the analysis. Mr. White did not represent that these outside consultants would guarantee a favorable outcome for the CMO facility inspections, nor would it have been reasonable to infer any such guarantee. As Verrica repeatedly warned investors, "[w]e do not have control over a . . . manufacturer's compliance with laws, regulations and applicable cGMP standards." ECF 33-3, at 50; ECF 33-4, at 51.

4

Sterling facility relating to the manufacturing of VP-102.[6]  The September 2021 press release also stated that, prior to the CRL, the FDA had not notified the Company the "general investigation of the [Sterling] facility would have any impact on the Company's NDA."  ¶ 113.  Plaintiff does not identify any facts contradicting that statement.  Instead, Plaintiff simply avers that it was "known and knowable well before the September 2021 CRL."  Opp. 12.  Plaintiff's conclusory, fact-free averment is not remotely sufficient to satisfy the heightened pleading standards of the PSLRA.

### C.      Statements About November 2021 VAI Classification

Plaintiff does not dispute that, on November 5, 2021, Verrica was provided notice that the May 2021 inspection of Sterling's facility had been classified as VAI, the inspection was "closed," and the VAI classification "[would] not directly negatively impact FDA's assessment of the Company's NDA."  ¶¶ 74, 91.  One week later, Verrica announced that Sterling had "receive[d] satisfactory resolution (VAI) of the facility's identified deficiencies from the FDA."  ECF 33-8.

Plaintiff takes issue with Verrica's characterization of the VAI classification as a satisfactory or successful resolution, ¶¶ 115-19, 121, 127, but does not, and cannot, dispute that the FDA's inspection was "closed" without any regulatory action.  Indeed, a VAI classification means the FDA "is not prepared to take or recommend any administrative or regulatory action." ¶ 53; *see also PolarityTE*, 2020 WL 6873798, at *10 ("The FDA ultimately 'closed the inspection with a Voluntary Action Indicated classification,' reflecting an agency determination that 'the allegedly objectionable conditions [did] not meet the threshold of regulatory significance.'").

Plaintiff's contention that a VAI classification means that "objectionable conditions were found . . . not that . . . the objectionable issues found during the inspection were resolved," Opp. 13, ignores that Form 483 observations "are meant to prod a [manufacturing facility] into taking

---

[6] For this reason, Plaintiff has also failed to plead the falsity of Mr. White's April 2022 statement that the September 2021 CRL was "totally unrelated to VP-102." ¶ 124.

corrective steps," *Genzyme*, 2012 WL 1076124, at *10, and that, as of September 20, 2021, Sterling had advised Verrica that "it ha[d] implemented corrective actions" and was "expecting a satisfactory resolution of the facility's identified deficiencies from the FDA within the next 30 business days." ¶ 69. Consistent with Sterling's stated expectations, Verrica was notified of the FDA's VAI classification on November 5, 2021. ¶¶ 74, 91. It was only after notification of that VAI classification that Verrica resubmitted its NDA. ¶ 76.[7]

Rather than identify any contemporaneous facts contradicting Verrica's understanding that the November 2021 VAI classification meant that the Sterling inspection issues had been resolved, Plaintiff reaches forward in time to a May 2022 press release and argues that "Verrica admitted that the FDA informed it that the FDA's concerns at Sterling were 'specifically required' to be 'resolved to the FDA's satisfaction' for approval of Verrica's NDA. Opp. 13 (quoting ¶ 78). But the full context of what Verrica actually stated in the May 2022 press release only underscores that it genuinely believed that the May 2021 inspection issues had been resolved in November 2021:

> Based on the VAI classification of Sterling and the statements contained in the EIR, Verrica was led to believe that any concerns at Sterling had been resolved to FDA's satisfaction, and as specifically required in the CRL for approval of its NDA. Accordingly, Verrica resubmitted its NDA on November 24, 2021, which was accepted [by the FDA].

¶ 78. Plaintiff is conspicuously silent on why Verrica would resubmit its NDA if it did not genuinely believe the VAI classification meant the Sterling inspection issues had been resolved.

Like Verrica's challenged November 2021 statements, ¶¶ 115-19, the March 2, 2022 Form 10-K and May 9, 2022 Form 10-Q explained that Verrica resubmitted its NDA in November 2021

---

[7] Plaintiff criticizes Verrica for stating that the VAI classification "[would] not directly negatively impact FDA's assessment of the Company's NDA," ¶¶ 74, 91, when the May 2021 inspection "had already" resulted in the September 2021 CRL, Opp. 13, but ignores that the VAI classification did not occur until two months later in November 2021. It was only after being informed that the VAI classification would not negatively impact its NDA that Verrica resubmitted the NDA. ¶ 76.

