**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KRANTHI GORLAMARI, Individually and On Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>    v.<br><br>VERRICA PHARMACEUTICALS, INC., TED WHITE, and P. TERENCE KOHLER JR.,<br><br>           Defendants. | Case No. 2:22-cv-02226-MSG<br><br><br>**Oral Argument Requested** |

**LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................... 1

II.   PROCEDURAL STATUS ................................................................................... 3

    A.    The Order Denying, In Part, Defendants' Motion To Dismiss ............................... 3

    B.    The Second Amended Complaint .......................................................................... 4

III.  RELEVANT BACKGROUND FACTS AND NEW ALLEGATIONS IN THE SAC ..... 4

    A.    Background on Verrica And The Individual Defendants ...................................... 4

    B.    Verrica's Troubled Path To FDA Approval Of VP-102......................................... 5

IV.  APPLICABLE LEGAL STANDARDS DISFAVOR DEFENDANTS' MOTION........... 7

V.   THE SAC ALLEGES ACTIONABLE, FALSE OR MISLEADING STATEMENTS MADE WITH SCIENTER ............................................................................................ 9

    A.    False and Misleading Statements And Omissions About The May 2021 Sterling Inspection .................................................................................................... 10

    B.    False and Misleading Statements And Omissions Following The February 2022 Sterling Inspection ............................................................................................ 10

    C.    The Former Employee Allegations Are Reliable Under The Third Circuit Factors And Defendants' Claims Otherwise Are Based On Improperly Injecting The Record With Extraneous Fact Issues .................................................................. 13

        1.    The FE Affidavits May Not Be Considered On A Motion To Dismiss.... 15

        2.    Defendants' Introduction Of The FE Affidavits Violates The PSLRA Discovery Stay ......................................................................................... 16

        3.    The FE Affidavits Cannot Be Accepted As True, And At Most Raise Questions Of Credibility For The Trier Of Fact ...................................... 17

        4.    The FE Affidavits, Even If Considered, Do Not Fatally Undermine The Otherwise Strong Inference Of Scienter .................................................. 20

VI.  THE AC ADEQUATELY ALLEGES CONTROL PERSON LIABILITY .................... 22

VII.  CONCLUSION................................................................................................. 23

**TABLE OF AUTHORITIES**

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................. 8

*Bartesch v. Cook*,
   941 F. Supp. 2d 501 (D. Del. 2013) ...................................................................................... 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................. 8

*Belmont Holdings Corporation v. SunTrust Banks, Inc.*,
   896 F. Supp. 2d 1210 (N.D. Ga. 2012) ................................................................................. 19

*Belmont v. MB Inv. Partners, Inc.*,
   708 F.3d 470 (3d Cir. 2013) .................................................................................................. 22

*City of Livonia Employees' Retirement System v. Boeing Co.*,
   711 F.3d 754 (7th Cir. 2013) ................................................................................................ 19

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
   952 F. Supp. 2d 633 (S.D.N.Y. 2013) ................................................................................... 18

*Corban v. Sarepta Therapeutics, Inc.*,
   2015 WL 1505693 (D. Mass. Mar. 31, 2015) ....................................................................... 16

*Department of the Treasury of the State of New Jersey v. Cliffs Natural Resources, Inc.*,
   2015 WL 6870110 (N.D. Ohio Nov. 6, 2015) ................................................................. 19, 20

*Globe-X Mgmt., Ltd. v. Cinar Corp.*,
   2004 WL 2399734 (E.D. Pa. Oct. 3, 2004) ........................................................................... 16

*Halford v. AtriCure, Inc.*,
   2010 WL 8973625 (S.D. Ohio Mar. 29, 2010) ...................................................................... 15

*Hatamian v. Advanced Micro Devices, Inc.*,
   2015 WL 511175 (N.D. Cal. Feb. 6, 2015) ...................................................................... 16, 18

*In re Able Labs. Sec. Litig.*,
   2008 WL 1967509 (D.N.J. Mar. 24, 2008) ........................................................................... 22

*In re AOL Time Warner, Inc. Sec. Litig.*,
   2006 WL 1997704 (S.D.N.Y. July 13, 2006) ........................................................................ 16

*In re Applied Micro Cirs. Corp. Sec. Litig.*,
2002 WL 34716875 (S.D. Cal. Oct. 4, 2002) ................................................................ 15

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
851 F. Supp. 2d 1299 (S.D. Fla. 2011) ......................................................................... 17

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)......................................................................................... 15

*In re Campbell Soup Co. Sec. Litig.*,
145 F. Supp. 2d 574 (D.N.J. 2001) ................................................................................. 9

*In re Cell Therapeutics, Inc.*,
2010 WL 4791808 (W.D. Wash. Nov. 18, 2010) ........................................................ 17

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
2018 WL 3772675 (D.N.J. Aug. 8, 2018) .............................................................. *passim*

*In re Enzymotec Sec. Litig.*,
2015 WL 8784065 (D.N.J. Dec. 15, 2015) ..................................................................... 8

*In re EVCI Colls. Holding Corp. Sec. Litig.*,
469 F. Supp. 2d 88 (S.D.N.Y. 2006)............................................................................. 17

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
2018 WL 4252537 (E.D. Pa. Sept. 5, 2018) ................................................................. 15

*In re Millennial Media, Inc. Securities Litigation*,
2015 WL 3443918 (S.D.N.Y. May 29, 2015) .............................................................. 20

*In re Par Pharm. Sec. Litig.*,
2009 WL 3234273 (D.N.J. Sept. 30, 2009) ............................................................. 15, 17

*In re Proquest Sec. Litig.*,
527 F. Supp. 2d 728 (E.D. Mich. 2007)........................................................................ 17

*In re Rayonier Inc. Sec. Litig.*,
2016 WL 3022149 (M.D. Fla. May 20, 2016)............................................................... 16

*In re Symbol Techs., Inc. Sec. Litig.*,
2017 WL 1233842, n.8 (E.D.N.Y. Mar. 31, 2017)....................................................... 20

*In re Toronto-Dominion Bank Sec. Litig.*,
2018 WL 6381882 (D.N.J. Dec. 6, 2018) ..................................................................... 22

*Institutional Invs. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)....................................................................................... 9, 13

*Iron Workers Loc. 580 Joint Funds v. NVIDIA Corp.*,
    522 F. Supp. 3d 660 (N.D. Cal. 2021) ............................................................................ 19

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011).................................................................................................... 7-8, 9

