**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| KRANTHI GORLAMARI, individually and on behalf of all other similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>VERRICA PHARMACEUTICALS, INC. and TED WHITE,<br><br>        Defendants. | Civil Action No. 2:22-cv-02226-MSG |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

TABLE OF ABBREVIATIONS ............................................................................................. iv

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 2

    I.     Verrica and Mr. White ............................................................................................ 2

    II.    Verrica Pursues FDA Approval for VP-102 as a Treatment for Molluscum ............... 2

    III.   Verrica Warns Investors That Its NDA for VP-102 May Never Obtain Regulatory
          Approval and That FDA Approval of Third Party CMOs Was Required ..................... 3

    IV.   The September 2021 CRL for the December 2020 NDA ........................................... 3

    V.    In November 2021, Following Notice of the FDA's VAI Classification of the
          Sterling Pharma Facility, Verrica Resubmits Its NDA ............................................ 3

    VI.   The May 2022 CRL for the November 2021 NDA .................................................... 4

    VII.  FDA Approves the January 2023 NDA for VP-102 ................................................ 4

PROCEDURAL HISTORY .................................................................................................... 5

    I.     The Amended Complaint Challenges Four Sets of Statements .................................. 5

    II.    The Court's Ruling on Defendants' Motion to Dismiss the Amended Complaint ....... 6

    III.   The Second Amended Complaint Challenges Two Sets of Statements ........................ 6

    IV.   Plaintiff Is Not Aware of Any Challenged Statements in the Case ............................. 7

    V.    Plaintiff Moves to Certify the Same Class Proposed in the Amended Complaint ........ 8

PLAINTIFF'S BURDEN OF PROOF ..................................................................................... 8

ARGUMENT ......................................................................................................................... 9

    I.     For the Challenged May-June 2021 Statements, There Is No Basis for
          Certifying a Class that Includes Those Who Purchased Verrica Stock
          After the Alleged September 2021 Corrective Disclosure ....................................... 10

    II.    For the Challenged Spring 2022 Statements, There Is No Basis for
          Certifying a Class That Includes Those Who Purchased Verrica Stock
          Before the First Alleged Misstatement on March 2, 2022 ....................................... 12

CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
2007 WL 276150 (D.N.J. Jan. 25, 2007) ................................................................10, 12

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) .............................................................................................8

*Carr v. Reg. Datacorp, Inc.*,
2024 WL 3937562 (E.D. Pa. Aug. 26, 2024) ...................................................................9

*In re Corel Corp. Inc. Sec. Litig.*,
206 F.R.D. 533 (E.D. Pa. 2002) .......................................................................................9

*In re Data Access Sys. Sec. Litig.*,
103 F.R.D. 130 (D.N.J. 1984) ..........................................................................................9

*Gannon v. Cont'l Ins. Co.*,
920 F. Supp. 566 (D.N.J. 1996) .....................................................................................13

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ..........................................................................................................9

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008) .............................................................................................9

*In re Kulicke & Soffa Indus., Inc. Sec. Litig.*,
1990 WL 1478 (E.D. Pa. Jan. 9, 1990) ..........................................................................10

*In re NAHC, Inc. Sec. Litig.*,
2001 WL 1241007 (E.D. Pa. Oct. 17, 2001) ..................................................................13

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001) .............................................................................................9

*In re ORFA Sec. Litig.*,
654 F. Supp. 1449 (D.N.J. 1987) ...................................................................................12

*In re Signet Jewelers Ltd. Sec. Litig.*,
2019 WL 3001084 (S.D.N.Y. July 10, 2019) ................................................................10

*Tice v. Novastar Fin., Inc.*,
2004 WL 1895180 (W.D. Mo. Aug. 23, 2004) ..............................................................12

*In re Wafarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .............................................................................................9

ii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)...................................................................................................8, 11

**Statutes, Regulations & Rules**

15 U.S.C. § 78j(b)..........................................................................................................5

15 U.S.C. § 78t(a)..........................................................................................................5

21 C.F.R. § 314.110(a)...................................................................................................2

Fed. R. Civ. P. 23...........................................................................................................8, 9

