**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KRANTHI GORLAMARI, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:22-cv-02226-MSG |
| Plaintiff, | |
| v. | |
| VERRICA  PHARMACEUTICALS,  INC., TED  WHITE, P. TERENCE KOHLER JR. and A. BRIAN DAVIS, | |
| Defendants. | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR**
**CLASS CERTIFICATION AND APPOINTMENT OF**
<u>**CLASS REPRESENTATIVE AND CLASS COUNSEL**</u>

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  DEFENDANTS' ATTACK ON THE CLASS PERIOD FAILS ...................................... 2

     A.   Defendants' Argument About The September 2021 Press Release Prematurely Raises A Class-Wide Merits Issue That Cannot Prevent Class Certification .................... 2

     B.   Defendants' Mischaracterization Of The September 2021 Press Release As Fully Corrective Fails To Rebut The Presumption Of Reliance ..................................... 5

     C.   Plaintiff's Allegations Support The Proposed Class Period ................................. 7

III. PLAINTIFF IS AN ADEQUATE CLASS REPRESENTATIVE...................................... 9

IV.  CONCLUSION.................................................................................................. 10

# TABLE OF AUTHORITIES

## CASES

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
2007 WL 276150 (D.N.J. Jan. 25, 2007) ............................................................................... 5

*Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*,
623 F. Supp. 3d 470 (E.D. Pa. 2022) ..................................................................................... 4

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......................................................................................................... 2, 3

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ..................................................................................................... 5

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).......................................................................................................... 1, 6

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).............................................................................................................. 2

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011).............................................................................................................. 3

*Goldman Sachs Group, Inc. v. Arkansas Teacher Ret. Sys.*,
594 U.S. 113 (2021).............................................................................................................. 6

*Gorlamari v. Verrica Pharms., Inc.*,
2024 WL 150341 (E.D. Pa. Jan. 11, 2024) ........................................................................... 9

*Gorlamari v. Verrica Pharms., Inc.*,
2024 WL 4026176 (E.D. Pa. Sept. 3, 2024) ......................................................................... 8

*Hall v. Johnson & Johnson*,
2023 WL 9017023 (D.N.J. Dec. 29, 2023)............................................................................ 4

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2011)..................................................................................................... 3, 5, 6

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*,
2023 WL 7285167 (E.D. Pa. Nov. 3, 2023) .................................................................... 9, 10

*In re Apple Inc. Sec. Litig.*,
2022 WL 354785 (N.D. Cal. Feb. 4, 2022) ......................................................................... 10

ii

*In re Barrick Gold Sec. Litig.*,
  314 F.R.D. 91 (S.D.N.Y. 2016) ................................................................... 5, 8

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
  2019 WL 5287980 (S.D.N.Y. Oct. 18, 2019) ........................................... 5

*In re Cigna Corp. Sec. Litig.*,
  459 F. Supp. 2d 338 (E.D. Pa. 2006) ..................................................... 4

*In re Kulicke & Soffa Indus., Inc. Sec. Litig.*,
  1990 WL 1478 (E.D. Pa. Jan. 9, 1990) .................................................. 5

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
  2013 WL 396117 (D.N.J. Jan. 30, 2013) ........................................... 3, 7, 8

*In re ORFA Sec. Litig.*,
  654 F. Supp. 1449 (D.N.J. 1987) .......................................................... 5

*In re Processed Egg Prods. Antitrust Litig.*,
  312 F.R.D. 124 (E.D. Pa. 2015) ........................................................... 9

*In re Schering-Plough/ENHANCE Sec. Litig.*,
  2012 WL 4482032 (D.N.J. Sept. 25, 2012) ........................................... 4

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2019 WL 3001084 (S.D.N.Y. July 10, 2019) ......................................... 5

*In re SLM Corp. Sec. Litig.*,
  2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) ......................................... 10

*Int'l Bhd. of Elec. Workers Loc. 98 Pension Fund v. Deloitte & Touche LLP*,
  348 F.R.D. 35 (D.S.C. 2024) ................................................................ 3