6

after notice of the VAI classification. ¶¶ 121, 127. Neither document made any representation about the February 2022 reinspection or Sterling's then-existing compliance or lack of compliance with cGMP requirements. Thus, no statement in these documents was rendered false by the failure to disclose the February 2022 Form 483, which, again, reflects "interim FDA feedback," *Industriens*, 2021 WL 4191467, at *12 n.18, that was "subject to revision" and/or correction by the CMO. *Genzyme*, 2012 WL 1076124, at *10. It was not until May 20, 2022 that Verrica received notice of Sterling's OAI classification, which Verrica then promptly disclosed. ¶ 78.

### D. Statements About Prospects for Regulatory Approval of VP-102

Plaintiff does not meaningfully dispute that Mr. White's March and April 2022 statements about the prospects for regulatory approval of VP-102, ¶¶ 123-26, were forward-looking opinion statements. Plaintiff bears the burden of pleading particularized facts showing that they were not "honestly believed and lack[ed] a reasonable basis" at the time they were made (*i.e.*, before receipt of the May 2022 CRL), *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014), and giving rise to a strong inference that Mr. White had "actual knowledge" of the falsity of his opinion statements. 15 U.S.C. §§ 78u–4(b)(1), 78u–5(c)(1)(B).

Rather than plead particularized facts showing that Mr. White knew in March or April 2022 that the November 2021 NDA was doomed, however, Plaintiff engages in impermissible hindsight pleading. Plaintiff claims that the February 2022 Form 483 contained observations that "'significant[ly] violat[ed] cGMP,'" Opp. 14 (citing ¶¶ 92-95 for quote), but the quoted language is from a letter the FDA sent to Sterling *seven months later* in September 2022. ¶ 93. As the AC admits, "Form 483 does not . . . represent a final FDA determination regarding compliance or violation of the FDCA or its relevant regulations." ¶ 52; *McClain*, 111 F. Supp. 3d at 1304-05.

In any event, Mr. White's generalized statements of optimism are classic puffery that is inactionable as a matter of law. *See, e.g.*, *Hoey v. Insmed Inc.*, 2018 WL 902266, at *18 (D.N.J.

7

Feb. 15, 2018) (statement by executive that he "saw an approvable drug, bottom line" was inactionable puffery); *Dudley v. Haub*, 2013 WL 1845519, at \*14 (D.N.J. Apr. 30, 2013) (statement that "initiatives are in place today to provide us the path forward" was inactionable puffery). Plaintiff makes no attempt to distinguish *Hoey* or *Dudley*. Instead, Plaintiff evades the issue and relies on allegations in the loss causation section of the AC, ¶¶ 135-37, to essentially argue that any optimistic statements about the prospects for regulatory approval are actionable if there is a stock price drop following receipt of a CRL. Opp. 16. That is not the law. Indeed, in the case Plaintiff cites, the court held there was no actionable omission despite a "four-percent drop" in share price. *See Oran v. Stafford*, 226 F.3d 275, 285-86 (3d Cir. 2000) (cited at Opp. 16).

## II.    THE AC FAILS TO PLEAD THE REQUISITE STRONG INFERENCE OF SCIENTER

Mere knowledge of a Form 483, whether inferred from FE allegations, Opp. 17 n.10, or imputed under the "core operations" theory, Opp. 21, 21 n.16, does not support any inference of scienter. Without a statement that was rendered false by the failure to disclose a Form 483, Plaintiff also cannot plead a strong inference of scienter.[8]

Rather than plead facts demonstrating that any Defendant knew a statement was false when made, Plaintiff contends Defendants' state of mind is beside the point: "Whatever Defendants may have believed as to the resolution of Sterling's inspectional issues and the prospects of FDA approval, it does not change that they misstated and omitted material facts about Sterling's inspections and the issues observed." Opp. 19. That is not the law:

> While the issuance of the Form 483 might render [a statement] misleading to reasonable investors, it does not necessarily follow that Defendants were reckless in disregarding that possibility. Put differently, it might have been reasonable for

---

[8] Because the failure to disclose a Form 483 is actionable "only if its disclosure is necessary to remediate otherwise misleading statements," *Industriens*, 2021 WL 4191467, at \*12 n.18, the relevant question in evaluating scienter is whether any Defendant "knew . . . [its] statements were misleading in light of [a] Form 483." *Schaeffer*, 2020 WL 7701463, at \*12. None of the cases cited by Plaintiff are to the contrary. *See supra* at page 3, footnotes 2-4.

8

Defendants to believe the Form 483 did not contradict their public statements given the circumstances known to them, even if a reasonable investor might have otherwise thought it did. Plaintiff needs to plead something more . . . .