*McGuire v. Dendreon Corp.*,
    2008 WL 5130042 (W.D. Wash. Dec. 5, 2008) ............................................................ 13, 21

*Nakkhumpun v. Taylor*,
    782 F.3d 1142 (10th Cir. 2015) ..................................................................................... 17

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010) ................................................................................. 14

*Nelson v. Stahl*,
    173 F. Supp. 2d 153 (S.D.N.Y. 2001)............................................................................. 16

*Odeh v. Immunomedics, Inc.*,
    2020 WL 4381924 (D.N.J. July 31, 2020)........................................................................ 12

*Oklahoma Police Pension Fund & Ret. Sys. v. Teligent, Inc.*,
    2020 WL 3268531 (S.D.N.Y. June 17, 2020) ................................................................... 13

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
    142 F. Supp. 2d 589 (D.N.J. 2001) ................................................................................. 22

*Phillips v. Cty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)........................................................................................... 8

*Robinson v. Philip Morris USA, Inc.*,
    2019 WL 1787637 (E.D. Pa. Apr. 23, 2019) .................................................................... 15

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014)....................................................................................... 8, 15

*Steamfitters Local 499 Pension Fund v. Alter*,
    2011 WL 4528385 (E.D. Pa. Sept. 30, 2011) ................................................................... 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)............................................................................................... 8, 9, 17

iv

*Union Asset Mgmt. Holding AG v. Sandisk LLC*,
    227 F. Supp. 3d 1098 (N.D. Cal. 2017) ............................................................ 16, 18

*Winer Fam. Tr. v. Queen*,
    2004 WL 350181 (E.D. Pa. Feb. 6, 2004) ................................................................ 16

*Wu v. GSX Techedu Inc.*,
    2023 WL 2207422 (D.N.J. Feb. 24, 2023) .............................................................. 14

*Yanek v. Staar Surgical Co.*,
    388 F. Supp. 2d 1110 (C.D. Cal. 2005) ............................................................ 13, 21

STATUTES

15 U.S.C. § 78u-4(b) ............................................................................................................. 8

15 U.S.C. § 78u–4(b)(3)(B) ............................................................................................... 16

RULES

Fed. R. Civ. P. 9(b) ............................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 15

Fed. R. Civ. P. 12(d) ......................................................................................................... 15

Lead Plaintiff Kranthi Gorlamari ("Plaintiff") respectfully submits this opposition to Defendants'[1] motion to dismiss (ECF 42, the "Motion")[2] the Second Amended Class Action Complaint (ECF 40, the "SAC"). The Motion should be denied in its entirety.

## I.      INTRODUCTION

This securities fraud case involves a struggling drug company's pursuit of a new drug approval by the U.S. Food and Drug Administration ("FDA"). During the Class Period (May 19, 2021-May 24, 2022), Defendants misled investors as to the genuine risks that Verrica's New Drug Application ("NDA") for its flagship drug candidate, VP-102, would not be approved by the FDA. They did this by failing to disclose the results of two FDA-conducted inspections in May 2021 and February 2022 of the Company's bulk solution contract manufacturing organization for VP-102—Sterling Pharmaceuticals Services, LLC ("Sterling").

The severity of the conditions at Sterling compelled the FDA to issue a Form 483 at the conclusion of its inspections, meaning that Sterling was out of compliance with the FDA's Current Good Manufacturing Practice ("cGMP") regulations. As Defendants admitted, without curing these deficiencies, the chances of obtaining FDA approval were nil.

Despite knowing that the FDA's inspections at Sterling resulted in the issuance of Form 483s, Defendants repeatedly and voluntarily chose to speak to investors about Sterling's May 2021 inspection. For example, Defendant White, Sterling's CEO, assured investors that the manufacturing inspections were going "according to plan" after the FDA issued Sterling a Form

---

[1] Defendants are Verrica Pharmaceuticals, Inc. ("Verrica" or the "Company"), CEO Ted White ("White"), and CFO P. Terence Kohler Jr. ("Kohler").

[2] Defendants' accompanying memorandum of law (ECF 42-1) is cited as "Mot. __," citations to the exhibits attached to the Declaration of Zachary Sisko (ECF 42-2) are "Mot. Ex. __," and citations to the SAC are "¶__." Unless otherwise noted, alterations, citations, and quotations are omitted and emphasis is added.

1

483 in May 2021. In March and April 2022, Defendants continued to assure investors that the Sterling's quality issues were "satisfactor[ily]" or "successful[ly] resolved" and that the Company had hired FDA consultants to ensure Sterling was inspection ready, despite knowing that the FDA again issued Sterling a Form 483 after the February 2022 inspection. Defendant White likewise told investors in Spring 2022 that Verrica was continuing to work towards FDA approval, and confirmed to investors that they should feel pretty confident about FDA approval.

Defendants' failure to provide a true rendering of Sterling's inspections and the documented deficiencies meant that investors were unable to adequately assess whether Verrica could be subject to FDA action (such as withholding new drug approval). They were also unable to adequately assess the potential impact of any manufacturing-related problems on the Company's future earnings. Thus, investors were stunned when twice during the Class Period, first on September 20, 2021 and later on May 24, 2022, Verrica announced it had received a Complete Response Letter ("CRL") from the FDA due to deficiencies identified at Sterling during the May 2021 and February 2022 inspections, and the FDA would not approve the NDA while Sterling was out of cGMP compliance. The announcements caused Verrica's stock price to drop significantly.

Plaintiff has adequately alleged securities law violations and this case is ripe to move into discovery. Significantly, the Court, in its Order and accompanying Opinion (ECF 38-39, the "Order"), already held that Plaintiff sufficiently alleged falsity with respect to statements in May and June 2021 that concealed problems with the May 2021 Sterling inspection (Order at 12-16), and that scienter also existed on these claims (*id.* at 16-19). The Court also found falsity alleged with respect to certain statements made in Spring 2022 that contradicted the FDA's findings in February 2022 that quality problems at Sterling persisted (*id.* at 21-22), but found scienter lacking because Plaintiff's allegations, although plausible, were insufficiently detailed to qualify as a

2

"strong" inference that Defendants knew about the February 2022 Sterling inspection and its outcome. *Id.* at 22-23. The SAC squarely remedies that deficiency by adding detailed allegations that raise a sufficiently strong inference that Defendants did indeed know about the February 2022 inspection and its results.