**Other Authorities**

Fed. R. Civ. P. 23(c)(4) Advisory Committee Note to 1966 Amendment......................................10

iii

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| **AC** | Amended Complaint (Dkt. No. 18) |
| **Company or Verrica** | Verrica Pharmaceuticals. Inc |
| **cGMP** | Current Good Manufacturing Practices |
| **CMO** | Contract Manufacturing Organization |
| **CRL** | Complete Response Letter |
| **Defendants** | Verrica Pharmaceuticals, Inc. and Ted White |
| **First MTD Opinion** | Opinion on First Motion to Dismiss (Dkt. No. 38) |
| **FDA** | U.S. Food and Drug Administration |
| **NDA** | New Drug Application |
| **OAI** | Official Action Indicated |
| **Plaintiff** | Kranthi Gorlamari |
| **SAC** | Plaintiff's Second Amended Complaint (Dkt. No. 40) |
| **SEC** | U.S. Securities and Exchange Commission |
| **Section 10(b)** | 15 U.S.C. § 78j(b) |
| **Section 20(a)** | 15 U.S.C. § 78t(a) |
| **Sterling Pharma** | Sterling Pharmaceuticals Services, LLC |
| **VAI** | Voluntary Action Indicated |

## **INTRODUCTION**

Certification of Plaintiff's proposed class should be denied because it does not align with the remaining claims in the case. Plaintiff's Amended Complaint challenged four sets of statements across a putative class period of May 19, 2021 to May 24, 2022. Following motion practice, however, the challenged statements in the middle of that period have been dismissed from the case. Plaintiff's Second Amended Complaint is thus limited to two sets of challenged statements at opposite ends of the period: what the Court has previously described as the "May-June 2021" statements and the "Spring 2022" statements (encompassing challenged statements between March 2, 2022 and May 9, 2022). Rather than tailor their motion to the remaining two sets of challenged statements in the SAC, Plaintiff seeks certification of the same expansive class proposed in the AC: "[a]ll persons and entities that purchased the publicly-traded common stock of Verrica between May 19, 2021 and May 24, 2022." Dkt. No. 69-1 at 1.

The problem with Plaintiff's proposed class is that the potential claimants for the challenged May-June 2021 statements and Spring 2022 statements do not include those who purchased Verrica stock between September 21, 2021 and March 1, 2022. As the Court has observed, a September 20, 2021 press release disclosed the information that Plaintiff alleges rendered the May-June 2021 statements misleading. Dkt. No. 38 at 24. Indeed, Plaintiff agreed that the press release "directly contradicted" the May-June 2021 statements. Dkt. No. 34 at 23. Following that press release, no investor could have relied on the allegedly misleading nature of the May-June 2021 statements. *See infra* Argument § I. And no investor who purchased Verrica stock before March 2, 2022 has a claim based on the challenged Spring 2022 statements because they cannot demonstrate reliance on statements that had not yet been made when they purchased Verrica stock. *See infra* Argument § II.

Because no purchaser of Verrica stock between September 21, 2021 and March 1, 2022 could have relied on the challenged May-June 2021 statements or challenged Spring 2022 statements, Plaintiff's request for certification of a class encompassing all purchasers between May 19, 2021 to May 24, 2022 should be denied.

## FACTUAL BACKGROUND

### I.      Verrica and Mr. White

Founded in 2013, Verrica is a dermatology therapeutics company. Dkt. No. 42-1 at 3. During the putative class period of May 19, 2021 to May 24, 2022, Verrica's lead product candidate was VP-102, a drug-device combination for the treatment of molluscum contagiosum, a highly contagious and primarily pediatric skin disease, and common warts. *Id.* Verrica has since received FDA approval and markets VP-102 under the brand name YCANTH®. *Id.* Ted White served as Verrica's CEO from December 2017 to November 2024. *Id.*

### II.     Verrica Pursues FDA Approval for VP-102 as a Treatment for Molluscum

In January 2019, Verrica announced positive top-line results from its Phase 3 pivotal trial of VP-102 for the treatment of molluscum. *See* Ex. A.[1] In September 2019, Verrica submitted a New Drug Application to the FDA for approval to market VP-102. *See* Ex. B. In December 2020, following receipt of a Complete Response Letter[2] in July 2020 and a meeting with the FDA in October 2020, Verrica resubmitted its NDA. *See* Ex. C.

---

[1] Citations to "Ex. __" refer to the exhibits attached to the Declaration of Zachary Sisko, dated July 31, 2025, filed contemporaneously herewith.

[2] A CRL communicates that the FDA "will not approve the application … in its present form," describes "specific deficiencies," and, when possible, provides a "[r]ecommendation of actions for approval." 21 C.F.R. § 314.110(a). An applicant may resubmit the application to address the deficiencies identified in the CRL, withdraw the application, or request a hearing with the FDA. *Id.* § 314.110(b).