*Mulderrig v. Amyris, Inc.*,
  340 F.R.D. 575 (N.D. Cal. 2021) .......................................................... 4

*Peil v. Speiser*,
  806 F.2d 1154 (3d Cir. 1986) ............................................................... 10

*Pelletier v. Endo Int'l PLC*,
  338 F.R.D. 446 (E.D. Pa. 2021) ...................................................... 4, 5, 6

*Roofer's Pension Fund v. Papa*,
  333 F.R.D. 66 (D.N.J. 2019) ............................................................. 3, 7

iii

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
  341 F.R.D. 542 (S.D.N.Y. 2022) ................................................................................ 7

*Strougo v. Barclays PLC*,
  312 F.R.D. 307 (S.D.N.Y. 2016) ................................................................................ 8

*Tice v. Novastar Fin., Inc.*,
  2004 WL 1895180 (W.D. Mo. Aug. 23, 2004)........................................................... 5

*Utesch v. Lannett Co., Inc.*,
  2021 WL 3560949 (E.D. Pa. Aug. 12, 2021) ........................................................... 10

*Wilson v. LSB Indus., Inc.*,
  2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018)......................................................... 3, 7

iv

Court-appointed lead plaintiff Kranthi Gorlamari ("Plaintiff") submits this reply in further support of his Motion for Class Certification (ECF 69, "Motion") and in response to Defendants' Opposition to Plaintiff's Motion for Class Certification (ECF 71, "Opposition" or "Opp.").

## I.     INTRODUCTION

Plaintiff's Motion demonstrates that all elements of Rule 23(a) and (b)(3) are met and that the proposed Class is ascertainable.[1]  Dr. Bozanic's expert report establishes market efficiency and demonstrates that the *Basic* fraud-on-the-market presumption of reliance applies, thus establishing the predominance of common issues under Rule 23(b)(3).  *See* ECF 69-3 ("Bozanic Report"); *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).  Notably, Defendants provide no rebuttal expert of their own to challenge *any* opinion set forth in the Bozanic Report.

In fact, despite asking the Court to deny Plaintiff's motion, Defendants fail to challenge a single element of Rule 23(a) and (b)(3), thus conceding that Plaintiff has met his burden in proving the elements are met.  Defendants instead challenge the length of the Class Period (May 19, 2021 through May 24, 2022).  They do so by arguing that the September 20, 2021 press release fully corrected earlier challenged statements, such that no one who purchased Verrica stock thereafter could have relied on any statements made before September 20, 2021.  This fails to prove a complete absence of price impact, as is required to rebut the *Basic* fraud-on-the-market presumption of reliance.  Defendants ignore that Plaintiff alleged the September 2021 disclosure was only partially corrective and there was a later corrective disclosure in May 2022.  The Class Period as proposed in Plaintiff's Motion is supported by the operative allegations and thus is appropriate.  Moreover, Defendants' argument

---

[1] Unless otherwise noted, capitalized terms herein have the same meaning as set forth in Plaintiff's opening motion. Citations to "¶__" are to the Second Amended Complaint (ECF 40, "SAC"), citations to "Mot. __" are to Plaintiff's memorandum of law in support of the Motion (ECF 69-1), and citations to "Opp. __" are to Defendants' Opposition.  Unless otherwise noted, all internal quotes, alterations, and citations are omitted, and all emphasis is added.

amounts to a premature *loss causation* attack not properly resolved on this procedural motion. Such loss causation arguments—once properly before the factfinder on a full evidentiary record—will win or lose as to the entire Class, demonstrating that certification is warranted, not precluded.

Defendants also make sideswipes at the Plaintiff, without actually challenging his typicality and adequacy. These attacks are meritless and do not defeat class certification.

Plaintiff made a substantial showing that certification should be granted. Defendants fail to carry their burden to prove otherwise. The Motion should be granted in its entirety.