*Schaeffer*, 2020 WL 7701463, at *12.

The need for factual detail is particularly acute here where Plaintiff has alleged a fraud that makes little sense, proffered only a conclusory allegation of motive, Opp. 22 n.17, "shared by virtually all corporate speakers," *Schaeffer*, 2020 WL 7701463, at *12, and failed to allege a "concrete and personal benefit to the individual defendants" from the alleged fraud. *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004) (citation omitted).

As Plaintiff admits, Verrica provided the basis for its belief that the Sterling inspection issues had been resolved: a November 5, 2021 communication conveying the VAI classification and that it would not directly negatively impact FDA's assessment of an NDA. ¶¶ 74, 91. Openly providing investors with the basis for its belief that the Sterling issues had been resolved is the antithesis of fraud.[9] Moreover, in arguing that the February 2022 Form 483 should have been disclosed, Plaintiff ignores that a Form 483 "does not . . . represent a final FDA determination" and must be considered with a "more detailed" EIR, "the evidence and documentation collected on-site, and any responses made by the [CMO] . . . in determining how to classify the inspection and what, if any, further action is appropriate." ¶ 52. Plaintiff does not identify any facts showing that the FDA had made an OAI classification determination, much less provided Sterling or Verrica notice of such determination, at the time any of the challenged statements were made.

Plaintiff is ultimately reduced to a bizarre contention that is both factually and legally unsupported. Plaintiff contends that Verrica's prompt disclosure of the CRLs "furthers" the

---

[9] Plaintiff misguidedly relies on a Form 483 issued to Sterling in April 2018, Opp. 20, before Verrica submitted its initial NDA for VP-102 in September 2019. ¶ 59. The FDA took no action against Sterling in 2018, ¶ 86, and the CRL issued to Verrica in July 2020 had nothing to do with any Sterling inspectional issues. ¶ 60.

9

inference of scienter because "Defendants sought to use the CRLs to underrepresent the true extent of the deficiencies at Sterling and their impact on obtaining regulatory approval." Opp. 21. As courts have held, however, the "full and prompt disclosure" of a CRL affirmatively undermines any inference of scienter. *See In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 42 (1st Cir. 2014).

### III.    THE AC FAILS TO ADEQUATELY PLEAD LOSS CAUSATION

Plaintiff makes no attempt to address *Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218 (S.D.N.Y. 2009). There, the court held that a plaintiff cannot merely rely on the "all-but-inevitable decline" in share price following a failed drug approval to plead loss causation; instead, a plaintiff must identify a "'corrective' disclosure of some prior untruth." *Id.* at 229. The AC does not identify a corrective disclosure of what Plaintiff contends was the "actual omission"—*i.e.*, that the FDA inspections of Sterling "resulted in the issuance of a Form 483." ECF 30, at 2. Indeed, Plaintiff concedes that Form 483 was not mentioned in either of the alleged corrective disclosures in September 2021 and May 2022. Opp. 22-24.

### IV.    THE AC FAILS TO PLEAD A SECTION 20(a) CONTROL PERSON CLAIM

Plaintiff does not dispute that if the AC fails to allege a primary violation of Section 10(b), the Section 20(a) control person claim must also be dismissed. The Section 20(a) claim should also be dismissed because the AC fails to adequately plead any Individual Defendant's culpable participation in an alleged primary violation of Section 10(b).[10]

### CONCLUSION

For the foregoing reasons, the AC should be dismissed with prejudice.

---

[10] *See Del. Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*, 606 F. Supp. 3d 124, 141 (E.D. Pa. 2022) ("Our Court of Appeals has explained that in enacting § 20(a), 'Congress intended liability to be based on something besides control. That something is culpable participation.'") (citation omitted).

Dated: May 23, 2023

**COOLEY LLP**

By: */s/ Sarah M. Lightdale*
Sarah M. Lightdale
Aric H. Wu
Christopher L. Martin, Jr.
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
slightdale@cooley.com
ahwu@cooley.com
cmartin@cooley.com

Luke T. Cadigan
Zachary Sisko
500 Boylston Street
Boston, MA 02116-3736
Telephone: (617) 937-2300
Facsimile: (617) 937-2400
lcadigan@cooley.com
zsisko@cooley.com

**MORGAN, LEWIS & BOCKIUS LLP**
Michael L. Kichline
Emily S. Kimmelman
1701 Market St.
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
michael.kichline@morganlewis.com
emily.kimmelman@morganlewis.com

*Attorneys for Defendants Verrica Pharmaceuticals, Inc.,
Ted White, P. Terence Kohler, Jr., and A. Brian Davis*

11