Defendants' Motion should be expeditiously denied because, if nothing else, it highlights the need for this case to immediately proceed to discovery. Knowing that the SAC states claims against them, Defendants base their Motion solely on the factual assertions included in the affidavits of the two former Verrica employees (the "FE affidavits"), who were contacted during Plaintiff's investigation of the claims and whose statements, based on that investigation, are included in the SAC. By disguising their Motion as questioning the reliability of the allegations attributed to the former employees in the SAC, Defendants ask the Court to go beyond the allegations of the SAC, decide factual issues, and make credibility determinations in their favor— none of which is procedurally proper in deciding a motion to dismiss.

As a result, and because the Court has already sustained certain of Plaintiff's claims, and remedies the other claims in the SAC, the Motion should be denied in its entirety and this case should proceed to discovery.

## II.   PROCEDURAL STATUS

### A.   The Order Denying, In Part, Defendants' Motion To Dismiss

This action was initiated on June 6, 2022. Plaintiff filed his amended complaint on January 12, 2023, and defendants moved to dismiss. In the Order and accompanying Opinion denying, in part, defendants' motion to dismiss, the Court sustained Plaintiff's claim that Verrica and Defendant White misrepresented statements made in May and June 2021 regarding the FDA's inspection of Sterling, but held that Plaintiff failed to allege that Verrica's September 2021 statement was material and that Plaintiff needed to add particularity to their scienter allegations

during the post-September 2021 time period. The Court granted plaintiff leave to file a second amended complaint. ECF 38-39.

### B. The Second Amended Complaint

Plaintiff filed his SAC on January 26, 2024, removing falsity allegations for statements made in September-December 2021 and allegations against former defendant Davis. The SAC, however, also includes additional scienter allegations for Defendants' Spring 2022 statements.

## III. RELEVANT BACKGROUND FACTS AND NEW ALLEGATIONS IN THE SAC

### A. Background on Verrica And The Individual Defendants

Verrica is a small dermatological therapeutics company that develops medication for skin diseases. ¶¶2, 30. From its founding in 2013 through July 2023, Verrica had no products approved by the FDA for commercialization and had not yet generated product revenue. ¶31. As of September 30, 2023, Verrica had accumulated a net deficit of $205.8 million; it has funded its operations primarily through public offerings and securing debt. *Id.*

During the Class Period, and since the Company's inception, Verrica devoted substantially all its financial resources and efforts to the development of its lead product, VP-102, a drug-device combination of a topical solution administered through a single-use applicator for the treatment of molluscum, a contagious viral skin disease, and common warts. ¶¶2, 32, 35. Verrica readily admitted that its ability to survive remained dependent on VP-102's "successful development, regulatory approval and eventual commercialization[.]" ¶32.

Prior to the FDA's approval of VP-102 for the treatment of molluscum in July 2023, there were no products approved by the FDA for these diseases. ¶¶33, 37. Thus, VP-102 had the potential to be the first FDA-approved product to seize the over $1 billion U.S. market for molluscum, and Verrica estimated the market for common warts is just as large. ¶¶37-42.

Defendant White has been Verrica's CEO since 2017. During the Class Period, Defendant

4

White frequently spoke to investors and analysts by presenting at analyst hosted conferences and signed, *inter alia*, Verrica's 2021 Form 10-K and March 31, 2022 Form 10-Q. ¶¶25, 112, 118. Defendant Kohler has been Verrica's CFO since June 2021. Defendant Kohler signed, *inter alia*, Verrica's 2021 Form 10-K and March 31, 2022 Form 10-Q. ¶¶27, 112, 118.

**B.    Verrica's Troubled Path To FDA Approval Of VP-102**

In September 2019, Verrica first submitted an NDA to the FDA seeking approval of VP-102 for the treatment of molluscum. ¶61. Following receipt of a Complete Response Letter ("CRL")[3] from the FDA, Verrica again submitted its NDA in December 2020. ¶¶62, 64. As part of the FDA's review of an NDA, the FDA determines, among others, whether the proposed product is safe and effective for its intended use, and whether the product candidate is being manufactured in accordance with cGMP. ¶47; *see also* ¶48 (describing cGMP).

Verrica readily admitted to its investors that "[t]he FDA will not approve an application unless it determines that the manufacturing processes and facilities are in compliance with cGMP requirements[.]" ¶¶49, 102; *see also* ¶44 (similar). And Defendant White specifically told investors just prior to the start of the Class Period that the FDA planned to inspect two of its manufacturing facilities, including Sterling, as part of the FDA's pre-approval manufacturing inspection for Verrica's resubmitted NDA. ¶¶5, 67. Defendant White similarly assured investors that Verrica has done things to "mitigate," including mock inspections and contracting "with some outside consultancies that have ex-FDA inspectors" to "help[] us with these upcoming inspections and will be on-site when the FDA does do their inspections." ¶67.

From May 3 to 14, 2021, the FDA inspected the Sterling facility and, at the inspection's conclusion, issued a Form 483. ¶¶90, 98. A Form 483 is a document issued by the FDA at the

---

[3] A CRL indicates the NDA review is complete but will not be approved in its present form due to specific, FDA-identified conditions that must first be resolved before approval. ¶50.

5

conclusion of a facility's inspection notifying drug manufacturers of objectionable conditions and practices that render the facility out of compliance with cGMP. ¶53. The FDA documented serious and pervasive quality issues in the May 2021 Form 483 issued to Sterling, many of which repeated or expanded on deficiencies identified in an earlier Form 483 the FDA to Sterling. ¶¶53, 88-92.

On September 20, 2021, Verrica announced it had received a CRL from the FDA due to deficiencies the FDA identified at Sterling during its May 2021 inspection. ¶¶70-71, 123-124. Verrica explained the deficiencies were related to general quality issues at the facility, and not specifically to the manufacturing of VP-102. ¶70. On this news, the Company's share price fell $1.00, or 8.3%, to close at $11.03 per share on September 21, 2021. ¶¶72, 125.

On November 29, 2021, Verrica announced it had resubmitted its NDA. The press release explained that the resubmission was limited to the identified deficiencies in the September 2021 CRL and that the "resubmission addresses the successful resolution of inspection deficiencies identified at a contract manufacturing organization (CMO) in the CRL[.]" ¶77.