**III.    Verrica Warns Investors That Its NDA for VP-102 May Never Obtain Regulatory Approval and That FDA Approval of Third Party CMOs Was Required**

In its public SEC filings, Verrica warned investors there could be "no assurance" the FDA would approve the NDA for VP-102 and that VP-102 may "never obtain regulatory approval." Dkt. No. 33-3 at 34-35; Dkt. No. 33-4 at 35-36. Verrica also specifically cautioned investors that it relied on third-party contract manufacturing organizations for the manufacture of VP-102, it had no control over the third-party CMOs' compliance with regulatory requirements, and that the FDA may need to inspect and approve those CMOs before it would approve the NDA for VP-102, if ever. *See, e.g.*, Dkt. No. 33-3 at 50; Dkt. No. 33-4 at 51.

**IV.    The September 2021 CRL for the December 2020 NDA**

In a September 20, 2021 press release, Verrica announced its receipt of a CRL for the December 2020 NDA submission. *See* Ex. D. The September 2021 CRL was issued because of deficiencies, albeit "not specifically related to the manufacturing of VP-102," that the FDA had observed during a May 2021 inspection of a facility of Sterling Pharmaceuticals Services, LLC ("Sterling Pharma"), one of the third-party CMOs used for the planned manufacture of VP-102. *Id.* The press release stated that "[a]t no time prior to the CRL was the Company notified by the FDA … that [FDA's] general investigation of the [Sterling Pharma] facility would have any impact on the Company's NDA." *Id.* In addition, the press release stated that "[Verrica] understands from [Sterling Pharma] that it has implemented corrective actions to address the Agency's concerns and [Sterling Pharma] has advised Verrica that it is expecting a satisfactory resolution of the facility's identified deficiencies from the FDA within the next 30 business days." *Id.*

**V.    In November 2021, Following Notice of the FDA's VAI Classification of the Sterling Pharma Facility, Verrica Resubmits Its NDA**

In a November 12, 2021 press release, Verrica announced that it had been notified that the FDA had classified its May 2021 inspection of the Sterling Pharma facility as Voluntary Action

3

Indicated, "which means objectionable conditions or practices were found but the [FDA] is not prepared to take or recommend any administrative or regulatory action" against the facility. Ex. E. Verrica further stated it had been informed the inspection was "closed" and that "the VAI classification will not directly negatively impact FDA's assessment of the Company's NDA regarding this CMO." *Id.* Verrica also reported that it had "engaged the FDA to determine the next steps toward the potential approval of VP-102 for the treatment of molluscum." *Id.*

In a November 29, 2021 press release, Verrica announced it had resubmitted its NDA for VP-102 for the treatment of molluscum. *See* Ex. F. The press release explained that "[t]he resubmission [was] limited to those sections and elements of the NDA that were identified as deficiencies in the [CRL] issued by the FDA in September 2021." *Id.*

## VI.    The May 2022 CRL for the November 2021 NDA

On May 24, 2022, Verrica announced receipt of a CRL for the November 2021 NDA. *Id.* The only deficiency listed in the CRL related to observations made during a "general reinspection" of Sterling Pharma's facility in February 2022. *See* Ex. G. Verrica stated that it learned the FDA had classified that reinspection as Official Action Indicated, meaning "regulatory and/or administrative actions will be recommended." *Id.*; Dkt No. 42-1 at 5. Verrica stated the "CRL did not identify any other deficiencies," and "none of the issues identified by FDA during the reinspection were specific to the manufacturing of VP-102." *See* Ex. G. Verrica also stated that, although "there were no open questions on the NDA review … internal FDA policy" prevents approval of an NDA "when a CMO … is placed on OAI status." *Id.*

## VII.   FDA Approves the January 2023 NDA for VP-102

In January 2023, after completion of a technology transfer needed for Piramal Pharma Solutions to replace Sterling Pharma, Verrica resubmitted its NDA. *See* Ex. H.

On July 21, 2023, Verrica announced FDA's approval of the NDA. *See* Ex. I.