## II.   DEFENDANTS' ATTACK ON THE CLASS PERIOD FAILS

Defendants argue that the Court should deny class certification because the proposed Class Period "does not align with the remaining claims." Opp. 1, 9. More specifically, Defendants argue that "no purchaser of Verrica stock between September 21, 2021 and March 1, 2022 could have relied on any of the challenged statements in the SAC" because, according to Defendants, the September 20, 2021 press release fully corrected the May-June 2021 statements. Opp. 13; *see also id.* at 1-2, 9-13. This argument: (a) is merely a premature challenge to loss causation, a Class-wide merits issue that cannot prevent certification; (b) fails to meet Defendants' burden to prove the complete absence of price impact to the extent Defendants are attempting to rebut the presumption of reliance; and (c) ignores that Plaintiff's proposed Class Period is appropriately tailored to the operative SAC.

### A.    Defendants' Argument About The September 2021 Press Release Prematurely Raises A Class-Wide Merits Issue That Cannot Prevent Class Certification

In securities class actions, the Supreme Court has repeatedly held that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the

2

merits, but rather whether the requirements of Rule 23 are met").  The same is true as to the length of

a class period.  *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 88 (D.N.J. 2019); *In re Merck & Co.,*

*Inc. Sec., Derivative & ERISA Litig.*, 2013 WL 396117, at *14 (D.N.J. Jan. 30, 2013) (defendants'

attempt to narrow the Class Period was "unavailing" because it, *inter alia*, "amounts to a misplaced

effort to attack the merits of the § 10(b) claim on this motion for class certification").[2]

The Supreme Court has explained that "[a]t the class certification stage, the Court need not

consider materiality and loss causation but must consider reliance."  *Papa*, 333 F.R.D. at 73 (citing

*Amgen*, 568 U.S. at 473 (materiality), *Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"),

563 U.S. 804, 812-13 (2011) (securities plaintiffs "need not prove loss causation to obtain class

certification"); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266-68 (2011)

("*Halliburton II*") (reliance)).

Despite framing their argument as one of reliance, the extent to which the September 2021

disclosure was fully curative of earlier alleged misrepresentations, and/or whether any artificial

inflation remained in the share price thereafter to be corrected by the later May 2022 disclosure, raises

premature questions of loss causation.  The Supreme Court explained the difference between reliance

and loss causation:

> [W]hen considering whether a plaintiff has relied on a misrepresentation, we have
> typically focused on facts surrounding the investor's decision to engage in the
> transaction. Under *Basic*'s fraud-on-the-market doctrine, an investor presumptively
> relies on a defendant's misrepresentation if that information is reflected in the market
> price of the stock at the time of the relevant transaction.  Loss causation, by contrast,
> requires a plaintiff to show that a misrepresentation that affected the integrity of the
> market price *also* caused a subsequent economic loss.

*Halliburton I*, 563 U.S. at 812, 814-15 (vacating denial of class certification that required loss

---

[2] *Int'l Bhd. of Elec. Workers Loc. 98 Pension Fund v. Deloitte & Touche LLP*, 348 F.R.D. 35, 49 (D.S.C. 2024) (same); *Cf. Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *19 (S.D.N.Y. Aug. 13, 2018) ("An examination of the purpose of the class action mechanism further reinforces our view that the start date of the class period is unrelated to the Rule 23 requirements").

causation proof because "loss causation is a familiar and distinct concept in securities law; it is not price impact") (emphasis in original).

Determining when misrepresentations are fully cured—as Defendants ask the Court to do—necessarily *resolves* loss causation by concluding when investors' losses are no longer recoverable, which is an issue better suited for summary judgment or trial. *In re Schering-Plough/ENHANCE Sec. Litig.*, 2012 WL 4482032, at *9 (D.N.J. Sept. 25, 2012) ("Whether a disclosure actually cured any previous misrepresentations is a fact sensitive inquiry, and is more appropriately resolved after sufficient fact finding."); *In re Cigna Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 356-57 (E.D. Pa. 2006) (denying summary judgment on loss causation, including "the impact of 'partially corrective event'", noting the "existence and complexity of these disputes" is "best assigned to the factfinder at trial").[3]