Recognizing the critical importance of any reinspection, Defendant White again assured investors that it had hired consultants and former FDA inspectors to do mock inspections and ensure that the Verrica's manufacturers were inspection ready, as well as that Verrica has "had very consistent and very productive communication with the FDA[.]" ¶106. Moreover, during an (unbeknownst to investors) inspection of Sterling in February 2022, Verrica sent five employees to St. Louis (near Sterling's facilities). These employees received daily updates from Sterling's CEO, which were then emailed to Verrica's executive team. ¶104. At the conclusion of the inspection, Sterling again received a Form 483 which documented repeat observations that "significant[ly] violat[ed]" cGMP. ¶¶94-97.

Although Defendants knew of and had the February 2022 Form 483 (¶105), they continued

to tout that the earlier Sterling inspection was successfully resolved. Defendant White also stated that Verrica was working towards, and encouraged investors to be optimistic about, a May 2022 FDA approval of VP-102. ¶¶112-119.

On May 24, 2022, Verrica announced receipt of a third CRL due to deficiencies identified during the February 2022 general reinspection of Sterling. ¶¶80, 94. In this May 2022 announcement, Verrica admitted that the September 2021 CRL made clear that successful resolution of the deficiencies at Sterling was "specifically required … for approval of [Verrica's] NDA," and it was not the FDA, but Verrica that had concluded the problems at Sterling had been resolved to the FDA's satisfaction. ¶80. The May announcement further informed investors that Sterling had been placed on "OAI status" (meaning regulatory and/or administrative actions will be recommended (¶55)), which prevented the FDA from approving the NDA. ¶80. Tellingly, the announcement concluded with the Company stating it was in search of an alternative manufacturer for its bulk solution. *Id.* On this news, Verrica's shares fell $3.55, or 63.8%, on May 25, 2022. ¶¶81, 128.

Following a technology transfer of Verrica's bulk solution manufacturing to a different manufacturer, Verrica resubmitted its NDA, which was approved in July 2023. The Company began marketing VP-102 under the brand name YCANTH. ¶¶84-86. Less than five months later, the FDA approved the NDA of Verrica's closest competitor. ¶38, n.4.

## IV.    APPLICABLE LEGAL STANDARDS DISFAVOR DEFENDANTS' MOTION

The SAC states claims for securities fraud under §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"): (1) Defendants made materially false and misleading statements and omitted material information regarding the two FDA inspections of Sterling; (2) they knew or recklessly disregarded that the misrepresented or omitted information risked misleading investors; and  (3) Verrica's  share  price  declined  when  corrective  information  was  revealed. *Matrixx*

*Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).[4] These claims are subject to the pleading standards of the Private Securities Litigation Reform Act ("PSLRA") and Fed. R. Civ. P. 9(b). 15 U.S.C. § 78u-4(b).

The PSLRA does not require a plaintiff to plead *evidence* of claims, and, on a motion to dismiss, courts must accept all facts alleged as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Allegations must be sustained if they contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Third Circuit has explained that, even under *Twombly*, stating a claim "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).[5]

"When deciding a motion to dismiss, 'courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.'" Order at 10 (quoting *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). Matters of public record "include prior judicial proceedings, filings with the SEC, and other documents deemed to be public records by law." *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675, at *13 (D.N.J. Aug. 8, 2018).

---

[4] Defendants challenge only scienter, thereby waiving the right to challenge all other §10(b) elements.

[5] *See also In re Enzymotec Sec. Litig.*, 2015 WL 8784065, at *6 (D.N.J. Dec. 15, 2015) (following *Twombly* and *Iqbal*, courts should "assume the[] veracity [of well-pleaded factual allegations] and then determine whether they plausibly give rise to an entitlement for relief").

## V.    THE SAC ALLEGES ACTIONABLE, FALSE OR MISLEADING STATEMENTS MADE WITH SCIENTER

The Court has already held that Plaintiff sufficiently alleged falsity, materiality, and scienter with respect to the alleged May-June 2021 statements about the May 2021 Sterling inspection (Order at 12-19), and falsity and materiality with respect to the Spring 2022 statements in the Company's public SEC filings and during an analyst conference (Order at 21-22). Defendants only challenge Plaintiff's scienter allegations in their Motion.

Scienter is sufficiently alleged when the allegations give rise to a strong inference of "either reckless or conscious behavior." *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 276, 280 (3d Cir. 2009). Recklessness encompasses "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* at 267, n.42. Conscious behavior exists when a plaintiff "allege[s] defendants' knowledge of facts or access to information contradicting their public statements." *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001).

An inference of scienter is "strong" if it is "cogent and compelling" and "*at least as likely as* any plausible opposing [non-culpable] inference." *Tellabs*, 551 U.S. at 324, 328 (emphasis in original); *Matrixx*, 563 U.S. at 48-49. The inference of scienter need not be *more* likely than any non-culpable inference; in the face of equally compelling inferences, a tie goes to the plaintiff. *Tellabs*, 551 U.S. at 324 ("[t]he inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'"). On Defendants' motion, the key inquiry "is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 310.

9

**A.     False and Misleading Statements And Omissions About The May 2021 Sterling Inspection**

This Court has already held that Plaintiff plausibly alleged that the May and June 2021 statements (¶¶107, 109, 110) "falsely concealed problems with the May 2021 Sterling inspection that could delay the approval of VP-102" and that these omissions were material. Order at 12-16.

The Court has also concluded that Plaintiff has sufficiently alleged a strong inference of scienter as to the May and June 2021 statements:

> Verrica's alleged relationship with Sterling and White's role within Verrica provide a compelling reason to believe that White was aware of cGMP problems when he spoke, and White's alleged evasive phrasing, both in May 2021 and when problems occurred in September 2021, suggests an awareness that his statements were misleading. Based on these facts, I conclude that Plaintiff has raised the necessary "strong" inference of scienter.

Order at 19. Nothing has changed in the SAC to upset these holdings.

**B.     False and Misleading Statements And Omissions Following The February 2022 Sterling Inspection**

After the FDA again inspected Sterling in February 2022, and again issued a Form 483 which documented repeat observations that "significant[ly] violat[ed]" cGMP (¶¶94-97), Defendants continued to omit these critical contrary facts from investors. Despite the February 2022 inspection and its results, Defendants continued to state that Sterling's quality issues had been "satisfactory[ily]" or "successful[ly]" resolved, that Verrica was "continu[ing] to work with the FDA toward an approval of YCANTH on or before our … May 24 PDUFA date," that the Company had hired FDA consultants to ensure Verrica were "inspection ready," and that investors should feel pretty confident about a May 2022 FDA approval. ¶¶112-119.