4

**PROCEDURAL HISTORY**

I.   **The Amended Complaint Challenges Four Sets of Statements**

On June 6, 2022, Plaintiff Kranthi Gorlamari filed this action.  Dkt. No. 1.  On January 12, 2023, Plaintiff filed an Amended Complaint asserting claims for securities fraud under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  Plaintiff's primary contention in the AC was that Defendants "misled the market as to material and significant risks relating to Verrica obtaining regulatory approval of VP-102" by "failing to disclose that [Sterling Pharma] had received FDA Form 483s."  AC at 1.  "Inspectional observations" of a manufacturing facility are documented on Form 483.  AC ¶¶ 7, 51.  Form 483 observations "do[] not … represent final FDA determination"; rather, a more detailed Establishment Inspection Report and other materials, including any responses by the CMO, are also considered in determining how to classify an inspection and whether further action, if any, is appropriate.  AC ¶ 52.

The AC challenged four sets of statements:

*May-June 2021 Statements.*  Statements by Mr. White in May and June 2021 regarding pre-approval inspections for Verrica's December 2020 NDA for VP-102.  AC ¶¶ 108-12.

*September 2021 Statements.*  Statements in a September 20, 2021 press release regarding Verrica's receipt of a CRL for its December 2020 NDA.  AC ¶¶ 113-14.

*November 2021 Statements.*   Statements in November 2021 press releases regarding FDA's VAI classification of the Sterling Pharma facility inspection and Verrica's resubmission of an NDA for VP-102.  AC ¶¶ 115-20.

*Spring 2022 Statements.*  Statements in Spring 2022 regarding the timing of regulatory approval for Verrica's November 2021 NDA for VP-102 and the "satisfactory resolution" of Sterling Pharma facility inspection issues.  AC ¶¶ 121-28.

The AC alleged corrective disclosures on (i) September 20, 2021 and (ii) May 24, 2022. The AC alleged that a September 20, 2021 press release revealed Verrica's receipt of a CRL for its December 2020 NDA due to "deficiencies at a facility of Verrica's contract manufacturer, Sterling Pharmaceuticals" that "stemmed from the FDA's inspection of Sterling" in May 2021 that "concluded with the FDA issuing a four-item Form 483." AC ¶¶ 6-8. The AC alleged that a May 24, 2022 press release revealed Verrica's receipt of a CRL for its November 2021 NDA due to "deficiencies identified during a general reinspection of Sterling Pharmaceuticals" in February 2022 that "concluded with the FDA issuing a four-item 483." AC ¶¶ 9-12.

## II.    The Court's Ruling on Defendants' Motion to Dismiss the Amended Complaint

On April 5, 2023, Defendants moved to dismiss the AC. Dkt. No. 33. On January 11, 2024, the Court entered its opinion on the motion to dismiss the AC. Dkt. No. 38. The Court dismissed Plaintiff's claims relating to three of the four sets of challenged statements: (i) September 2021 statements; (ii) November 2021 statements; and (iii) Spring 2022 statements. *Id.* at 19-23. As a result, Plaintiff's surviving claims were limited to the May-June 2021 statements. Dkt. No. 39.

## III.    The Second Amended Complaint Challenges Two Sets of Statements

On January 26, 2024, Plaintiff filed his Second Amended Complaint. Dkt. No. 40. The SAC made no attempt to cure the pleading deficiencies relating to, and removed, Plaintiff's claims regarding the September 2021 statement and November 2021 statements. Instead, the SAC maintained Plaintiff's claim relating to the May-June 2021 statements and attempted to revive Plaintiff's claims relating to the Spring 2022 statements. SAC ¶¶ 107-19. The SAC also realleged the same purported corrective disclosures pled in the AC. *See supra* at 6; SAC ¶¶ 122-28.

On September 3, 2024, the Court entered its opinion on the motion to dismiss the SAC. Dkt. No. 48. The Court noted that the SAC "relies heavily on statements from anonymous former

Verrica employees to demonstrate Defendants' knowledge of ongoing problems," *id.* at 1, but concluded that it could not consider sworn declarations from "FE1" and "FE2" that the SAC inaccurately described what they stated to Plaintiff's investigators. *Id.* at 6-7 (holding that argument that "courts should allow witness declarations on a motion to dismiss because unscrupulous plaintiffs' lawyers might fabricate allegations attributed to anonymous sources" is a "policy argument" for "Congress or the Rules Advisory Committee"). As a result, the Court accepted as true the SAC's allegations relating to FE1 and FE2, which it found sufficient to reinstate Plaintiff's claim relating to the Spring 2022 statements. *Id.* at 7-9.