As such, courts routinely reject defendants' loss causation related attacks on the class period as "premature" at class certification. *Schering-Plough*, 2012 WL 4482032, at *9 (defendants' contentions that disclosure "cured" prior misrepresentations are "premature"); *Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 477 (E.D. Pa. 2021) (declining to review arguments as to when alleged misrepresentations were fully cured because "[t]hey do not warrant denial of class certification" and noting that the court remains free to modify the class period "if later developments render such a decision appropriate"); *see also, e.g.*, *Mulderrig v. Amyris, Inc.*, 340 F.R.D. 575, 583 (N.D. Cal. 2021) ("any inquiry as to precisely when the truth was fully disclosed to the market is best reserved for resolution on the merits, and should not result in the Court's narrowing of the class period at class

---

[3] *See also, e.g.*, *Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 623 F. Supp. 3d 470, 509 (E.D. Pa. 2022) (whether misrepresentations may be corrected by more than one disclosure is a "necessarily fact-intensive [inquiry] and may well be impacted by expert analysis. I will reserve their determination for the loss causation phase on the merits."); *Hall v. Johnson & Johnson*, 2023 WL 9017023, at *14 (D.N.J. Dec. 29, 2023), *aff'd sub. nom. San Diego Cnty. Emps. Ret. Ass'n v. Johnson & Johnson*, 2025 WL 2176586 (3d Cir. July 30, 2025) ("the Court need not determine whether the disclosures are corrective at this stage").

certification"); *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 107 & n.102 (S.D.N.Y. 2016) (declining to narrow class period because, *inter alia*, whether final "alleged stock price decline is sufficiently connected to the fraud" is a merits issue that cannot be decided at class certification).[4]

Moreover, when the factual record is fully developed, the parties can present evidence to support their merits-based arguments about whether the September 2021 press release was, in fact, fully corrective. In other words, Defendants' arguments are amenable to *class-wide* determination and thus support that Class certification is appropriate. *Pelletier*, 338 F.R.D. at 483 ("The relevance and import of a disclosure will stand or fall based on classwide evidence").

### B. Defendants' Mischaracterization Of The September 2021 Press Release As Fully Corrective Fails To Rebut The Presumption Of Reliance

Having demonstrated market efficiency (Mot. 11-18), Plaintiff is entitled to "a presumption that a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation." *Halliburton II*, 573 U.S. at 283-84 (2011). To rebut this presumption, Defendants must "demonstrate[], *by a preponderance of the evidence*, that the alleged misstatements *did not in fact impact the price of the stock*." *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 103 (2d Cir. 2023). Defendants "must demonstrate *a complete lack of price impact*." *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2019 WL 5287980, at *6 (S.D.N.Y. Oct.

---

[4] The bulk of Defendants' proffered authority was decided prior to the Supreme Court's decision in *Halliburton I*. *See Alaska Elec. Pension Fund v. Pharmacia Corp.*, 2007 WL 276150 (D.N.J. Jan. 25, 2007) (Opp. 10, 12); *In re Kulicke & Soffa Indus., Inc. Sec. Litig.*, 1990 WL 1478 (E.D. Pa. Jan. 9, 1990) (Opp. 10); *In re ORFA Sec. Litig.*, 654 F. Supp. 1449 (D.N.J. 1987) (Opp. 12). Another is also procedurally inapposite. *See Tice v. Novastar Fin., Inc.*, 2004 WL 1895180, at *3 (W.D. Mo. Aug. 23, 2004) (Opp. 12) (on motions for appointment of lead plaintiff, the court had to choose an appropriate closing date for multiple proposed class periods in order to resolve which movant had the largest financial interest). And *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084 (S.D.N.Y. July 10, 2019) (Opp. 10) is factually inapposite because the plaintiff, "by its own admission, [alleged] the truth was fully revealed prior to the end of the class period." *Id.* at *19.