Defendants do not challenge the alleged misleading statements and omissions made in Spring 2022. Indeed, this Court has already held that three of these statements (¶¶112, 116, 118) were plausibly false. Order at 21, 22. And Defendant White's assurances in March and April 2022

10

(¶¶114, 115) "misleadingly concealed that the inspection had already occurred and [c]ould prevent the timely approval of VP-102" and "suggest that White had not received news inconsistent with approval in late May, which would contradict the FDA's findings in February 2022 that quality problems persisted." Order at 14, 22.

The Court previously found that scienter for the alleged statements made following Sterling's February 2022 inspection and resulting Form 483 "hinges on whether Defendants knew or recklessly disregarded that the FDA's February 2022 inspection continued to show Sterling to be out of cGMP compliance. That, it turn, depends on whether Defendants **_knew about the February 2022 inspection and its outcome_**." Order at 22. The Court commented that Plaintiff's allegations in the amended complaint "might satisfy the plausibility standard, [but that] they are insufficiently detailed to qualify as 'strong.'" _Id._ at 23. The Court then suggested allegations that would lend support to a sufficiently strong inference of scienter. _Id._

While Defendants did not make public statements suggesting their awareness of Sterling's February 2022 inspection,[6] the SAC adds the other suggested allegations adding the necessary details to raise a strong inference of scienter for Defendants' Spring 2022 statements:

**Verrica's preparations for an FDA inspection.** Defendant White stated that Verrica had prepared for, and that its manufacturers were ready for, any manufacturer inspection that would ensue following Verrica's November 2021 resubmission of the NDA, by hiring "Jeff Yuen & Associates who is a former FDA inspector, as well as Greenleaf" to perform mock inspections of _all_ of Verrica's manufacturers – which would include Sterling – and to ensure these manufacturers were inspection ready. ¶106. Defendant White also assured investors that Verrica has was

---

[6] This is not surprising given Defendant White and Verrica's previous concealment of the results of the May 2021 inspection (_see id._ at 17-18), and investors' likely response and follow up had they known that a subsequent Sterling inspection had occurred.

11

consistently communicating with the FDA regarding VP-102's approval (*id.*), which would necessarily include communications regarding Verrica's manufacturers' compliance with cGMP (¶102). Additionally, when the FDA did inspect Sterling in February 2022, Verrica sent five of its employees out for the inspection who received daily updates from Sterling's CEO. ¶105.

**Details about Defendants' knowledge of the February 2022 Sterling inspection and the nature of communications between Verrica and Sterling in February 2022.** The SAC includes allegations from a previously unidentified former employee (FE2), who provides specific details regarding the FDA's February 2022 Sterling inspection. ¶¶104-105. Verrica sent five employees, including FE2, to St. Louis[7] when the FDA inspected Sterling in February 2022. FE2 recalled that Sterling's CEO provided daily updates to these five Verrica employees, and that FE2 would then convey these updates in a daily email to Verrica's executive team, which included Defendants White and Kohler. FE2 further recalled that Sterling's CEO also informed the five Verrica employees that Sterling received a Form 483 at the end of the two-week FDA inspection. FE2 confirmed that Verrica's executive team were informed of the Form 483,[8] that Verrica received a copy of the Form 483, and that "Defendant White really 'grilled' Sterling about the representations Sterling made that the deficiencies were being addressed." *Id.*

These newly added allegations, considered along with the previously alleged allegations, when considered collectively, give rise to a strong inference of scienter as to each of the Defendants. *Odeh v. Immunomedics, Inc.*, 2020 WL 4381924, at *7 (D.N.J. July 31, 2020) (scienter alleged based on omission of presently known facts, including receipt of Form 483);

---

[7] St. Louis was near Sterling's facilities East Carondelet, IL and Dupo, IL. ¶¶14, 70.

[8] Allegations that Defendant Kohler had contemporaneous knowledge of the February 2022 Sterling inspection and that it resulted in a Form 483 are sufficient to establish his scienter. *See* Order at 22, 25.

*Oklahoma Police Pension Fund & Ret. Sys. v. Teligent, Inc.*, 2020 WL 3268531, at \*19 (S.D.N.Y. June 17, 2020) (allegations that CEO knew of Form 483s sufficient to allege scienter); *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1131-32 (C.D. Cal. 2005) (scienter shown despite what defendants "may have believed or hoped that the [i]ssues raised in the Form 483 would not pose a serious problem to FDA approval"); *McGuire v. Dendreon Corp.*, 2008 WL 5130042, at \*7 (W.D. Wash. Dec. 5, 2008) (similar).

Moreover, the SAC's allegations support a strong inference that both Defendants White and Kohler knew or recklessly disregarded that their statements in the SEC filings and Defendant White's statements during analyst conferences were false and/or misleading: (1) they were the CEO and CFO, VP-102's success was critical to Verrica's business (*e.g.*, ¶32), and Sterling's cGMP compliance was important to the success of VP-102 (¶¶44, 49, 80, 102, 103, 105); (2) the FDA warned Verrica in the September 2021 CRL that Sterling's inspectional issues must be resolved to the FDA's satisfaction in order to approve the NDA (¶¶80, 103) and Verrica admitted that cGMP compliance was necessary for approval (¶¶49, 102); and (3) Defendants White and Kohler knew about Sterling's February 2022 inspection and the resulting Form 483 (¶¶104-106).

> **C.    The Former Employee Allegations Are Reliable Under The Third Circuit Factors And Defendants' Claims Otherwise Are Based On Improperly Injecting The Record With Extraneous Fact Issues**

Recognizing that the SAC states securities fraud claims against them, Defendants' sole challenge to the SAC is to apparently question the reliability of the former employee allegations. The Third Circuit has articulated that in assessing the strength of allegations from these former employees, the Court "should evaluate the 'detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia.'" Order at 17 (quoting *Avaya*, 564 F.3d at 263).

In evaluating the allegations for these factors, the Court determined that the allegations from FE1 are "entitled to some weight." Order at 17.[9] As to FE2, the SAC describes FE2's basis of knowledge in the required degree of detail, including FE2's position and employment dates, that FE2 reported to Defendant White, that FE2 was sent to St. Louis when the FDA did inspect Sterling in February 2022, that Sterling's CEO provided to FE2 and other Verrica employees daily updates during the February 2022 inspection which FE2 then conveyed to Defendants White and Kohler in a daily email, that Sterling's CEO informed FE2 that Sterling had received a Form 483 upon conclusion of the inspection, and the Defendants knew of and had a copy of the Form 483. ¶¶104-105 & n.11. This information contains enough detail to credit the allegations from FE2.