**IV.     Plaintiff Is Not Aware of Any Challenged Statements in the Case**

Mr. Gorlamari filed the original complaint in the action, Dkt. No. 1, and was the only Verrica stockholder who filed a motion to be appointed lead plaintiff. Dkt. No. 5.

Mr. Gorlamari is not aware of *any* of the alleged misstatements in the case and agrees that none of the challenged statements had any impact on his decision to invest in Verrica. *See* Ex. J at 127:1-133:20. Nor could Mr. Gorlamari recall reviewing any press releases or news relating to Verrica, much less any of Verrica's SEC filings. *Id.* at 119:12-120-12; 130:11-15. Mr. Gorlamari has "no strategy" for investing. *Id.* at 90:8-15; *see also id.* at 84:2-88:9 (explaining that there are "no specific pieces" of information he looks to when purchasing stock). Instead, he typically invests in pharmaceutical companies because he has worked in the pharmaceutical industry for over two decades, *id.* at 102:21-105:8, and invests in those pharmaceutical companies—including Verrica—that have a "pending NDA." *Id.* at 119:12-120-12.

Mr. Gorlamari cannot explain why his certified list of transactions in Verrica shares—which the Court relied on in appointing him lead plaintiff (*see* Dkt. Nos. 5-5, 13)—was substantially revised nearly three years later on June 13, 2025, Dkt. No. 69-4. *See* Ex. J at 77:3-81:5.

7

### V.     Plaintiff Moves to Certify the Same Class Proposed in the Amended Complaint

On June 13, 2025, Plaintiff filed his motion for class certification. Dkt. No. 69. Although Mr. Gorlamari is not aware of any of the alleged misstatements in the case, he seeks certification as the sole class representative. Dkt. No. 69-1 at 5. And although the remaining claims in the SAC concern two of the four sets of statements challenged in the AC, Plaintiff seeks to certify the same class proposed in the AC—*i.e.*, "[a]ll persons and entities that purchased the publicly-traded common stock of Verrica between May 19, 2021 and May 24, 2022, both dates inclusive." *Id.* at 1; *compare with* AC ¶ 141 (defining proposed class as "all persons and entities that purchased or otherwise acquired Verrica securities between May 19, 2021 and May 24, 2022, inclusive").

### PLAINTIFF'S BURDEN OF PROOF

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).[3] Thus, before any suit may proceed as a class action, a plaintiff must go beyond its "mere pleading" and "affirmatively demonstrate" and "prove" by a preponderance of the evidence its compliance with each of Rule 23's requirements. *Id.* at 350; *accord Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006); *In re Wafarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004); *Carr v. Reg. Datacorp, Inc.*, 2024 WL 3937562, at *2 (E.D. Pa. Aug. 26, 2024).

The plaintiff's proffered evidence must be subjected to "rigorous analysis" because "actual, not presumed, conformance" with Rule 23 is "indispensable." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982); *accord In re Corel Corp. Inc. Sec. Litig.*, 206 F.R.D. 533, 540 (E.D. Pa. 2002). "[T]he court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits," and "should not suppress 'doubt' as to whether a Rule 23

---

[3] All internal quotations and citations are omitted, and all emphasis is added unless otherwise indicated.

requirement is met," "relax its certification analysis," or "presume a requirement for certification is met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307, 321–22 (3d Cir. 2008); *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001) (explaining that a "thorough examination" of a class proponent's allegations is required); *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 143 (D.N.J. 1984) (analyzing "aspects of the merits of plaintiffs' proposed class period to determine the appropriate endpoints" for the class period).

## **ARGUMENT**

Certification of Plaintiff's proposed class should be denied because it does not align with the remaining claims in the case.

While the AC challenged four sets of statements, the SAC is limited to the two sets of challenged statements at the opposite ends of the proposed class period of May 19, 2021 to May 24, 2022:

> (i) the May-June 2021 statements regarding the December 2020 NDA for VP-102 that allegedly misrepresented the cGMP violations observed in the Form 483 from FDA's May 2021 inspection of the Sterling Pharma facility (SAC ¶¶ 107-11); and

> (ii) the Spring 2022 statements regarding the November 2021 NDA for VP-102 that allegedly misrepresented the cGMP violations observed in the Form 483 from FDA's February 2022 inspection of the Sterling Pharma facility (SAC ¶¶ 112-19).