18, 2019), *report and recommendation adopted in relevant part*, 2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020). "A defendant's mere production of *some* evidence relevant to price impact" is not enough; instead, in order to prove a lack of price impact, a defendant "must in fact sever the link between a misrepresentation and the price paid by the plaintiff." *Goldman Sachs Group, Inc. v. Arkansas Teacher Ret. Sys.*, 594 U.S. 113 at 125-26 (2021) (emphasis in original); *accord Halliburton II*, 573 U.S. at 281; *Basic*, 485 U.S. at 248.

Defendants do not challenge that the presumption applies; nor do they offer an expert to even *analyze* price impact, let alone attempt to prove its absence. Instead, Defendants argue that no investor could have "reasonably relied" on the May-June 2021 alleged misstatements after the September 2021 press release. Opp. 11, 12. To the extent Defendants attempt to use this argument in order to rebut the presumption of reliance, it fails: Defendants' say-so that the September 2021 announcement was fully curative is not *evidence* of a lack of price impact. And, as explained above, "[i]n addressing both the prima facie *Basic* presumption and its rebuttal, the Court may not consider arguments about loss causation." *Pelletier*, 338 F.R.D. at 469.

Moreover, while the Court should not decide the merits of this argument now, Defendants' argument that the September 2021 disclosure was fully curative is *wrong*. The SAC alleges that throughout the Class Period, Defendants misled the market as to the risks of obtaining FDA approval for VP-102. *E.g.*, ¶16. While these risks partially materialized on September 20, 2021, when Defendants announced that Verrica had received a CRL due to deficiencies at Sterling but that a "satisfactory resolution" was expected within 30 business days (*e.g.*, ¶7), the risks related to the prospects and timeline for approval were more fully corrected in the May 24, 2022 announcement, when the market learned that the deficiencies at Sterling had *not* been satisfactorily resolved, but "continue[d] to gate regulatory approval," and that any path toward FDA approval would likely take

at least a year. ¶¶11, 80, 82, 83.  Moreover, Defendants did not disclose until May 24, 2022 that the FDA specifically warned Verrica in the earlier, September 2021 CRL that successful resolution of Sterling's deficiencies was "specifically required" for regulatory approval.  ¶¶13, 80.  In short, the September 2021 disclosure was partially corrective, the May 2022 press release provided additional corrective information, and Plaintiff will prove it at the appropriate procedural time.[5]

### C.    Plaintiff's Allegations Support The Proposed Class Period

Plaintiff's proposed Class Period is supported by the operative allegations in the SAC.  The proposed Class Period begins on the date of the first alleged misleading statement, May 19, 2021, and ends on the date of the final alleged loss causation event, May 24, 2022.  Mot. 1; ¶¶80, 107, 126-28. "Class action plaintiffs are entitled to define the class period as broadly as their evidence supports[,]" and at class certification, "courts need only look to the pleadings to determine whether there is sufficient evidence to support an allegation that formed the basis for a class period." *Papa*, 333 F.R.D. at 88-89 (quoting *Wilson*, 2018 WL 3913115, at *19); *see also, e.g.*, *Sjunde AP-Fonden v. Gen. Elec. Co.*, 341 F.R.D. 542, 549 (S.D.N.Y. 2022) (adjusting class period to begin on date of first alleged omission but declining to shorten the proposed end of class period because subsequent disclosure was *alleged* to reveal new information and noting that at class certification, "no more is required").

Defendants instead suggest that narrowing the proposed Class Period into two shorter sub-class periods would have been more appropriate because, in part, the Court earlier dismissed other statements that were alleged in the *first* amended complaint.  Opp. 13.  But this ignores that the SAC's

---

[5] Even if the Court does find that September 20, 2021 press release was fully curative of the May-June 2021 statements (which it should not), denial of class certification *still* is not warranted; as Defendants concede, the Court may modify the proposed Class Period into two, smaller class periods: one from May 19, 2021 through September 20, 2021; and a second from March 2, 2022 through May 24, 2022. *See, e.g.*, *Merck*, 2013 WL 396117, at *15 (modifying proposed class definition to address raised concerns); Opp. 13 (suggesting two shorter subclasses is appropriate). But as discussed in Sec. II.C, two shorter periods are not required as the proposed Class Period aligns with the SAC.

allegations, the vast majority of which survived Defendants' motion to dismiss,[6] "nevertheless span" the proposed Class Period. *Barrick Gold.*, 314 F.R.D. at 107. For example, the risk in obtaining FDA approval of VP-102, including the prospects and timeline for approval did not fully materialize, and/or were not fully corrected until May 24, 2022, when Defendants admitted that the Sterling's unresolved deficiencies continued to plague FDA approval of VP-102. *See* Sec. II.B, *supra*.