Rather than actually point out why the former employee allegations are unreliable under the Third Circuit's articulated factors,[10] Defendants attempt to disguise questions of credibility and factual disputes as reliability concerns, and ask the Court to accept as true Defendants' characterization of untested extrinsic evidence (the FE affidavits). Mot. at 1-3, 10-16 & Mot. Exs. 1 & 2. For multiple reasons articulated below, this is procedurally improper and this Court should

---

[9] The allegation that FE1 stated that Defendant White "was well aware of the Form 483" is corroborated by his own statements suggesting that he was aware of the Sterling inspection. Order at 16-17.

[10] Defendants' cited authority simply shows that in undertaking the reliability analysis, some courts in this Circuit have, when examining the allegations in the complaint, determined that the witness allegations were unreliable. *See Wu v. GSX Techedu Inc.*, 2023 WL 2207422, *6-*8 (D.N.J. Feb. 24, 2023) (witnesses unreliable because, *inter alia*, the complaint did not provide facts to explain how the witnesses would have learned or known of the information and that the witnesses' statements contradicted other allegations); *Bartesch v. Cook*, 941 F. Supp. 2d 501, 507-08 (D. Del. 2013) (complaint failed to provide a sufficient description of the witnesses' employment and conceded that the witness allegations were not based on personal knowledge); *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 540-47, 553-56 (D.N.J. 2010) (examining allegations from 12 witnesses in complaint and finding that the allegations failed to set the bases from which the witnesses obtained the information for their statements, including that the witnesses were not employed in a position to know the relevant information and/or were not involved in the reporting or calculating of the alleged misstated metrics).

decline to consider the FE affidavits and the arguments relying on them when deciding Defendants' Motion.

### 1. The FE Affidavits May Not Be Considered On A Motion To Dismiss

Although the PSLRA requires plaintiffs to plead their claims with particularity, it does not alter certain basic pleading standards. As explained in more detail in Plaintiff's concurrently-filed brief in support of Plaintiff's Motion to Strike the FE affidavits, on a motion to dismiss, "matters extraneous to the pleadings" may not be considered. *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997); *see also* FED. R. CIV. P. 12(d). Affidavits such as the ones Defendants submit in support of their Motion "clearly may not be considered at this stage." *Schmidt*, 770 F.3d at 249, 250.

Tellingly, Defendants fail to cite a single case from the Third Circuit that has ever permitted a defendant to submit a witness affidavit or declaration in support of a Rule 12(b)(6) motion to dismiss, nor have Defendants requested that the Court treat their motion as one for summary judgment. This is because, as this Court has recognized, a defendant's proffered "contrary affidavit is not properly considered at this juncture[,]" and converting Defendants' Rule 12(b)(6) motion "into a motion for summary judgment in order to consider [the affidavits] … without notice and without any discovery is improper." *Robinson v. Philip Morris USA, Inc.*, 2019 WL 1787637, at *7 (E.D. Pa. Apr. 23, 2019) (Goldberg, J) (declining to consider affidavit).

When faced with similar witness recantations at the pleading stage, courts have routinely declined to consider them. *See, e.g.*, *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2018 WL 4252537, at *4, *5 (E.D. Pa. Sept. 5, 2018) (disregarding "the outside-the-pleading [confidential witness] declaration" attached by defendants); *In re Par Pharm. Sec. Litig.*, 2009 WL 3234273, at *12 (D.N.J. Sept. 30, 2009) (striking confidential witness declaration); *Halford v. AtriCure, Inc.*, 2010 WL 8973625, at *3-*4 (S.D. Ohio Mar. 29, 2010) (same); *In re Applied Micro Cirs. Corp.*

15

*Sec. Litig.*, 2002 WL 34716875, at \*2-\*3 (S.D. Cal. Oct. 4, 2002) (same); *Union Asset Mgmt.*

*Holding AG v. Sandisk LLC*, 227 F. Supp. 3d 1098, 1100 (N.D. Cal. 2017) ("putting a recantation

in front of the district judge in the hope it will influence the decision on dismissal" was a "ruse"

and improper); *In re Rayonier Inc. Sec. Litig.*, 2016 WL 3022149, at \*1 (M.D. Fla. May 20, 2016)

(denying motion to dismiss and declining to consider recanting witness declaration); *Corban v.*

*Sarepta Therapeutics, Inc.*, 2015 WL 1505693, at \*3 n.2 (D. Mass. Mar. 31, 2015) ("the court

considers the allegations made in the complaint and not [confidential witness's] assertions in her

declaration"); *Nelson v. Stahl*, 173 F. Supp. 2d 153, 159 n.4 (S.D.N.Y. 2001) (declining to consider

affidavits as "[t]hey are indicative of disputed issues of fact, resolution of which on the instant

motions would be inappropriate.").[11]

### 2.    Defendants' Introduction Of The FE Affidavits Violates The PSLRA Discovery Stay

In all actions arising under the PSLRA, "all discovery and other proceedings shall be stayed

during the pendency of any motion to dismiss." 15 U.S.C. § 78u–4(b)(3)(B). The stay continues

until "the court has sustained the legal sufficiency of the complaint[,]" *Winer Fam. Tr. v. Queen*,

2004 WL 350181, at \*1 (E.D. Pa. Feb. 6, 2004), and applies to defendants as well as plaintiffs. *In*

*re AOL Time Warner, Inc. Sec. Litig.*, 2006 WL 1997704, at \*2 (S.D.N.Y. July 13, 2006); *Globe-*

*X Mgmt., Ltd. v. Cinar Corp.*, 2004 WL 2399734 (E.D. Pa. Oct. 3, 2004) (reviewing defendant's

motion to lift PSLRA discovery stay).

Here, Defendants side-stepped the PSLRA without prior Court permission and obtained

---

[11] *Cf Cognizant*, 2018 WL 3772675, at \*10-\*13 (refusing to strike witness allegations in complaint and crediting witness allegations as reliable); *Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL 511175, at \*3 (N.D. Cal. Feb. 6, 2015) (appropriate time to explore witnesses' recantations was during discovery, which "will provide the parties an opportunity to explore these questions further, specifically in depositions at which both parties—and a court reporter—may be present").