Rather than propose classes tailored to the remaining two sets of challenged statements in the SAC, *see* Fed. R. Civ. P. 23(c)(4) Advisory Committee Note to 1966 Amendment ("Two or more classes may be represented in a single action."),[4] Plaintiff seeks certification of the same expansive class proposed in the AC which challenged four sets of statements: "[a]ll persons and

---

[4] The 1966 version of Rule 23(c)(4) is the predecessor to current Rule 23(c)(4) and (5) and provided as follows: "When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly."

entities that purchased the publicly-traded common stock of Verrica between May 19, 2021 and May 24, 2022." Dkt. No. 69-1 at 1.

As explained below, there is no basis for certifying a class that includes purchasers of Verrica stock between September 21, 2021 and March 1, 2022 (*i.e.*, after the alleged September 2021 Corrective Disclosure and before the first challenged Spring 2022 statement).

I.      **For the Challenged May-June 2021 Statements, There Is No Basis for Certifying a Class that Includes Those Who Purchased Verrica Stock After the Alleged September 2021 Corrective Disclosure**

"In a securities fraud class action, courts are required to cut off the class period on the date of a statement or event that cures the market." *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *19 (S.D.N.Y. July 10, 2019). That is because "[c]urative information retracts or dispels the alleged misinformation, or puts the investor on inquiry notice of the alleged fraud, making further reliance on the original statements by investors unreasonable." *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 2007 WL 276150, at *3 (D.N.J. Jan. 25, 2007); *see also In re Kulicke & Soffa Indus., Inc. Sec. Litig.*, 1990 WL 1478, *5 (E.D. Pa. Jan. 9, 1990) ("Liability under the securities acts is terminated when curative information is publicly announced or otherwise effectively disseminated.").

Here, for the challenged May-June 2021 statements, there is no basis for certifying a class that includes those who purchased Verrica stock after the September 20, 2021 press release that, according to Plaintiff himself, "directly contradicted" the challenged May-June 2021 statements regarding the status of the CMO inspections for the December 2020 NDA:

> On September 20, 2021, Verrica announced it had received a CRL from the FDA due to deficiencies the FDA identified at Sterling during the May 2021 inspection. ¶¶68-69, 131-132. *The market now knew that there were significant problems at Sterling, that the FDA had serious concerns about those problems, and that, as a result, the FDA would not approve the NDA while the facility was out of cGMP compliance.* ¶¶68-69, 100. *This disclosure thus directly contradicted Defendants' earlier statements regarding the CMO inspections and the falsely positive impression those*

10

> ***statements conveyed to the market***. ¶¶65-67. In response, Verrica's stock price dropped 8.3%, to close at $11.03 per share that same day. ¶¶70, 134.

Dkt. No. 34 at 23.

Any attempt by Plaintiff to characterize the September 20, 2021 press release as only "partially" curative of the alleged misleading nature of the May-June 2021 statements would be unfounded.[5] The Court has already dismissed Plaintiff's claim in the AC relating to the September 20, 2021 press release, Dkt. No. 38 at 19, and Plaintiff has removed it as a challenged statement in the SAC. *Compare* AC ¶¶ 113-14, *with* SAC ¶¶ 107-19. More importantly, as the Court observed in its First MTD Opinion, the September 20, 2021 press release referenced the same cGMP violations that were conveyed to Sterling Pharma in the May 2021 Form 483 which Plaintiff alleges rendered the May-June 2021 statements misleading:

> Plaintiff contends that cGMP violations that were listed in the Form 483 were what led the FDA to deny Verrica's application. Verrica's September 2021 disclosure referenced the same cGMP violations that were communicated to Sterling in May 2021.

Dkt. No. 38 at 24; *see also* SAC ¶¶ 108, 111 (alleging that May-June 2021 statements were misleading because they failed to disclose that "the FDA's May 2021 Sterling Inspection had resulted in the issuance of a Form 483 to Sterling"). In addition, the September 20, 2021 press release disclosed Verrica's receipt of a CRL—"essentially a denial" of the December 2020 NDA. Dkt. No. 38 at 5. Thus, following the September 20, 2021 press release, no investor could have reasonably relied on any alleged "falsely positive impression" conveyed by the challenged May-June 2021 statements regarding the prospect for FDA approval of the December 2020 NDA.