Defendants' argument also ignores that the operative SAC alleged that the September 2021 press release was only partially corrective. ¶122. Defendants' September 2021 announcement of receipt of a CRL for VP-102 indicated to the market that the problems at Sterling would be quickly resolved, was a "rather modest setback," and that the FDA's approval of VP-102 would be delayed around 3-4 months. ¶¶7, 71, 73, 74, 124. It was not until Verrica's May 2022 announcement that the market learned the true extent and recurrent nature of the problems at Sterling, *and* that the FDA had told Verrica in the earlier, September 2021 CRL that the FDA specifically required that the "concerns at Sterling [] be[] resolved to the FDA's satisfaction." ¶¶80-83, 90-97, 126.

Notably, Defendants did *not* challenge the allegations that the September 2021 press release was only partially corrective in their motion to dismiss the SAC. In fact, they did *not* challenge loss causation *at all* in that motion. ECF 42-1. They cannot do so now. *Merck*, 2013 WL 396117, at *14 (class certification is not an "opportunity to seek dismissal of certain claims…in the guise of limiting the Class Period"); *accord Strougo v. Barclays PLC*, 312 F.R.D. 307, 328 (S.D.N.Y. 2016) (refusing to limit class where motion to dismiss order had not decided "when statements became material").

And while Defendants argued in their motion to dismiss the *first* amended complaint that Plaintiff failed to allege loss causation for both the September 2021 and May 2022 press releases,

---

[6] *Gorlamari v. Verrica Pharms., Inc.*, 2024 WL 4026176 (E.D. Pa. Sept. 3, 2024) (while allegations as to former defendant Kohler were dismissed, all challenged statements and loss causation events survived, and, in fact, Defendants failed to challenge these allegations).

again, Defendants *did not* challenge the allegations that the September 2021 release was only partially corrective. *See* ECF 33-1 at 4, 23-24.[7]  Moreover, the Court *rejected* Defendants' argument that neither press release was corrective. *Compare id.* at 24 *with Gorlamari v. Verrica Pharms., Inc.*, 2024 WL 150341, at *13 (E.D. Pa. Jan. 11, 2024) (denying motion to dismiss with respect to loss causation).

## III.    PLAINTIFF IS AN ADEQUATE CLASS REPRESENTATIVE

While not actually challenging typicality and adequacy, Defendants make thinly-veiled attacks on Plaintiff in their procedural history recitation. Opp. 7.  These attacks are innuendo that fail to carry Defendants' burden in showing that Plaintiff is inadequate and/or subject to a unique defense.[8]

Defendants first claim that Plaintiff was "not aware" of the challenged misrepresentations and they did not "impact" his decision to invest in Verrica. *Id.*[9]  But whether Plaintiff was aware or specifically relied on any alleged misstatements does not subject him to a unique defense that could render him atypical or inadequate when Plaintiff invokes the fraud-on-the market presumption of

---

[7] Perhaps recognizing their failure to make arguments at the proper procedural time, Defendants lean heavily on Plaintiff's response to Defendants' motion to dismiss the *first* amended complaint. Opp. 10-11.  Defendants cannot manufacture an admission out of Plaintiff's response, which counters Defendants' prior argument that the September 2021 press release could not be a loss causation event because it did not disclose the "actual omission" that allegedly rendered the May-June 2021 statements misleading, *i.e.*, that the FDA's inspection of Sterling resulted in a Form 483. ECF 33-1 at 24.