16

discovery before the motion to dismiss was decided. Courts in similar situations have consistently rejected attempts to contradict confidential witness allegations at the motion to dismiss stage— finding it improper to engage in pre-motion to dismiss discovery. *See, e.g.*, *Par Pharm.*, 2009 WL 3234273, at \*11-\*12 (striking witness affidavit and expressing concern with defendants' tactics in contacting a witness despite PSLRA discovery stay); *In re Proquest Sec. Litig.*, 527 F. Supp. 2d 728, 740 (E.D. Mich. 2007) (defendant, "in seeking out and obtaining a declaration from [confidential witness], engaged in discovery which was wholly improper"); *Cognizant*, 2018 WL 3772675, at \*10-\*13 (denying defendants' request to lift PSLRA stay to depose witness about concerns of the reliability of allegations attributed to that witness); *In re Cell Therapeutics, Inc.*, 2010 WL 4791808, at \*1 (W.D. Wash. Nov. 18, 2010) (similar).

### 3.   The FE Affidavits Cannot Be Accepted As True, And At Most Raise Questions Of Credibility For The Trier Of Fact

By disguising their arguments as one of reliability, Defendants ask the court to accept as true the untested assertions in the FE affidavits. But the assertions in the FE affidavits do not prove that what the FEs told Plaintiff's investigator was untrue or inaccurate—at most the affidavits raise disputed credibility and fact issues that cannot be resolved in Defendants' favor on a motion to dismiss. *Tellabs*, 551 U.S. at 322. The Supreme Court has made clear that in securities actions, it is "within the jury's authority to assess the credibility of witnesses." *Id.* at 328; *see also, e.g.*, *In re EVCI Colls. Holding Corp. Sec. Litig.*, 469 F. Supp. 2d 88, 97 (S.D.N.Y. 2006) ("Defendants impugn [the confidential witnesses'] credibility …, but at the pleading stage the issue is not whether these confidential witnesses are telling the truth. It is whether there is a probability that they know what they are talking about."); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 851 F. Supp. 2d 1299, 1312 (S.D. Fla. 2011) ("Whether the confidential witnesses initially made the statements attributed to them in the complaints is essentially a credibility question"); *Nakkhumpun v. Taylor*,

17

782 F.3d 1142, 1152 (10th Cir. 2015) ("a court cannot dismiss a complaint by assessing the credibility of an informant"); *Hatamian*, 2015 WL 511175, at *2 ("[t]he most that can be said about defendants' proffer is that the [recanting] declarations submitted raise questions requiring further development and analysis …. [S]uch questions are more appropriately raised in the context of summary judgment after the benefit of full discovery, or for consideration by a jury").

> As one court noted when similarly faced with a recanting witness declaration:
>
> It would clearly be inappropriate for the Court to simply treat the declaration as true and then use it as a basis for preventing the plaintiffs from [proceeding with their case]. CW5's declaration testimony might be true. But it might be false, because the witness feels intimidated by the defendants. Or it might be partially true and partially false. For example, CW5 might, after being approached by [the defendant company], have become concerned that he overstated his knowledge to the plaintiffs' investigator, and he might now be overcompensating by recanting more of the allegations than he should.

*Sandisk*, 227 F. Supp. 3d at 1099; *see also City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 952 F. Supp. 2d 633, 636-37 (S.D.N.Y. 2013) (describing the "competing pressures this process had placed on the confidential witnesses and the impact such pressures had had on their ability to tell the truth").

These competing pressures are seemingly present here. While the information provided in the SAC attributed to the FEs were derived from statements made by them freely, it seems that, despite the FE affidavits stating otherwise, Defendants and/or their representatives were in a position to exert pressure. The FE affidavits also raise many factual disputes as to the nature, details, and substance of their conversations with Plaintiff's investigators, and appear to have been drafted principally by Defendants' attorneys with argument and analysis therein (s*ee, e.g.*, Mot. Ex. 2 at ¶13 ("omit the important context"), ¶16 ("these statements are presented in a misleading manner and omitted critical context")).

Simply put, "there plainly are factual disputes concerning whether [the FEs] provided some

18

of the information attributed to [them] and the reasons for [the FEs'] disavowals" and "clarifying" explanations. *Iron Workers Loc. 580 Joint Funds v. NVIDIA Corp.*, 522 F. Supp. 3d 660, 672 (N.D. Cal. 2021), *aff'd in part, rev'd in par and remanded sub nom. on other grounds E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918 (9th Cir. 2023) (rejecting defendants' position that recanting witness declarations may be considered at motion to dismiss stage "for the limited purpose of assessing reliability of CW allegations").

Defendants' cited case, *Department of the Treasury of the State of New Jersey v. Cliffs Natural Resources, Inc.*, 2015 WL 6870110 (N.D. Ohio Nov. 6, 2015), does not hold differently. There, the court declined to strike witness allegations in a complaint when defendants submitted declarations from four recanting witnesses, holding that "the issues of fact and credibility raised by Defendants' witness declarations cannot be determined at the pleading stage" and thereafter denied Defendants' motion to dismiss. *Id.* at *4. Two of Defendants' other cited cases are inapposite. In both *Belmont Holdings Corporation v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210 (N.D. Ga. 2012) and *City of Livonia Employees' Retirement System v. Boeing Co.*, 711 F.3d 754 (7th Cir. 2013), it was discovered – *after* the PSLRA discovery stay had been lifted and merits discovery had proceeded – that the witnesses could not have had the knowledge attributed to them because, in both cases, the witness had not actually worked at the defendant company during the relevant time frame. *Belmont Holdings*, 896 F. Supp. 2d at 1224-25;[12] *City of Livonia*, 711 F.3d at 760. Defendants cannot raise similar concerns here.

---

[12] The court in *Belmont Holdings* further clarified that its decision was not based on a witness recantation, that the witness's credibility was not at issue, and that there were no disputed facts regarding the witness's lack of personal knowledge. Rather, it was clear that the witness did not have knowledge after he stopped working for the defendant company, and it was this evidence which prompted the court to reconsider its previous denial of the motion to dismiss. *Belmont Holdings*, 896 F. Supp. 2d at 1223-25, 1227.

And while Defendants repeatedly use a soundbite from *In re Millennial Media, Inc. Securities Litigation*, 2015 WL 3443918 (S.D.N.Y. May 29, 2015)[13] to criticize Plaintiff's counsel for their supposed failure to confirm with the former employees the accuracy of the statements attributed to them in the SAC, Defendants can only point to a one-sided affidavit in support of this supposition.

### 4.    The FE Affidavits, Even If Considered, Do Not Fatally Undermine The Otherwise Strong Inference Of Scienter

Even if the Court considered the FE affidavits – which it should not – the statements therein do not fatally undermine the allegations of the SAC.