---

[5] Plaintiff's mere allegation that the September 20, 2021 press release was "partially" corrective, SAC ¶ 122, is insufficient to meet his burden on this motion. *See Wal-Mart*, 564 U.S. at 350. Plaintiff's class certification expert did not conduct any analysis of whether the September 20, 2021 press release was partially or fully curative of the May-June 2021 statements. *See* Dkt. 69-3 at 4 n.2; Ex. K at 82:21-86:2. And Plaintiff has not otherwise submitted any evidence that the September 20, 2021 press release was only partially curative.

11

Because the September 20, 2021 press release disclosed the information that Plaintiff alleges rendered the May-June 2021 statements misleading, the challenged May-June 2021 statements provide no basis for certifying a class that includes those who purchased Verrica stock after September 20, 2021. *See Alaska*, 2007 WL 276150, at *3 (ending class period on February 6, 2001 rather than May 31, 2002 because "the class period should not extend past the date upon which curative information becomes available"); *Tice v. Novastar Fin., Inc.*, 2004 WL 1895180, at *3 (W.D. Mo. Aug. 23, 2004) (class period could not extend past publication of article that "served as corrective disclosure of fraud"); *In re ORFA Sec. Litig.*, 654 F. Supp. 1449, 1465 (D.N.J. 1987) (ending class period on publication date of an article that "made it unreasonable to continue relying on the alleged misrepresentations….").

**II.    For the Challenged Spring 2022 Statements, There Is No Basis for Certifying a Class That Includes Those Who Purchased Verrica Stock <u>Before the First Alleged Misstatement on March 2, 2022</u>**

The only other statements challenged in the SAC are the Spring 2022 statements encompassing alleged misstatements between March 2, 2022 and May 9, 2022. SAC ¶¶ 112-19. No investor who purchased Verrica stock before March 2, 2022 has a claim based on the challenged Spring 2022 statements because they could not demonstrate reliance on statements made after their purchase. *See, e.g.*, *In re NAHC, Inc. Sec. Litig.*, 2001 WL 1241007, at *18 n.27 (E.D. Pa. Oct. 17, 2001) ("Because any investors who purchased their stock prior to the allegedly fraudulent statements cannot plead reliance, they have no viable claim for securities fraud."); *Gannon v. Cont'l Ins. Co.*, 920 F. Supp. 566, 578 (D.N.J. 1996) ("It is well established that a plaintiff cannot rely on statements made subsequent to his purchase in order to state a securities fraud claim and that no liability attaches to statements made after the transaction in question."). Thus, as it relates

12

to the challenged Spring 2022 statements, there is no basis for certifying a class that includes those who purchased Verrica stock before March 2, 2022.

\* \* \*

As the foregoing demonstrates, no purchaser of Verrica stock between September 21, 2021 and March 1, 2022 could have relied on any of the challenged statements in the SAC. The September 20, 2021 press release disclosed the information that allegedly rendered the challenged May-June 2021 statements misleading. The SAC does not challenge any statements between September 21, 2021 and March 1, 2022 because the Court dismissed all challenged statements within this time period, Dkt. No. 38 at 19-21, and Plaintiff removed them from the SAC.

Plaintiff could have proposed classes tailored to the two sets of challenged statements in the SAC—for example, a class comprised of those who purchased between May 14, 2021 and September 20, 2021 for the challenged May-June 2021 statements and a class comprised of those who purchased between March 2, 2022 and May 4, 2022 for the challenged Spring 2022 statements. As if the case that now remains in the SAC were beside the point, however, Plaintiff seeks certification of the same expansive class that was proposed in the AC for four sets of challenged statements.

Because the potential claimants for the challenged May-June 2021 statements and Spring 2022 statements do not include those who purchased Verrica stock between September 21, 2021 and March 1, 2022, Plaintiff's request for certification of a class encompassing all purchasers between May 19, 2021 to May 24, 2022 should be denied.

13

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification should be denied.

Dated: July 31, 2025

**COOLEY LLP**

By: */s/ Aric H. Wu*
Aric H. Wu
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
ahwu@cooley.com

Luke T. Cadigan
Zachary Sisko
500 Boylston Street
Boston, MA 02116-3736
Telephone: (617) 937-2300
Facsimile: (617) 937-2400
lcadigan@cooley.com
zsisko@cooley.com

**MORGAN, LEWIS & BOCKIUS LLP**
Michael L. Kichline
Emily S. Kimmelman
1701 Market St.
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
michael.kichline@morganlewis.com
emily.kimmelman@morganlewis.com

*Attorneys for Defendants Verrica Pharmaceuticals, Inc. and Ted White*

14