[8] *See, e.g.*, *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, 2023 WL 7285167, at *12 (E.D. Pa. Nov. 3, 2023) ("A defendant has the burden to show that a unique defense defeats typicality"); *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 134 (E.D. Pa. 2015) ("the burden of proving that class representatives are inadequate falls to the party challenging the class's representation").

[9] Defendants mischaracterize Plaintiff's testimony.  Plaintiff did not "agree[] that none of the challenged statements had any impact on his decision to invest in Verrica." Opp. 7.  Plaintiff repeatedly stated that because he either did not review, or did not recall, the alleged misrepresentations, he could not state whether or not they specifically impacted his investment decision. *See, e.g.*, ECF 71-11 at 127:23-128:5, 129:1-11, 130:1-10, 131:3-12, 132:6-14, 133:11-20.  Defendants are also wrong that Plaintiff "has 'no strategy' for investing." Opp. 7.  Defendants admit that Plaintiff typically invests in pharmaceutical companies, including those with a pending NDA, *i.e.*, an investment strategy. *Id.*  But even if Plaintiff had not articulated an investment strategy, it would not follow that he did not rely on the integrity of the stock price in making his decision to buy Verrica common stock.

reliance, *particularly when* Defendants do not challenge market efficiency and that the *Basic* presumption was properly invoked. *See* Sec. II.B, *supra.* As another court in this District has explained, Defendants' speculation that Plaintiff's lack of awareness would subject him to a unique defense "misses the point of the fraud on the market theory, under which a plaintiff may prevail even if he was entirely unaware of the alleged misrepresentations." *Utesch v. Lannett Co., Inc.*, 2021 WL 3560949, at *8, *9 (E.D. Pa. Aug. 12, 2021) (quoting *Peil v. Speiser*, 806 F.2d 1154, 1163 (3d Cir. 1986)). In fact, Plaintiff's lack of awareness of the misrepresentations "actually suggests that he *was relying* on the efficient market principle." *Teva Pharms.*, 2023 WL 7285167, at *13. Any speculation that a defendant "*may* be able to rebut the presumption of reliance as to [Plaintiff]" fails. *Id.*

Finally, Defendants complain of corrections to Plaintiff's transactions in his PSLRA certification. *See* Opp. 7. In his earlier certification, Plaintiff inadvertently omitted purchases of 1,014 shares throughout the Class Period. *See* ECF 71-11 at 77:3-77:10, 77:21-78:4; ECF 5-5 (showing total purchases of 29,610 shares); ECF 68-1 (total purchases of 30,624 shares). But "[m]inor mistakes such as this do not render Plaintiff an inadequate representative[,]" and "the fact that [Plaintiff] purchased more shares than he initially thought makes it likely that he will be even more motivated as he has a potentially greater loss." *Teva Pharms.*, 2023 WL 7285167, at *15 (declining to find plaintiff inadequate for failure to include in certification purchases of additional 105,000 shares); *see also*, *e.g.*, *In re SLM Corp. Sec. Litig.*, 2012 WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012) ("Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith"); *In re Apple Inc. Sec. Litig.*, 2022 WL 354785, at *5 (N.D. Cal. Feb. 4, 2022) (similar).

## IV.   CONCLUSION

Plaintiff respectfully requests that the Court grant his motion in the entirety.[10]

---

[10] In the alternative, Plaintiff requests that the Court certify two, smaller class periods: one from May 19, 2021 through September 20, 2021; and a second from March 2, 2022 through May 24, 2022.

DATED: September 12, 2025        Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:   */s/ Lee Albert*
Lee Albert (PA No. 46852)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lalbert@glancylaw.com

      -and-

**GLANCY PRONGAY & MURRAY LLP**
Leanne H. Solish (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
lsolish@glancylaw.com

*Counsel for Lead Plaintiff and Lead Counsel for the Proposed Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Lead Plaintiff*

## **PROOF OF SERVICE**

I hereby certify that on September 12, 2025, I electronically filed a true and correct copy the foregoing document with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

/s/ Lee Albert
Lee Albert