First, even without the allegation from FE1 that Defendant White "was well aware of the receipt of the Form 483" (¶101) – the SAC still pleads a strong inference that Defendant White was aware that Sterling was not in cGMP compliance when he spoke about the Sterling inspection in May-June 2021. Order at 16-17, 19, 25-26 (finding that the core operations inference and White's other discussions of the May 2021 Sterling inspection suggest his awareness of it); *see also* ¶¶30-32, 67-69, 98, 99, 102, 107, 109-110 (alleging the same in the SAC). In addition, the Court found that Defendant White and Verrica's evasive phrasing in discussing the May 2021 Sterling inspection (¶¶68, 71, 107) "suggested an awareness that his statements were misleading" and also contributed to the necessary strong inference of scienter. Order at 17-18, 19, 25-26. None

---

[13] The *Millennial Media* holding is not based on any controlling authority and goes beyond the contours of the cases it relied upon—the court itself acknowledged that it was "unaware of any cases or ethics canon" supporting the suggested "best practices" for confidential witness allegations, and that its preference was "not one of law." 2015 WL 3443918 at *13-*14. Courts have routinely rejected *Millennial Media*, finding "that the district court's pronouncements are *dicta*, not followed by at least one other court in that district, have no precedential effect on this Court, and relate only to the facts of that case." *Cliffs Nat. Res.*, 2015 WL 6870110, at *4, n.5; *see also Cognizant*, 2018 WL 3772675, at *12 (finding *Millennial Media* unpersuasive); *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *12, n.8 (E.D.N.Y. Mar. 31, 2017) (declining to apply *Millennial Media* and noting it is "of questionable precedential value and, in any event, are entirely dependent on the facts of that case").

of these allegations are affected by the statements in FE1's affidavit.

Second, the SAC allegations attributed to FE2 are not contradicted or undermined by his affidavit. Mot. Ex. 2. Instead, Defendants attempt to add supposed "critical context" through this affidavit about the substance of Verrica's communications with Sterling during and after the February 2022 inspection they claim are missing,[14] which according to Defendants "eviscerates" any inference of scienter. Mot. at 13-16; Mot. Ex. 2 at ¶11.

Putting aside the factual question as to what was actually conveyed by FE2 to Plaintiff's investigator about the substance of Sterling's communications with Verrica, Defendants do not explain how this additional context "eviscerates" an inference of scienter. Nor could they—the crux of Plaintiff's allegations are that in the Spring of 2022, Defendants continued to omit from investors that the February 2022 inspection of Sterling took place and that it resulted in another Form 483. ¶¶113, 117, 119; Sec. V.B, *supra*.

Whatever Defendants may have been told by Sterling as to how the inspection was going as it was happening, it does not change that at the end of the inspection, the FDA issued another Form 483 that documented similar and repeated inspectional deficiencies – deficiencies that were the reason for the Company's very recent CRL. ¶¶70-72, 94-97. And even if Sterling told Verrica that the issues would be resolved and would not impact the Company's chances of approval for VP-102, it was not Sterling who would make that call. Nor were investors able to evaluate this very material risk for themselves. *Yanek*, 388 F. Supp. 2d at 1131-32 (scienter shown despite what defendants "may have believed or hoped that the [i]ssues raised in the Form 483 would not pose a serious problem to FDA approval"); *McGuire*, 2008 WL 5130042, at *7 (omission of Form 483

---

[14] The SAC does include allegations attributed to FE2 about the substance of these conversations, in particular, that FE2 recalled that "Defendant White really 'grilled' Sterling about the representations Sterling made that the deficiencies were being addressed." ¶106.

21

probative of "deliberate recklessness" despite defendants' proffered inference that "their belief (and the reality) that the objections were simply not that serious and their sincere and reasonable belief that the 483 problems could easily be remedied in time to gain approval of their drug").

## VI.    THE AC ADEQUATELY ALLEGES CONTROL PERSON LIABILITY

To state a claim under §20(a) of the Exchange Act, a plaintiff must allege (1) an underlying violation of §10(b), and (2) that the defendants controlled the person or entity that committed the underlying violation. *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 142 F. Supp. 2d 589, 623 (D.N.J. 2001). The Third Circuit has declined to resolve the divide among district courts on whether there is also a requirement to plead "culpable participation." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 485 n.20 (3d Cir. 2013) (examining culpable participation at summary judgment). "[C]ontrol person claims need not be pleaded with particularity so long as the underlying Section 10(b) violation is properly pled." *In re Toronto-Dominion Bank Sec. Litig.*, 2018 WL 6381882, at *20 (D.N.J. Dec. 6, 2018).

As discussed above, the SAC alleges a primary violation of §10(b). And, for pleading purposes, an individual defendant's position as a high-ranking officer is enough to allege control. *Cognizant*, 2018 WL 3772675, at *35; *Toronto-Dominion Bank*, 2018 WL 6381882, at *21. The Individual Defendants were Verrica's CEO and CFO and signed one or more public filings during the Class Period, thereby "accept[ing] responsibility for [its] contents." *Steamfitters Local 499 Pension Fund v. Alter*, 2011 WL 4528385, at *9 (E.D. Pa. Sept. 30, 2011). This places the Individual Defendants within the meaning of "controlling persons" under §20(a). *In re Able Labs. Sec. Litig.*, 2008 WL 1967509, at *28 (D.N.J. Mar. 24, 2008).

Assuming that culpable participation is required at the pleading stage, because the SAC sufficiently pleads scienter as to Defendant White and Kohler, so too has it pled culpable participation. *Cognizant*, 2018 WL 3772675, at *35 (a finding of scienter supports a finding of

22

culpable participation); Order at 26 (allegations that supported strong inference of scienter supported finding of culpable participation for Defendant White).

## VII.   CONCLUSION

The Court should deny Defendants' Motion in its entirety and this case should proceed to discovery.

Dated: April 8, 2024

By: */s/ Lee Albert*

**GLANCY PRONGAY & MURRAY LLP**
Lee Albert (PA ID# 046852)
230 Park Avenue, Suite 348
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lalbert@glancylaw.com

Leanne H. Solish (admitted *pro hac vice*)
Chase M. Stern (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz (*Pro Hac* to be filed)
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Lead Plaintiff*

23

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2024, I electronically filed a true and correct copy the foregoing document with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

*/s/ Lee Albert*
Lee Albert